UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No.: 26-cr-20306

v.

Hon. Judith E. Levy

ZAINAB HAKIM, et al.,

Defendants.

---

**JOINT DEFENSE RESPONSE TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER (ECF NO. 118)**

---

The defense agrees on the utility of a narrowly tailored protective order in this case, especially to guard personal identifying information (PII) of the defendants, complainants, and third parties. However, the government has not proposed such an order. The proposed protective order is overbroad, impractical and, ultimately, unfair to the defendants' ability to mount a meaningful defense. Even where the parties agree on protected areas and measures, the government's suggested language would stretch the scope beyond reason. For the following reasons, the Court should deny the government's motion and enter a narrowly tailored protective order.

## I. Standard

Protective orders in criminal cases are thus "the exception, not the rule . . ." *United States v. Stone*, No. 10-20123, 2012 WL 137746, at *3 (E.D. Mich. Jan. 18, 2012). In moving for a protective order, the government must show "good cause" to regulate

discovery. Fed. R. Crim. P. 16(d); *United States v. Dixon*, 355 F.Supp.3d 1, 4 (D.D.C. 2019). The government bears the burden of demonstrating good cause. *United States v. Yassine*, 574 F. App'x 455, 461 (5th Cir. 2014). Good cause is only established by a "particularized, specific showing" of potential injury. *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 20120); *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (holding that "good cause" requires a showing that disclosure of specified information "will result in a clearly defined, specific, and serious injury."). "Broad allegations of harm" are not enough. *Stone*, 2012 WL 137746, at *2 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir.1994)). A court's finding of harm "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *United States v. Gangi*, 1998 WL 226196, at *2 (S.D.N.Y. May 4, 1998) (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir. 1986)).

The government's proposed order unreasonably burdens two distinct interests. First and foremost is the right of the accused to discovery. The government must produce, along with other items, all information "material to preparing the defense" in a criminal case. Fed. R. Crim. P. 16(a)(1)(e). The right of the accused to due process imposes discovery obligations on the government as well. U.S. Const. AMEND. V; *see, e.g., Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

And second, the general public also has a stake in open, transparent court proceedings. "The criminal justice system exists in a larger context of a government ultimately of the people, who wish to be informed about happenings in the criminal

justice system, and, if sufficiently informed about those happenings, might wish to make changes in the system." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1070 (1991); *see also Vignes-Starr v. Lowe's Home Centers*, LLC, 544 F. Supp. 3d 774, 777 (W.D. Ky. 2021) ("Because entry of a protective order is contrary to the basic policy in favor of broad discovery, the party that seeks a protective order has a heavy burden to show substantial justification for withholding information from the public."); *United States v. Wecht*, 484 F.3d 194, 210 (3d Cir. 2007) ("[T]he process by which the government investigates and prosecutes its citizens is an important matter of public concern."), as amended (July 2, 2007); *see also United States v. Criden*, 675 F.2d 550, 557 (3d Cir. 1982) (noting that the public has a "vital interest in evaluating the public officials who work in the criminal justice system"); *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) ("The party seeking to overcome the presumption of public access to the documents bears the burden of showing some significant interest that outweighs the presumption.").

The government repeatedly points to examples of protective orders in other cases, but "[t]here is no one-size-fits-all protective order." *United States v. Baker*, No. 20-CR-288 (LJL), 2020 WL 4589808, at *3 (S.D.N.Y. Aug. 10, 2020). The form of the protective order "must be judged based on the particularized needs and risks of [a] case." *Id.* Above all else, a protective order should be "no broader than necessary to accomplish its intended purpose," *United States v. Powell*, No. 1:24-CR-18, 2024 WL 3344642, at *1 (S.D. Ohio July 9, 2024) (quoting *United States v. Campbell*, No. 1:19-CR-25, 2019 U.S. Dist. LEXIS 99806, at *2-3 (S.D. Ohio June 14, 2019)). The broader a

proposed protective order is, the greater the need for the government to make a particularized showing of harm. *See Bulger*, 283 F.R.D. at 52.

