UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff | Honorable Judith E Levy

-vs-

D-5 JONATHAN HONGRU ZOU, | Case No 5:26-cr-20306

Defendant
_______________________________________/

MOTION FOR JUDICIAL APPOINTMENT FOR A MASTER
TO REVIEW THE CONTENTS OF ELECTRONIC DEVICES

NOW COMES the Defendant, JONATHAN HONGRU ZOU, by his attorneys, ARTHUR JAY WEISS and JOHN A SHEA, respectfully moves this Honorable Court for Judicial Appointment of a Master to review the contents of electronic devices, and in support thereof, says as follows:

1. The Defendant, JONATHAN HONGRU ZOU, is one (1) of eight (8) defendants charged in three (3) counts of a ten (10) count indictment with conspiracy to transmit threats in interstate and foreign commerce, 18 USC §§ 371; 875 (c) [ECF No 1 Page ID 91].

2. Your Defendant is informed and verily believes the government seized various electronic devices belonging to him which contain privileged attorney-client communications.

3. As a result of dialogue between the undersigned and the government, it is evident there exists fundamental differences as to how and by whom these electronic devices should be analyzed, thus precluding concurrence in these premises.

WHEREFORE, the Defendant, JONATHAN HONGRU ZOU, respectfully prays this Honorable Court Appoint a Master to review the contents of his electronic devices.

ARTHUR JAY WEISS
JOHN A SHEA

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Defendant ZOU
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: September 15, 2026.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff — Honorable Judith E Levy

-vs-

D-5 JONATHAN HONGRU ZOU, — Case No 5:26-cr-20306

Defendant
______________________________________/

MEMORANDUM IN SUPPORT OF
MOTION FOR JUDICIAL APPOINTMENT FOR A MASTER
TO REVIEW THE CONTENTS OF ELECTRONIC DEVICES

## I. INTRODUCTION

The Defendant, JONATHAN HONGRU ZOU, is one (1) of eight (8) defendants charged in three (3) counts of a ten (10) count indictment with conspiracy to transmit threats in interstate and foreign commerce, 18 USC §§ 371; 875 (c) [ECF No 1 Page ID 91].

Although we have not yet received *any* discovery materials from the government, we are informed and verily believe the government seized[1] various electronic devices from Mr Zou which contain attorney-client communications[2].

Of particular concern is the interrelationship of the instant indictment [ECF No 1 Page ID 91] to civil litigation which he is or has been involved,[3] as they all pertain to Mr Zou's alleged activities while a student at the University of Michigan.

In communications with the government, it is apparent fundamental differences exist as to the methodology for analyzing the pertinent electronic devices and who shall conduct this examination.

---

[1] In the absence of *any* discovery, we are unable to advise whether the pertinent search warrants contained "procedures dealing with potentially attorney-client privileged documents," *United States v SDI Future Health Inc*, 464 F Supp 2d 1027, 1038 (D Nev 2006); *see also*, *United States v Ritchey*, 605 F Supp 3d 891 (SD Miss 2022); *United States v St George,* 2021 WL 4132662 *3 n 5 (D Mass 2021).

[2] Prior to the commencement of this prosecution, Mr Zou has been, and continues to be, involved in litigation pending in this Court, *see, e g*, *Zou v Grasso*, Case Number 2:25-cv-10315-MAG-EAS; *Hilgart-Griff v Regents*, Case Number 2:24-cv-13425-LJM-EAS. Also, currently continuing are "companion" cases of *Hakim v Regent*, Case Number: 2:25-cv-11265 and *Walker v Regents*, Case Number: 2:26-cv-11674-LJM-KGA.

[3] *See, e g*, *Zou v Grasso*, Case Number 2:25-cv-10315-MAG-EAS; *Hilgart-Griff v Regents*, Case Number 2:24-cv-13425-LJM-EAS.

Accordingly, we respectfully request the Court to Appoint a Master in these premises.

## II. ATTORNEY-CLIENT PRIVILEGE

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v United States*, 524 U.S. 399, 403, 118 S Ct 399, 141 L Ed 2d 379 (1998). It "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Id* [*quoting Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S Ct 677, 66 L Ed 2d 584 (1981)].

