UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 26-20306 |
| v. | Honorable Judith E. Levy |
| D-5 JONATHAN HONGRU ZOU<br>Defendant. | |

---

**United States' Response and Brief in Support Opposing D-5 Jonathan Hongru Zou's Motion for Judicial Appointment for a Master to Review the Contents of Electronic Devices (ECF No. 171, PageID.941)**

---

For the reasons stated in the attached brief, the Court should deny the defendant's motion.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

*s/ Margaret M. Smith*
Margaret M. Smith
Robert M. Kuhn
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9100
margaret.smith@usdoj.gov

Dated: September 29, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-5 JONATHAN HONGRU ZOU
Defendant.

CRIMINAL NO. 26-20306

Honorable Judith E. Levy

---

**United States' Brief in Support Opposing D-5 Jonathan Hongru Zou's Motion for Judicial Appointment for a Master to Review the Contents of Electronic Devices**
**(ECF No. 171, PageID.941)**

---

Zou seeks appointment of a Special Master to review his electronic devices for potentially privileged information. The government obtained this evidence by search warrants and established a filter process to remove all communications—privileged or not—between Zou and the lawyers on record that represent him in his civil case. The Sixth Circuit has repeatedly affirmed the use of government filters in similar cases. There is nothing unique about Zou's case or the nature of the evidence that would justify substantially prolonging this case by appointing a Special Master. Because potentially privileged communications are

already removed, there is no need for a Special Master. And as discussed below, it is unclear whether a Special Master would even be able to effectively filter the evidence. Indeed, Zou does not explain why there is a unique need for a Special Master in this routine case. The Court should deny his motion.

## I. Background

Law enforcement executed numerous search warrants related to this investigation. As it pertains to Zou's motion, three separate seizures are relevant: (1) Zou's electronic devices seized in April 2025; (2) Zou's iCloud accounts seized in January 2026; and (3) Zou's phone seized in June 2026.

### (1) Zou's electronic devices (April 2025)

In February 2025, Zou joined a civil lawsuit against University of Michigan officials and law enforcement, challenging his trespass bans and the University's anti-disruption and trespass policies. *See Zou v. Grasso*, 25-cv-10315 (E.D. Mich.) (Goldsmith, J.).

In April 2025, the Michigan Attorney General's Office (AG) executed a search warrant at Zou's residence and seized his electronic devices. The Attorney General's Office initially reviewed the contents of

Zou's electronic devices seized in April 2025. No one, including Zou, identified any potential attorney-client communications. The FBI obtained Zou's electronic devices a few months later and reviewed them. To date, no known attorney communications have been identified on the April 2025 devices, and Zou has not asserted or identified any attorney-client relationships.[1]

### (2) Zou's iCloud data (January 2026)

The FBI served Apple, Inc. with an iCloud search warrant in December 2025. By that time, the U.S. Attorney's Office (USAO) became aware of several pending civil lawsuits involving various defendants. Neither the FBI nor the AG's offices were parties to the civil suits or served with notice of the suits.

Before Apple returned the iCloud data, the USAO and FBI created a filter protocol for the incoming data. Over twenty attorney names were identified using the public docket for the various federal civil lawsuits filed. Because of the potential for attorney/client communications, the

[1] At this time, no filter protocol was in place because neither the AG's office, nor the FBI were aware of the February 2025 civil lawsuit that had been filed in federal court. In January 2026, the USAO and FBI determined that a filter protocol was not necessary for the April 2025 seized devices because they had already been reviewed and no potential attorney-client privileged information was identified during the routine searches.

FBI assigned agents unaffiliated with the investigation to serve on the filter team.[2]

The filter team searched the iCloud returns for any of the twenty plus names, phone numbers, email addresses, and other identifying information. Any positive results were removed from the forensic return. The filter team maintained the original iCloud return, so the investigative team cannot access it. The filter team provided "clean" returns to the investigating team, which excluded any and all communications with identified attorneys, privileged or not privileged. A filter agent will produce the original iCloud accounts to Zou in discovery.

**(3) Zou's cell phone (June 2026)**

In June 2026, FBI executed an arrest warrant and search warrant for Zou's electronic devices. FBI seized Zou's cell phone, a Google Pixel. He declined to provide the password. As of today, FBI Detroit does not have data to provide concerning the device as it is continuing to work on accessing it. This is subject to change, as tools and capabilities are regularly updated, sometimes daily. FBI Detroit is also consulting with national FBI forensic tools to gain access to the device. When the FBI is

[2] The agents were not even on the same squad as the case agents for Hakim, et al.

able to access the phone's data, it will first undergo the same filter process as the iCloud returns.