## II. Objections to the Proposed Protective Order

### a. The government's proposed disclosure restrictions will interfere with Defendants' ability to mount a meaningful defense

The government proposes that the Court bar the defense from disclosing, reviewing, or even discussing Sensitive Materials with anyone outside the defense team. (ECF No. 118-1, PageID.589-90, ¶ 3(d)). The defense takes no exception to protecting individuals' PII. At the same time, the defense team should be able to discuss the contents of Sensitive Materials with certain third parties without seeking the government's consent.

**Potential witnesses:** Courts should design protective orders "to assure that a defendant's right to a fair trial is not overridden by the confidentiality and privacy interests of others." *United States v. O'Keefe*, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007). "No right ranks higher than the right of the accused to a fair trial." *Stone*, 2012 WL 137746, at *2 (quoting *Press-Enterprise Co. v. Super. Ct. of Press-Enterprise Co. v. Super. Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 508 (1984)).

The effective assistance of counsel is included in that basket of trial rights. U.S. Const., AMEND VI. Defense counsel should "investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To fulfill its obligations under the Sixth Amendment, then, the defense team may need to share and/or discuss the contents of Sensitive Materials with

potential witnesses to flesh out investigative leads. The Court should permit the defense to show copies of Sensitive Materials to potential witnesses and their counsel as necessary for a meaningful defense. The defense team will retain possession of the materials unless given permission by the Court otherwise. (*See* ECF No. 118-1, PageID.588-89, ¶ 3(b).)

**Defendants' civil attorneys:** Some defendants in this case are concurrently represented by attorneys in civil lawsuits against the University of Michigan, claiming that the University discriminated against them for the political speech at issue in this case. The government's protective order seeks to bar communication between a Defendant's lawyers. To ensure that their clients do not take inconsistent—or worse, incriminating—positions, defense counsel may need to discuss the contents of Sensitive Materials with their civil counterparts. Moreover, the Court should not restrict Defendants' privileged communication with their attorneys.

The government does not cite any case that prohibits communications with attorneys in concurrent proceedings. In contrast, some courts have allowed civil plaintiffs to "use the fruits of discovery for any purpose connected to . . . *current*, related lawsuits." *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Michigan*, No. 11-12557, 2013 WL 1303622, at *1 (E.D. Mich. Mar. 28, 2013) (emphasis added). Here, the defense is not seeking to share materials with *third-party* attorneys. Defendants are only asking that they be allowed to communicate with their existing civil attorneys, whose background and insights are important to their ability to mount an effective defense in this case.

The government's proposed order interferes with defendants' Sixth Amendment rights to competent and effective representation by counsel.

**Publicly filed materials:** The government's proposed restriction on discussing Sensitive Material seems to contradict its statement that the defense may share "public information." (ECF No. 118 at 14.) "Public information" necessarily includes documents properly filed on the public docket that contain information derived from Sensitive Materials. "[T]he rights of the public kick in" when discovery material is filed in court. *Flagg v. City of Detroit,* 268 F.R.D. 279, 293 (E.D. Mich. 2010) (quoting *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009)). Moreover, in this case, the government has sought to publicize the allegations in this matter, including references to the publicly-filed indictment.[1] As such, the defense should not be limited from sharing or discussing public filings with third parties, including the media, to the extent the filings incorporate information from discovery.

**b. Restricting the accused from reviewing Sensitive Materials is unjustified and unworkable**

The government proposes that each defendant only access and review Sensitive Materials in the presence of a defense team member. Given the government's broad definition of Sensitive Materials and the volume of discovery at issue, this proposed condition is unreasonable.

[1] U.S. Attorney's Office for the Eastern District of Michigan, Press Release, Department of Justice indicts eight conspirators who threatened University of Michigan officials, businesses, and the Jewish Federation, June 10, 2026, https://www.justice.gov/usao-edmi/pr/department-justice-indicts-eight-conspirators-who-threatened-university-michigan.

The government points to the nature of the allegations against the defendants to argue that they cannot be trusted with unredacted discovery materials. Yet the bulk of the material the government labels as "Sensitive" are the defendants' own electronic records, not complainant and/or witness PII. The proposed supervision requirement does not make sense with respect to the vast majority of the evidence.