> The Supreme Court has thus justifiably recognized the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v United States,* 449 US 383, 389, 101 S Ct 677, 66 L Ed 2d 584 (1981). The purpose of attorney-client privilege is to ensure free and open communications between a client and his attorney. *See Fisher v United States,* 425 US 391, 403, 96 S Ct 1569, 48 L Ed 2d 39 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged. The purpose of the privilege is to encourage clients to make full disclosure to their attorneys." (citations omitted)); *Hunt v. Blackburn,* 128 US 464, 470, 9 S Ct 125, 32 L Ed 488 (1888) ("The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."). *In re Grand Jury Subpoenas*, 454 F 3d 511, 519-520 (6th Cir 2006).

Moreover, "the Sixth Amendment guarantees criminal defendants the right to counsel and supports an expectation of privacy regarding a defendant's legitimate communications with the defendant's attorney." *United States v Stewart*, 2002 WL 1300059 * 5 (SD NY 2002) [*citing DeMassa v Nunez*, 770 F 2d 1505, 1507 (9th Cir 1985) (per curiam)].

Critically, this privilege "is key to the constitutional guarantees of the right to effective assistance of counsel and a fair trial." *United States v Neill*, 952 F Supp 834, 839 (D DC 1997).

It is counterintuitive to condone "an adverse party's review of privileged materials," for such a process "seriously injures the privilege holder" and adversely undermines the appearance of impartiality, *In re Search Warrant*, 942 F 3d 159, 175 (4th Cir 2019) (citations omitted). Perhaps this recognition caused the Court to opine utilization of a governmental taint team constituted an infringement upon an inherently judicial function, *Id* at 176-177.

> To start, the magistrate judge—by authorizing the Filter Team and its Protocol—erred in assigning judicial function to the executive branch. We have recognized that, when a dispute arises as to whether a lawyer's communications or a lawyer's documents are protected by the attorney-client privilege or work-product doctrine, the resolution of that dispute is a judicial function. *See NLRD v Interbake Foods, LLC*, 637 F 3d 492, 498, 500 (4th Cir 2011) (concluding that, in deciding whether to enforce an administrative subpoena seeking potentially privileged documents, a court "cannot delegate" an *in camera* review of documents to an agency, but must itself decide a claim of privilege); *see also In re The City of New York*, 607 F 3d 923, 947 (2d Cir 2010) (observing that evaluating privilege claim is always a judicial function); *In re Grand Jury*

> *Proceedings #5 Empanelled Jan 28, 2004,* 401 F 3d 247, 256 (4th Cir 2005) (remanding to district court for *in camera* review concerning privileged communication and applicability of crime-fraud exception). Indeed, the Constitution vests "[t]he judicial Power" solely in the federal courts, *see* US Const. art III, § 1, which includes "the duty of interpreting and applying" the law, *see Massachusetts v Mellon,* 262 US 447, 43 S Ct 597, 67 L Ed 1078 (1923). Put simply, a court is not entitled to delegate its judicial power and related functions to the executive branch, especially when the executive branch is an interested party in the pending dispute. *See Interbake Foods*, 637 F 3d at 501 (affirming refusal "to delegate" to an administrative law judge the judiciary's "responsibility to decide the issue of privilege"); *NLRB v Detroit Newspapers*, 185 F 3d 602, 606 (6th Cir 1999) (concluding that "district court had the obligation … to determine whether the subpoenaed documents were protected by some privilege, and had no discretion to delegate that duty"). *Id* at 176-177.
>
> *Query* then, the propriety of authorizing the government "to rummage

through attorney-client communications," *Id* at 176, which undoubtedly "chill[s] the free flow of information between clients and lawyers," *Id* at 176.

> [T]aint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have implicated in the past in leaks of confidential information to prosecutors. That is to say, the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that taint teams pose a serios risk to holders of privilege, and this supposition is substantiated by past experience. In *United States v Noriega,* 764 F Supp 1480 (SD Fla 1991), for instance, the government's taint team missed a document obviously protected by attorney-client privilege, by turning over the tapes of attorney-client conversations to member of the investigating team. This *Noriega* incident points to an obvious flaw in the taint team procedure: the government's fox is left in charge of the appellant's henhouse, and may err by neglect or malice, as well as by honest differences of opinion.