### (4) Notice to defense counsel

Law enforcement arrested all but one defendant in June 2026.[3] No defense attorneys reached out to either the FBI or the U.S. Attorney's Office to assert any concern regarding privileged materials or any identifiable attorney-client relationship. In fact, undersigned counsel affirmatively reached out to the defense team in August 2026:

attorney-client check

[redacted] Smith, Margaret (USAMIE)
To Amanda_Bashi@fd.org; Art Weiss (arthurweiss@ajweisslaw.com); Brad Thomson; Ebony Ellis; James Thomas (jthomas@orlaw.com); jamil@khujalaw.com; JGerometta@miethicslaw.com; **+7 others**
Cc Kuhn, Robert (USAMIE)

Reply | Reply All | Forward

Mon 8/31/2026 2:29 PM

Good afternoon,

We recognize there are a number of civil lawsuits pending that involve the indicted defendants and their affiliated organizations. To that end, we want to ensure we have a complete list of attorney-client relationships for the time frame of October 2023 – present.

We have a filter team in place, but if we don't have the identification information for a particular attorney and his/her client, we cannot effectively filter any potential atty/client materials. This includes any screen names used in applications like Signal and Whatsapp.

Please advise – including negative responses – by Friday, September 11, 2026. If you need more time, please reach out.

Thanks,

Maggie Smith
Assistant United States Attorney
Eastern District of Michigan
U.S. Department of Justice
margaret.smith@usdoj.gov
(o) 313.226.9135

Two attorneys confirmed no attorney client materials would exist on their clients' devices. Zou responded: "Without designating the identities of the civil attorneys the government possesses, we are unable

---

[3] D-2 Amatullah Hakim was arrested in July 2026.

to indicate whether your list is accurate and exhaustive." Email from Arthur Weiss, August 31, 2026. Zou did not provide any names and did not assert privilege as to any identifiable attorney relationship. The remaining defendants ignored the email entirely.

## II. Applicable Law and Analysis

The United States agrees that the attorney-client relationship serves an important role in the justice system. But blanket assertions of attorney-client privilege are strongly disfavored. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 454 (6th Cir. 1983). *Accord In re Grand Jury Proc., John Doe (Arnold Weiner, Doe's Att'y)*, 754 F.2d 154, 155 (6th Cir. 1985).

The traditional formulation of attorney client privilege is defined by these elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." 8 J.H. Wigmore, Evidence § 2292, at 554; *see Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998).

Not every communication between lawyer and client is privileged. For example, the identity of one's lawyer is not privileged. Nor is fee information. Communications made to an attorney in the course of his professional employment by persons other than the client or his agent are also not privileged. *United States v. Goldfarb,* 328 F.2d 280, 281–82 (6th Cir. 1964) ("The privilege does not envelope everything arising from the existence of an attorney-client relationship."); *see Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985) ("In general, *the fact of legal consultation or employment*, clients' identities, attorney's fees, and the scope and nature of employment are not deemed privileged." (emphasis added)). Communications made to third parties while in the presence of the attorney and his/her client are also not privileged. *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998).

Identifying potentially privileged communications, as well as how those potentially privileged communications are handled by the government in criminal cases, depends on a variety of factors. Generally, courts divide the analysis into three steps, as discussed below.

### A. Step One: identify the privilege

The attorney-client privilege itself is an evidentiary privilege created through common law. *See Dye v. Hofbauer*, 197 F. App'x 378, 383 (6th Cir. 2006). If a violation occurs, the remedy should be "tailored" and "appropriate in the circumstances." *United States v. Morrison*, 449 U.S. 361, 365 (1981). The remedy is typically "limited to" suppressing the communications for use at trial. *Id*. at 366. A privilege violation can, at times, arise to infringement of the Sixth Amendment right to counsel if the defendant can show that the government intentionally intruded on the relationship and prejudice resulted. *United States v. Dobson*, 626 F. App'x 117, 124 (6th Cir. 2015).