The proposed restriction would lead to absurd results. The government does not explain why each individual defendant cannot view their own unredacted electronic records. Similarly, while the government argues that redacting electronic evidence would create "an almost insurmountable administrative burden," (ECF No. 118, PageID.567), it does not attempt to explain why it cannot redact other items, such as search warrants.

This proposed condition is also impractical. The government complains about the administrative burden it will bear producing the voluminous material, yet ignores the burden its proposed conditions will impose on the defendants' constitutional right to a defense.

What the government brushes off as a logistical issue is actually a constitutional problem. The right to a complete defense is personal to each defendant in this case. They, "not their lawyers or the [government,] will bear the personal consequences of a conviction." *Baker*, 2020 WL 4589808, at * 4 (quoting *United States v. Rosemond*, 958 F.3d 111, 120 (2d. Cir. 2020) (citation modified). Often only the accused will be able to recognize the significance – including exculpatory significance – of certain discovery

material, 2020 WL 4589808, at *4. "There is a value and an interest in the defendant being able to freely review the evidence against him, on his own time, and without a defense lawyer or anyone else looking over his shoulder." *Id.*

Supervising eight separate individuals' review of "thousands of pages and terabytes of electronic information" (Gov't Mtn. ECF No. 118, PageID.561) also will require significant defense team time. In *United States v. Deleon*, a district court rejected a similar provision after doing some back-of-the-napkin math:

> The prospect of having a lawyer go page by page of nearly 10,000 documents supports that it will require counsel to be [with their detained client] many, many hours. If counsel can go through 20-25 pages an hour, which may be optimistic, it will take 400-500 hours for them each to review all of the documents with their clients.

No. CR 15-4268 JB, 2016 WL 7242579, at *32 (D.N.M. Oct. 28, 2016). This problem is amplified here by the fact that one defendant lives out of state, separated from his counsel. He cannot be expected to travel to Michigan each time he needs to review discovery.

The allegations in this case are just that. Defendants are presumed innocent. Since the inception of this case, defendants have complied with all release conditions. The extent to which third parties and social media accounts share information about the case, underscores the public interest in the case. Public interest does not dictate that this Court can assume that the defendants would violate a reasonable protective order. The government has offered no evidence that the defendants cannot be trusted to obey this Court's orders.

The government relies on *United States v. Torres*, No. 20-CR-00418, 2020 WL 4500046 (D.N.J. Aug. 5, 2020), *Dixon*, 355 F.Supp.3d at 7, and *United States v. Ocampo*, Case No. 21-163, 2022 WL 363594, at *2 (W.D. Ky. Feb. 7, 2022) to support its request for supervised discovery review. The facts of those cases are distinguishable.

In *Torres*, the court restricted the defendant in a sex trafficking case from viewing sexually explicit and identifying photographs for two reasons not present in this case. In *Torres*, possessing and viewing the materials was part of the criminal conduct charged and the jail in which he was housed did not allow inmates to possess explicit material.

In *Dixon*, the defendant was charged with robbery, had a lengthy criminal history, and was an extant risk to victims and witnesses. Here, none of the defendants have a history of violence and they have been found by the Court to pose no significant risk to any witness or complainant.

The government's position is not saved by the holding in *Ocampo*, which prevented the defendant from learning a confidential informant's identity. Here, the government believes the defendants already know the alleged victims' identities. Therefore, there are no particularized facts here that would justify withholding that information from the defense or the defendants.

The case cited by the government involving individuals in pretrial detention (*See* ECF No. 118, PageID.581.) does not help the government argument. More often than not, as in *Torres*, these cases are resolved by the fact that pretrial detainees were

prohibited from possessing discovery because of jail policy and security. That is not a factor here.

Supervised discovery review in this case would generate a "marginal increase in safety [ ] by intentionally making it more difficult for the Defendants to read [discovery.]" *Deleon*, 2016 WL 7242579, at *33. That's not enough to justify such a significant burden on defendants' ability to prepare a complete defense.