> It is reasonable to presume that the government's taint team might have a more restrictive view of privilege than appellants' attorneys. But under the taint team procedure, appellants' attorneys would have an opportunity to assert privilege *only* over those documents which *the taint team has identified* as being clearly or possibly privileged. As such, we do not see any check in the proposed taint team review procedure against the possibility that the government's team might make some false negative conclusions, finding validly privileged documents to be otherwise; that is to say, we can find no check against Type II errors in the government's proposed procedure. On the other hand, under the appellants' proposal which incidentally seems to follow a fairly conventional privilege review procedure employed by law firms in response to discovery requests, the government would still enjoy the opportunity to challenge any documents that appellants' attorneys misidentify (via the commission of Type I errors) as privileged. We thus find that, under these circumstances, the possible damage to the appellants' interest in protecting privilege exceeds the possible damage to government's interest in grand jury secrecy and exigency in this case. Therefore, we reverse the district court, and hold that the use of a government taint teams is inappropriate in the present circumstances. Instead, we hold that the appellants themselves must be given an opportunity to conduct their own privilege review; of course, we can presently make no ruling with respect to the merits of any claimed privilege that may arise therefrom. *In re Grand Jury Subpoenas, supra,* 454 F 3d at 523.

Again, in the absence of *any* discovery, we are currently unable to advise the Court whether the government has *already* commenced an analysis of JONATHAN HONGRU ZOU's electronics. As the Court in *United States v Neill, supra,* 952 F Supp at 841, noted, such a *unilateral* endeavor is fraught with complications.

> Where the government chooses to take matters into its own hands rather than using more traditional alternatives of submitting disputed documents under seal for *in camera* review by a neutral and detached magistrate or by court-appointed special masters, (citations omitted), it

bears the burden to rebut the presumption that tainted material was provided to the prosecution team (citation omitted)[4].

Additionally, when the government does proceed independent of the judiciary, it "is cautioned that meticulous records must be kept regarding each document seized and reviewed, including records reflecting copies made of such documents, their distribution and use, and chains of custody. If privileged materials are inadvertently or improperly disclosed, *Kastigar*-like hearings, *cf Kastigar v United States,* 406 US 441, 92 S C1653, 32 L Ed 2d 212 (1972), may eventually be required," *Hicks v Bush,* 452 F Supp 2d 88, 103-104 (D DC 2006)[5].

## III. TAINT TEAM

We are cognizant the government desires to analyze JONATHAN HONGRU ZOU's electronic devices. We respectfully maintain Mr Zou is entitled

[4] In such situations, perhaps the only recourse to ascertain if the privileged documents and/or information have been impermissibly examined, is for the Court to conduct an evidentiary hearing, *see, e g, Ewing v Horton,* 914 F 3d 1027, 1031-1034 (6th Cir 2019); *United States v White*, 492 F 3d 380, 413-414 (6th Cir 2007); *see also, United States v Neill*, 952 F Supp 834, 839-841 (D DC 1997).

[5] We respectfully note "governmental intrusion into an attorney-client relationship has occasionally risen to the level of 'outrageous government conduct' violative of the Fifth Amendment's Due Process Clause. *United States v Voigt*, 89 F 3d 1050, 1066 (3d Cir 1996)," *United States v Scarfo*, 41 F 4th 136, 172 (3d Cir 2022).

to the sanctity, confidentiality and preservation of his attorney-client communications which are contained in this equipment.

As such, the issue becomes who and under what circumstances will the necessity of "sift[ing] the wheat from the chaff," *United States v Jackson*, 2007 WL 3230140 * 5 (D DC 2007), transpire.

> Although use of taint teams has been approved in limited factual scenarios, federal courts have generally "taken a skeptical view of the Government's use of 'taint teams' as an appropriate method for determining whether seized or subpoenaed records are protected by the attorney-client privilege." *United States v SDI Future Health, Inc*, 464 F Supp 2d 1027, 1037 (D Nev 2006). "[T]aint teams present inevitable, and reasonably foreseeable, risks to privilege." *In re Grand Jury Subpoenas 04-124-03 & 04-124-05*, 454 F 3d 511, 523 (6th Cir 2006). The Government's taint team may "have a more restrictive view of privilege" than the defense. *Id.* In addition, the Government's conflicting interests in both preserving privilege and pursuing the investigation present inherent risks. *See id.* Taint teams "have been implicated in the past in leaks of confidential information to prosecutors." *Id.* And even if no leaks occur, the use of walled-off taint teams undermines the *appearance* of fairness and justice. *See In re Search Warrant for Law Offices Executed on March 19, 1992*, 153 FRD 55, 59 (SD NY 1994); *Stewart*, 2002 WL 1300059, at *8. "It is a great leap of faith to expect that members of the general public would believe" that a wall separating members of the taint team from members of the prosecution "would be impenetrable." *In re Search Warrant*, 153 FRD at 59. *United States v Gallego*, 2018 WL 4257967 *2 (D Ariz 2018).