The party seeking to invoke privilege bears the burden of proving all of its essential elements. *United States v. Sadler*, 24 F.4th 515, 557 (6th Cir. 2022). Here, Zou has yet to affirmatively assert the names of any attorneys that represent him, even when explicitly asked to do so. He has failed to assert an identifiable attorney-client privilege, and a blanket assertion of potential privilege, without more, is inadequate. His argument stalls before he even gets to the elements of privilege. This Court can consider the argument forfeited. *See United States v.*

*Volungus*, 8 F. App'x 555, 556 (6th Cir. 2001) (forfeiture is "the failure to make a timely assertion of a right"); *see also United States v. Dozier*, 31 F.4th 624, 629 (8th Cir. 2022) ("When a party fails to timely and clearly state the grounds for the objection, the argument is forfeited[.]").

But even if this Court entertains Zou's motion, the government's filter protocol is an "action respectful of" the privilege protection. *In re Grand Jury Subpoenas*, 454 F.3d at 523.

### B. Step Two: filter the information

#### (1) The Sixth Circuit approves government filter protocols

Zou's motion requests a Special Master to perform a review of his seized electronics for potential attorney-client privileged information. But this is unnecessary for at least two reasons: his April 2025 devices contained no readily apparent attorney-client communications, and his iCloud data has already filtered out **all** communications between Zou and the numerous attorneys who represented him in his civil case at the time. So there is no potentially privileged information in the iCloud returns based on the attorney representation known to the government, which includes every civil case cited in Zou's motion. And Zou has failed to

identify any other attorney-client relationship that could be implicated by this information.

The Sixth Circuit has approved the use of filter teams (also called taint teams) in "limited, exigent circumstances in which government officials have already obtained the physical control of potentially privileged [data] through exercise of a search warrant." *In re Grand Jury Subpoenas*, 454 F.3d 511, 522-23 (6th Cir. 2006). In these cases, "the potentially privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the chaff constitutes and action respectful of, rather than injurious to, the protection of privilege." *Id.* (internal citation omitted); *see also United States v. Coffman*, 574 F. App'x 541, 564 (6th Cir. 2014) (rejecting defendant's claim that filter procedure violated due process where independent team reviewed seized materials and categorized as privileged, possibly privileged, and not privileged); *United States v. Patel*, 579 F. App'x 449, 459 (6th Cir. 2014) (approving use of a filter team to monitor recorded phone calls that included attorney-client conversations); *United States v. Taylor*, No. 21-cr-00013, 2022 WL 9408779 at *3 (E.D. Ky. Oct. 14, 2022) (denying motion for dismissal of

indictment and suppression of privileged materials based on routine used of filter team where protocol afforded defendant opportunity to review non-privileged materials before transfer to prosecution team); *United States v. Fletcher*, No. 21-cr-64, 2022 WL 1118042 (E.D. Ky. Mar. 8, 2022) (district court approved and adopted filter protocol); *United States v. Schwartz*, No. 19-20451, 2021 WL 3909807 at *7 (E.D. Mich. Sept. 1, 2021) (Cleland, J.) (district court approved filter team used for wiretap minimization purposes and distinguished *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019)); *United States v. Letko*, No. 19-20652, 2021 WL 3674116, at *1 (E.D. Mich. 2021) (Lawson, J.) (district court approved and adopted filter protocol); *United States v. Siefert*, No. 21-2, 2021 WL 3076940, at *1 (E.D. Ky. July 19, 2021) (same); *In re Search of Recs., Info., & Data Associated with 14 Email Addresses Controlled by Google, LLC*, 438 F. Supp. 3d 771, 778 (E.D. Mich. 2020) (Drain, J.) (district court denied motion to quash search warrant, in part, due to use of a filter team); *United States v. Lundergan*, No. 18-cr-00106, 2019 WL 3503977 at *4 (E.D. Ky. Aug. 1, 2019) (district court rejected motion for *Kastigar*-type hearing and found use of a filter team sufficient to protect privilege); *United States v. Zigmond*, No. 15-20283, 2017 WL

3149207, at *3 (E.D. Mich. July 25, 2017) (Grey, J.) (district court denied motion for dismissal of indictment and suppression of privileged materials based on routine use of filter team where protocol afforded defendant opportunity to review non-privileged materials before transfer to prosecution team); *United States v. Suarez*, No. 13 CR 420, 2014 WL 1898578, at *9 (N.D. Ohio May 8, 2014) (district court found that no constitutional violation occurred where filter team reviewed any potentially privileged documents and applied for court approval in order to transfer them to the prosecution team); *United States v. Sawyer*, No. 11-CR-82, 2013 WL 1668285, at *1 (E.D. Tenn. Feb. 20, 2013), *report and recommendation adopted*, 2013 WL 1668277 (E.D. Tenn. Apr. 17, 2013) (approved use of filter team during execution of a search and dismissed bare accusation that filter team improperly revealed contents of calls to prosecution).

Zou's only citation to binding precedent, *In re Grand Jury Subpoenas 04-124-03 and 04-124-05*, 454 F.3d 511 (6th Cir. 2006), supports the United States' position as to Zou's forensic electronic reivews. In that case, the Sixth Circuit held that initial privilege determinations with respect to documents in a third-party subpoena <u>not</u>

yet produced to the government should be done by a Special Master. *Id.* at 524. But the Court also approved internal filter team procedures for documents already in the government's possession. *Id.* at 522-23 (noting that the use of a filter team for documents in the government's possession is "an action respectful of, rather than injurious to, the protection of privilege").

Here, the government already has possession of Zou's devices and iCloud returns, so the first category does not apply. And there is no need for initial privilege determinations. For Zou's 2025 devices, no potentially privileged attorney-client communications were or have been identified, and all potentially privileged communications with known attorneys have already been removed from Zou's iCloud returns using a filter process. As discussed above, when law enforcement gains access to Zou's 2026 phone, it will follow the same filter process to remove all potentially privileged attorney communications from the device before the investigative team reviews it. The government's conservative, overinclusive approach in this case—removing *all* known attorney communications, whether or not the communications ultimately fall within the scope of the privilege—eliminates the need for a privilege determination.

### (2) Zou's reliance on unbinding caselaw fails

Zou's reliance on out-of-circuit and out-of-district cases is equally misplaced. Many of his citations concern search warrants executed on law offices or lawyer's personal homes, as well as cases concerning documents in a third-party subpoena not yet produced to the government.[4] In several cases, the courts characterized "unusual circumstances" unique to the particular facts of the case. *See, In re Search Warrant for Law Offices Executed on March 19, 1992,* 153 F.R.D. 55, 58 (S.D.N.Y. 1994) (noting the "unusual circumstances" of a search warrant and Grand Jury subpoena on a law office and denying a motion for restraining order); *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 183 (Rushing, J., concurring) ("unique facts and circumstances" where USAO's pre-raid filter team improperly assigned judicial functions to the executive branch before executing the warrant at a law firm and allowed government to contact represented parties *ex parte* to seek privilege waivers); *United States v. Gallego*, No. CR-18-01537, 2018 WL 4257967, at *3 (D. Ariz. Sept. 6, 2018) ("exceptional circumstances" existed,

[4] Federal law enforcement is guided by additional internal procedures when searching a law office or a lawyer, making these cases distinguishable on that basis alone.

granting a restraining order and Special Master for documents seized from the law office of a criminal defense attorney); *United States v. Hunter*, 13 F. Supp. 2d 574, 585 (D. Vt. 1998) (district court denied motion to suppress evidence seized at lawyer's house, finding no error with government filter protocol used); *United States v. Stewart*, No. 02 CR. 396, 2002 WL 1300059, at *10 (S.D.N.Y. June 11, 2002) ("extraordinary circumstances" existed to employ a Special Master where search warrant was executed in a criminal defense attorney's office that shared space with other criminal defense attorneys); *United States v. Jackson*, No. 07-0035, 2007 WL 3230140 at *1 (D.D.C. Oct. 30, 2007) (appointed Special Master for records that were not yet in government's possession and created "minimal burden"); *United States v. Ritchey*, 605 F. Supp.3d 891 (S.D. Miss. 2022) (granted restraining order where "significant volume" of privileged materials were seized and government unilaterally determined which communications met the privilege standard).

None of these "unusual" or "unique" circumstances apply here.

Other cases cited by Zou are simply not helpful to his argument. *See United States v. Scarfo*, 41 F.4th 136, 172 (3d Cir. 2022) (no error in government's use of filter protocols during wiretap and search warrant

at two law firms); *United States v. Taylor*, 764 F. Supp. 2d 230, 233 (D. Me. 2011) (denying motion to suppress and finding no error in government's filter protocol for seized emails); *United States v. SDI Future Health*, 464 F. Supp. 2d 1027, 1037 (D. Nev. 2006) (approved government's use of filter team for potentially privileged documents); *United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997) (no error in government's filter procedures).

Zou was a litigant in a civil case to which the United States is not a party. This is a very common situation, and the government's filter protocol respects Zou's potentially privileged communications.

### (3) United States did more than necessary to protect potentially privileged communications

It is worth repeating that no one from the investigative team has seen any of the filtered data. And no one on the filter team has reviewed the data or made any determinations as to whether the data contains privileged communications. The United States has and will continue to follow its legal and ethical obligations, as well as being overinclusive out of an abundance of caution.

*April 2025 devices*. As noted above, the AG's office did the initial forensic review of Zou's April 2025 seized devices. FBI took possession

and reviewed them a few months later. At no time did any attorney contact the AG's office to assert any identifiable attorney-client privilege. Nothing in Zou's devices triggered the reviewing agent (or undersigned counsel) to question whether a filter protocol was needed.[5]

*January 2026 iCloud accounts*. The United States affirmatively took steps to protect any potential attorney-client privileged communications in this case. *First*, the United States formally laid out a filter protocol before any review of iCloud accounts, a protocol that remains in place for all subsequent seized devices. Under this protocol, all potentially privileged communications are removed before the investigative team's review. *Second*, the United States searched LexisNexis databases for any pending civil or criminal matters and recorded every name and contact information for the filter teams. *Third*, the government affirmatively reached out to the defendants' criminal attorneys to inquire if they had a privilege to assert. *Fourth*, when the defendants receive forensic downloads from their devices, they will also

[5] FBI protocol, as well as USAO protocol, is to stop reviewing any discovery and engage in a filter consultation if potentially privileged communications are discovered.

receive copies of unfiltered forensic downloads from their devices, provided to them by agents and paralegals outside the prosecution team.

*June 2026 devices*. Again, as noted above, Zou's cell phone is in process of extraction. Once the device is unlocked, the FBI and USAO will engage in the same filter protocol that was used here and has been routinely used in the Eastern District of Michigan.

### C. Step three: determine if an exception applies

Step three is not necessary in this case because the United States does not intend on using any attorney-client communications in its case-in-chief. The Sixth Circuit approves of procedures to ensure that defendants have notice and opportunity to challenge whether the attorney communications are, in fact, privileged, or if an exception applies.[6] *Taylor*, 2022 WL 9408779, at *3. Defendants should be provided with the opportunity to object, and ultimately, the court may need to decide whether a particular statement or document is admissible at trial. *In re Grand Jury Subpoenas*, 454 F.3d at 520. But this step is unnecessary here—the filter process removed all attorney-client communications, regardless of whether the communications were in fact

[6] Assuming they have properly asserted the privilege, of course.

privileged. And the removed data remains with the FBI filter team agents and is inaccessible to the investigative team. When the FBI extracts Zou's Google Pixel, the same filter protocols will apply.

Employing a Special Master for a cell phone filter is not only enormously time-consuming and has a significant impact on a defendant's speedy trial rights, but is also impractical, if not impossible. It appears there are two options available: (1) extract the phone using Cellebrite/Axiom software and create the report in .pdf document format for page-by-page redaction review; or (2) find someone outside law enforcement that has the forensic tools to "virtually redact" the Cellebrite/Axiom report and re-run it without the potentially privileged information, which is the same process the filter agents would use. The former option would likely create tens of thousands of pages to review for each device—making an already time-consuming process even lengthier. The latter option would require someone who has access to forensic extraction software and it is unclear whether FBI proprietary materials would be involved.

Moreover, both versions of a defendant's forensic extraction—the original and the "clean" version—will be provided to the defendant during discovery, allowing Zou to review and raise any potential issues.

## III. Conclusion

This Court should deny Zou's motion.

Respectfully submitted,

JEROME F. GORGON JR.,
United States Attorney

s/Margaret M. Smith
Assistant United States Attorney
Robert Kuhn, AUSA
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9135
E-Mail: margaret.smith@usdoj.gov
Bar No. P71413

Dated: September 29, 2026

## Certificate of Service

I certify that on September 29, 2026, I electronically filed the foregoing Response and Brief in Support with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Attorneys of record

s/*Margaret M. Smith*
Margaret M. Smith
Assistant U.S. Attorney
United States Attorney's Office