**c. The government's proposed sealing requirement goes against case law and the Local Rules**

There is no need for the parties to preemptively agree to file all Sensitive Materials under seal. The defense should be able to publicly file discovery material when it can be properly anonymized. "[T]he Sixth Circuit strongly disfavors motions to seal filings in the court's docket." *Doe v. Lee*, No. 3:22-CV-00569, 2023 WL 2587790, at *5 (M.D. Tenn. Mar. 21, 2023) (citing cases). Local Rule 5.3 and this Court's practice guidelines counsel similarly. See E.D. Mich. L.R. 5.3(b)(1).

**d. The defense should be able to make reasonable references to victims and witnesses by name**

As discussed above, members of the defense team may need to discuss the identity of victims and/or witnesses in the course of investigation. The government's concerns for victim privacy should be weighed against the information already disclosed in the indictment, which identifies five out of eight victims by their job title as public officials. At least two of those alleged victims have made statements in the media about the alleged conduct, encouraging prosecution. Because the alleged victims have made their identities public, there is no reason for this Court to limit the ability of the defense

to conduct robust investigation and trial preparation without tiptoeing around the identity of public officials.

**e. The government cannot restrict defense use of closed AI systems or demand disclosure.**

The Defendants respectfully object to the Government's Proposed Protective Order regarding the use of Artificial Intelligence ("AI"). The definition section appears to be language similar to that used recently by the Department of Justice in the Eastern District of California.[2]

First, the Government's proposed definition of "AI Tool" includes "any automated system that uses statistical modeling, machine learning, or similar techniques." This definition extends far beyond generative artificial intelligence and improperly captures routine technologies that defense counsel utilize daily, such as cloud storage providers, Optical Character Recognition ("OCR"), Technology-Assisted Review ("TAR") and even search algorithms within legal databases such as Westlaw and Lexis-Nexis. Requiring prior written consent from the Government to utilize such standard technological tools creates an unworkable procedural burden and inappropriately invades upon defense operations.

Second, the Government couches its proposed pre-approval requirement on the premise that AI systems present a risk due to "the practical inability to claw back or delete data once it has been incorporated into a model." This risk may exist in public,

[2] *See United States v. Chambers*, No. 2:26-cr-00073 (E.D. Cal.), ECF No. 14, entered May 28, 2026; *United States v. Yama*, No. 1:21:cr-00272 (E.D. Cal), ECF No. 153, filed June 25, 2026; and *United States v. Salgado*, No. 1:25-cr-00077 (E.D. Cal.), ECF No. 43, filed June 25, 2026.

consumer-grade AI products. It does not exist in enterprise-tier commercial AI software or enterprise API integrations. Modern commercial enterprise AI platforms (such as ChatGPT, Claude, and Gemini) operate under binding contractual terms that explicitly prohibit the vendor from using customer data for training models.[3] These terms also prohibit unauthorized disclosure to third parties and governs the deletion of data upon request.

Third, requiring defense counsel to seek written authorization from the prosecution prior to using AI tools forces the defense to disclose its specific discovery processing methods, mental impressions, and case strategies to the Government. Federal district courts have been mindful of the delicate balances that can be struck with a prudent AI strategy.

An appropriate middle ground was constructed by the Magistrate Judge Maritza Dominguez Braswell in the Colorado District Court in *Morgan v. V2X, Inc.*, No. 1:25-cv-01991-SKC-MDB (D. Colo.). Although thatta matter was a civil dispute, the reasoning of Magistrate Braswell fits neatly into the context of the instant matter. Based upon the review of *Morgan*, the defense proposes the following language as a framework to address both the Government's and the defense attorneys' concerns:

> No party or authorized recipient may input, upload, or submit Sensitive Information into any public artificial intelligence platform, including any generative, analytical, or large language model-based tool ("AI"), unless the AI provider is contractually prohibited from: (1) storing or using

---

[3] *See* Anthropic's Commercial Terms at: https://www.anthropic.com/legal/commercial-terms; OpenAI's Enterprise Terms at: https://openai.com/enterprise-privacy/; and Google's Terms at: https://knowledge.workspace.google.com/admin/generative-ai/generative-ai-in-google-workspace-privacy-hub

> inputs to train or improve its model; and (2) disclosing inputs to any third party except where such disclosure is essential to facilitating delivery of the service. Where disclosure to a third party is essential to service delivery, any such third party shall be bound by obligations no less protective than those required by this Order. In addition, the AI provider must contractually afford the party or authorized recipient the ability to remove or delete all Sensitive information upon request. A party intending to use AI that it contends meets these requirements must retain written documentation of these contractual protections.

This approach provides a contractual safeguard to allay the Government's concerns pertaining to the wrongful dissemination of materials while dispensing with the pre-approval step. In effect, defense counsel may use any AI tool as long as the party retains written documentation that the AI Tool providers' terms meet the requirements of no training, no unauthorized third-party disclosure, and deletion upon request.

## CONCLUSION

Although the defense does not oppose the government's motion for a protective order, we do oppose the government's proposed order as overly broad and unduly burdensome. The charged individuals here jointly request an alternative, narrowly tailored order that strikes a fair balance between the needs of the defense and the protection of third parties' information.

Respectfully submitted,

*s/ Amanda N. Bashi*
*s/ Sara Garber*
Counsel for Zainab Hakim
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, Suite 500
Detroit, MI 48226
amanda_bashi@fd.org

*s/ William W. Swor*
William W. Swor
Counsel for Amatullah Hakim
2450 Guardian Building
500 Griswold Street
Detroit, MI 48226
wwswor@wwnet.net

*s/ Molly Armour*
Molly Armour
Counsel for Paige Feyock
Law Office of Molly Armour
53 W. Jackson Boulevard, Suite 1424
Chicago, IL 60604
armourdefender@gmail.com
(Illinois Bar 6295792)

*s/ Sanford Plotkin*
Sanford Plotkin
Local Counsel for Paige Feyock
Sanford Plotkin PC
30445 Northwestern Hwy, Suite 225
Farmington Hills, MI 48334
sanfordplotkin@gmail.com
(P38691)

*s/ Jamil K. Khuja*
Jamil K. Khuja
Counsel for Ahmet Korkaya
Khuja Law Firm, P.L.L.C.
1360 Porter St. Suite 200
Dearborn, MI 48124
khujalaw@gmail.com

*s/ Arthur J. Weiss*
Arthur J. Weiss
Counsel for Jonathan Zou
30445 Northwestern Highway Suite 225
Farmington Hills, MI 48334-3158
arthurweiss@ajweisslaw.com

*s/ Ebony L. Ellis*
Ebony L. Ellis

Counsel for Alexander Sepulveda
Law Offices of Alan Crawford, PLLC
120 N. Michigan Ave. Suite 303
Saginaw, MI 48602
ebony.ellis@acrawfordlaw.com

*s/James C. Thomas*
James C. Thomas
Counsel for Mariam Odeh
James C. Thomas, P.C.
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
jthomas@orlaw.com

*s/Michael C. Naughton*
Michael C. Naughton
Counsel for Mariam Odeh
North Coast Legal, PLC
800 Cottageview Drive, Suite 1080
Traverse City, MI 49684
mike@thenorthcoastlegal.com

*s/Brad Thomson*
Brad Thomson
Counsel for Colin Weger
People's Law Office
1180 No. Milwaukee
Chicago, IL 60642
brad@peopleslawoffice.com

*s/ Joshua G. Herman*
Joshua G. Herman
Counsel for Colin Weger
Law Office of Joshua G. Herman
53 West Jackson Blvd., Suite 404
Chicago, IL 60604
jherman@joshhermanlaw.com

*s/James Gerometta*
James Gerometta
Mogill, Lemanski and Gerometta PLLC
Local Counsel for Colin Weger

27 E. Flint St. Suite 2
Lake Orion, MI 48362
jgerometta@miethicslaw.com
(248) 814-9470

Dated: August 24, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Amanda N. Bashi