In the instant cause, these salient observations have been exacerbated. A prime example is the explosive verbiage[6] utilized by the United States Attorney

[6] *See, e g*, a "multi-state operation" constituting "threat[s], intimidat[ion] and coercion…."

Office to describe the accusations.[7] This, in turn, has spawn a broader *cause celebre* category of politically inflammatory online rhetoric.[8]

This factual presentation exists within the backdrop of our federal judiciary criticizing the integrity and professionalism of the Department of Justice.[9] In fact, the Justice Department is attempting to insulate itself from traditional ethical norms and directives[10].

The proverbial quantum leap of faith necessary to entrust sacred attorney-client communications to governmental personnel is simply and respectfully a bridge too far, *see, e, g, United States v Stewart,* 2002 WL 1300059 ** 6-10 (SD NY 2002).

> [R]eliance on the implementation of a Chinese Wall, especially in the context of a criminal prosecution, is highly questionable and should be discouraged. The appearance of Justice must be served, as well as the interests of Justice. It is a great leap of faith to expect that members of the general public would believe that any such Chinese wall would be impenetrable; this notwithstanding the honor of an AUSA. Furthermore,

[7] https://www.justice.gov/usao-edmi/pr/department-justice-indicts-eight-conspirators-who-threatened-university-michigan.

[8] https://electronicintifada.net/content/michigan-8-case-part-broader-pattern-repression/51579.

[9] *See, e g*, https://www.propublica.org/article/justice-department-presumption-of-regularity.

[10] *See, e g*, https://www.brennancenter.org/our-work/research-reports/justice-department-attempts-shield-its-lawyers-accountability-misconduct; https://protectdemocracy.org/work/doj-rule-suspending-state-bar-investigations/

> in a case such as this the Chinese Wall attorney to perform the search required the physical assistance of agents, laborers, truckmen and others not bound by the ethical considerations which affect a lawyer. Those on the Mongol side of the Wall may well access the same information from other sources, and have difficulty convincing a defendant or the public that the information did not pass over or through the Wall. *In re Search Warrant*, 153 FRD 55, 59 (SD NY 1994).

Obviously," there is no doubt that, at the very least, the "taint team" procedures create an appearance of unfairness," *United States v Neill,* 952 F Supp 834, 841 n 14 (D DC 1997).

## IV. DENOUEMENT

In light of the foregoing, we respectfully submit the government's desire for a Department of Justice "taint team"[11] be denied, *see, United States v Ritchey, supra,* 605 F Supp 3d at 899-905, and a Special Master be appointed by this Court, *see, United States v Gallego, supra,* 2018 WL 4257967 at ** 3-4; *United States v Stewart, supra,* 2002 WL 1300059 at * 10; *United States v Hunter,* 13 F Supp 2d 574, 583 n 2 (SD NY 2002) ("[i]t may be preferable for the screening of potentially privileged records to be left not to a prosecutor behind a 'Chinese Wall,' but to a special master or the magistrate judge").

---

[11] We respectfully further note their filter process is potentially encumbered with complications, *see, generally, United States v Taylor*, 764 F Supp 2d 230, 237 (D Me 2011).

## RELIEF REQUESTED

WHEREFORE, the Defendant, JONATHAN HONGRU ZOU, respectfully prays this Honorable Court Appoint a Master to review the contents of his electronic devices.

Respectfully submitted,

ARTHUR JAY WEISS
JOHN A SHEA

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Defendant ZOU
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: September 15, 2026.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff Honorable Judith E Levy

-vs-

D-5 JONATHAN HONGRU ZOU, Case No 5:26-cr-20306

Defendant
_______________________________________/

CERTIFICATE OF SERVICE

ARTHUR JAY WEISS, counsel of record for JONATHAN HONGRU ZOU, a Defendant in the above-entitled matter, hereby Certifies that on the 15th day of September 2026 he served all counsel of record with a copy of Motion for Judicial Appointment for a Master to Review the Contents of Electronic Devices, Memorandum in Support of Motion for Judicial Appointment for a Master to Review the Contents of Electronic Devices and Certificate of Service relative to the above-entitled matter by electronic means.

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS