UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No.: 26-cr-20306

v.

Hon. Judith E. Levy

Zainab Hakim, et al.,

Defendants.

---

**ALL DEFENDANTS' JOINDER TO, AND SUPPLEMENT OF, D-5'S MOTION FOR JUDICIAL APPOINTMENT FOR A MASTER TO REVIEW THE CONTENTS OF ELECTRONIC DEVICES (ECF NO. 171)**

---

On September 15, 2026, Jonathan Zou (D-5), through counsel, filed a Motion for Judicial Appointment for a Master to Review the Contents of Electronic Devices (ECF No. 171). The remaining individuals on the indictment now seek to join and adopt that motion, and provide the following supplemental authority and arguments in support.

Zou's motion contends that protected attorney-client information is present on his device(s) seized by the government, and that the government's desire to assign a "taint team" to review the device and screen for attorney-client communications is insufficient. ECF No. 171. Zou argues that in order to ensure that the attorney-client communications are truly protected, the Court should appoint a Special Master. *Id.*

The joining Defendants agree, as they believe attorney-client communications, including with both criminal and civil legal counsel, are likewise present on their devices. We share Zou's grave concerns about protecting the sanctity of this privileged material. Additionally, the joining defendants are concerned about the government's request for further information that is testimonial in nature. These two concerns are addressed in turn.

## I. The privileged communications

The relief Zou seeks is not novel; it is consistent with Sixth Circuit caselaw. In *In re Grand Jury Subpoenas 04-124-03 & 04-124-05*, 454 F.3d 511 (6th Cir. 2006), the Court rejected the government's proposed taint team, explaining that taint teams "present inevitable, and reasonably foreseeable, risks to privilege," and that the government's team "might have a more restrictive view of privilege" than the privilege holder's own counsel, with no safeguard against privileged material being wrongly classified as non-privileged and passed to the prosecution. *Id.* at 523. The Court held that the privilege holders must be given the opportunity to conduct their own privilege review. The case was remanded for the appointment of a special master. *Id.* at 523–24.

The government reads *In re Grand Jury Subpoenas* as approving filter teams whenever the government already possesses seized material. ECF No. 175, PageID.993, 995–96. It does not say that. The Sixth Circuit observed that taint teams "seem to be used primarily in limited, exigent circumstances" in which the

government has obtained potentially privileged material through a search warrant. 454 F.3d at 522–23. That was a description of past practice, offered to distinguish the case before it—not a holding that a taint team is adequate whenever material has been seized. The reasoning that actually drove the decision – that a taint team may take a narrower view of privilege, and that nothing in such a procedure guards against privileged material being misclassified and handed to the prosecution – applies with full force here. *Id.* at 523. And there is no exigency to speak of: Defendants have been indicted, the devices and accounts are in the government's custody. ECF No. 175, PageID.987–88.

The government also cites decisions from this District and Circuit that have tolerated filter teams. ECF No. 175, PageID.993–95. Many arose in a different posture: defendants seeking suppression or dismissal after the fact, where relief turns on proof of intrusion and prejudice. *See, e.g.*, *United States v. Coffman*, 574 F. App'x 541, 564 (6th Cir. 2014); *United States v. Zigmond*, No. 15-20283, 2017 WL 3149207, at *3 (E.D. Mich. July 25, 2017); *United States v. Taylor*, No. 21-cr-00013, 2022 WL 9408779, at *3 (E.D. Ky. Oct. 14, 2022). Whether a remedy is warranted after the fact is a different question from which procedure should govern before review occurs. Moreover, the protocols in two of the government's cited cases (*Zigmond* and *Taylor*) afforded the defendant an opportunity to review materials before they were transferred to the prosecution team. ECF No. 175, PageID.993–95. The protocol here does not. And, when a court in this District was asked to choose the procedure

prospectively in *United States v. Castro*, a federal capital prosecution, it rejected the U.S. Attorney's proposed "Filter Team" for the defendants' recorded prison calls, expressly adopted the Sixth Circuit's holding in *In re Grand Jury Subpoenas*, and appointed a special master. 2020 U.S. Dist. LEXIS 7435 (E.D. Mich. Jan. 16, 2020).

The government's description of its filter confirms, rather than dispels, the Sixth Circuit's concerns. The filter removes only communications matching roughly twenty attorney names drawn from public civil dockets, together with associated identifiers; FBI agents—not lawyers—ran the searches; and the resulting "clean" returns have already gone to the investigative team. ECF No. 175, PageID.986–87. Anything not keyed to a docketed attorney—communications with criminal defense counsel, consulting counsel, legal organizations, or messages sent through an account the government has not linked to a lawyer—passes to the prosecution team unexamined. The government concedes the point: in seeking attorney identities and screen names from defense counsel, it wrote that without that information "we cannot effectively filter any potential atty/client materials." *Id.* at PageID.988. That is exactly the undetected-error risk the Sixth Circuit identified. 454 F.3d at 523. The government's promise to produce both the filtered and unfiltered versions in discovery, ECF No. 175, PageID.1002, does not cure it; Defendants would learn of any error only after the prosecution team has seen the material.

The government further concedes that Zou's April 2025 devices were reviewed by the Michigan Attorney General's Office, and later by the FBI, with no filter

protocol in place—even though Zou's civil suit had been pending in this Court since February 2025—and that in January 2026 it decided no filter was needed because those devices "had already been reviewed." ECF No. 175, PageID.985–86 & n.1. That no attorney communications were "identified" by a review that was not looking for them offers little assurance. Where the government proceeds without a neutral master, it "bears the burden to rebut the presumption that tainted material was provided to the prosecution team," *United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997), and it must keep meticulous records of what was reviewed, by whom, and where it went, *Hicks v. Bush*, 452 F. Supp. 2d 88, 103–04 (D.D.C. 2006). At a minimum, the Court should require that accounting. And because Defendants do not yet know what has been seized from each of them or how it has been reviewed, the accounting should extend to every Defendant.

The government responds that its over-inclusive filter "eliminates the need for a privilege determination." ECF No. 175, PageID.996. But the filter itself embodies a privilege determination—which names, accounts, and communications to treat as potentially privileged—and every item it does not catch is deemed non-privileged by default. Nor is it an answer that the government does not intend to use attorney-client communications in its case-in-chief. *Id.* at PageID.1001. The harm of an intrusion lies in the prosecution team's exposure to privileged material, not only in its use at trial. *See Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593 (5th Cir. 2021).

Courts have also appointed special masters in the kind of politically charged,

closely watched matters in which the appearance of a fair process matters most. In *In re Search Warrant Dated November 5, 2021*, the court appointed a special master over the government's objection to review phones seized from individuals associated with Project Veritas, reasoning that in light of the potential First Amendment concerns, a neutral review would help protect public confidence in the administration of justice, because the procedure must "not only be fair but also appear to be fair." No. 21-MC-813 (AT), 2021 WL 5845146 (S.D.N.Y. Dec. 8, 2021). Special masters were likewise appointed to review devices seized from Michael Cohen and Rudolph Giuliani—in the latter case at the government's own request, to ensure the perception of fairness. *See Cohen v. United States*, No. 18-MJ-3161 (KMW) (S.D.N.Y. 2018); *In re Search Warrant Dated April 28, 2021*, No. 21-MC-425 (JPO), 2021 WL 2188150 (S.D.N.Y. May 28, 2021). This prosecution arises from campus political actions, has drawn intense public attention, and overlaps with pending civil-rights litigation against the University of Michigan. The case for a neutral reviewer is as strong here.

The government's claim that a special master is impractical for cell-phone data, ECF No. 175, PageID.1002, is belied by those same cases, in which special masters reviewed the contents of seized phones and other electronic devices. Courts have used special masters for electronic review at far larger scale: in *United States v. Black*, No. 16-20032-JAR (D. Kan.), a special master was appointed to identify and excise privileged material from a collection of nearly 49,000 recorded calls. And the government itself describes a workable method—using forensic tools to "virtually

redact" an extraction and re-run the report—which it acknowledges is "the same process the filter agents would use." ECF No. 175, PageID.1002. The only difference is who does it. As for delay, the speedy-trial right the government invokes belongs to Defendants, [who are prepared to address any resulting time under the Speedy Trial Act].

At a minimum, if the Court declines to appoint a special master, Defendants must be permitted to conduct their own privilege review in the first instance, as the Sixth Circuit required. 454 F.3d at 523. Even courts that have tolerated filter teams have insisted on that safeguard. The Eleventh Circuit approved a filter protocol only as modified to give the privilege holders the first opportunity to identify potentially privileged materials, and to bar disputed materials from reaching the prosecution team without the privilege holder's consent or a court order. *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235 (11th Cir. 2021); *see also United States v. Ritchey*, 605 F. Supp. 3d 891 (S.D. Miss. 2022) (enjoining and modifying a filter protocol under which the government unilaterally released materials it deemed non-privileged to the prosecution team). That procedure would impose little burden here. The government already intends to give each Defendant a copy of the unfiltered extraction of his or her devices. ECF No. 175, PageID.1000–02. It need only do so before, rather than after, the investigative team begins its review—and for Zou's phone, which has not yet been extracted, that sequence can be adopted now.

Defendants' communications with legal counsel, in the context of ongoing litigation to expose civil rights violations and alleged repression by the University of Michigan, are deserving of immense protection. This is especially true considering the related nature of this criminal case and the civil matters, and the government's stated interest in assisting the University of Michigan in defending those lawsuits. *See* Hr'g Tr. ECF No. 165, PagelD.921-922.

## II. The government's request for testimonial information

In addition, the government has requested that Defendants provide them with a list of counsels, as well as counsels' information including "any screen names used in applications like Signal and WhatsApp." ECF No. 175, PageID.988. While this request has been made under the umbrella of identifying a way to search for and identify privileged communications, it compels Defendants to provide testimonial information to the government. Asking for internet usernames, runs afoul of the Defendants' Fifth Amendment right to remain silent.

The Fifth Amendment protects against compelled communications that require a defendant to disclose "the contents of his own mind." *United States v. Hubbell*, 530 U.S. 27, 43 (2000). Its protection reaches not only answers that would themselves support a conviction, but also those that "would furnish a link in the chain of evidence needed to prosecute." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The government's request goes beyond the names of counsel: it asks each Defendant to provide the government with information that may be utilized for investigation ial

investigatory leads[1]: identifying social media accounts or "screen names" through which communications occurred on Signal and other platforms.

The government has now gone a step further in contending that Defendants' failure to respond to the government's email compelling the names and usernames of all counsel forfeits the right to litigate this motion or to seek protection of their attorney-client privileged material. ECF No. 175, PageID.988, 991. This is without merit. Defendants' protection of their privileged communications cannot be made contingent on surrendering their Fifth Amendment rights. The Supreme Court has characterized it "intolerable that one constitutional right should have to be surrendered in order to assert another." *Simmons v. United States*, 390 U.S. 377, 394 (1968). Courts have recognized this tension in the privilege-review setting specifically. The Ninth Circuit recently held that the Fifth Amendment barred a district court from compelling a target's law firm to produce a privilege log to the government,

---

[1] Defendants' concerns are not unfounded. Last April, Dearborn attorney Amir Makled, who was engaged in the representation of a pro-Palestinian protestor from the University of Michigan encampment, was detained at the Detroit Airport and forced to either reveal all of the contacts in his phone or turn his cell phone over to Border Patrol agents. *See* FOX 2 Detroit, *Civil rights attorney says he was harassed by federal agents at Metro Airport* (Apr. 8, 2025), available at https://www.fox2detroit.com/news/civil-rights-attorney-says-he-was-harassed-federal-agents-metro-airport. See also The Guardian, *Pro-Palestinian protoester's lawyer stopped and searched at US border: "They were going to take my device"*, (Apr. 12, 2025) available at https://www.theguardian.com/us-news/2025/apr/12/amir-makled-phone-search-border-immigration (""To me, there's a clear correlation when you think about what's been happening with all the student protesters across the country and the very explicit direction from the current administration about looking into attorneys who are taking on cases for people seeking asylum . . . ' [Makled] said. In the past few months, the Trump administration has set its sights on people protesting against Israel's ongoing attacks on Gaza. The administration has detained and attempted to deport student protesters who are in the US on visas and revoked the visas of more than 600 students, some in explicit retaliation for activism.")

while recognizing that the court itself could review the log and the withheld documents *in camera*. *In re Grand Jury Subpoena*, 127 F.4th 139 (9th Cir. 2024). And the Fourth Circuit criticized a filter team's request that a law firm furnish a client list, noting that such a list could be used to contact clients directly in pursuit of waivers. *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 180. Of course, as noted above, a court-appointed special master would resolve this problem: Defendants can provide any identifying information needed for the privilege screen to a neutral, under seal, without handing it to their adversary. Moreover, Defendants did raise this issue at the protective order hearing on September 9, 2026, but the issue was not able to be fully addressed due to time constraints. *See* Hr'g Tr. ECF No. 165, PagelD.864; PagelD.925-927. Compelling the identities of consulting counsel raises a separate Sixth Amendment concern. Which lawyers a defendant has consulted, and when, can reveal defense preparation and strategy. *See Weatherford v. Bursey*, 429 U.S. 545, 554 (1977) (indicating that a Sixth Amendment claim would be substantially stronger where the prosecution learned the details of the defense's trial preparations).

For the above reasons, and the reasons articulated in the previously filed motion by D-5 (ECF No. 171), Defendants respectfully request the following relief:

(1) That the Court appoint a Special Master to conduct the privilege review of all Defendants' seized devices and accounts; or, in the alternative

(2) Require the government to produce each Defendant's unfiltered extractions before any further review by the investigative team, permit each Defendant

to conduct an initial privilege review, and have any disputes resolved by a Special Master or the Court before disputed material is released to the government; and

(3) Direct that any identifying information Defendants provide to facilitate the review be submitted to the Special Master or the Court under seal and not disclosed to the government; and

(4) order the government to disclose, for each Defendant, what devices and accounts have been seized and when, whether and by whom their contents were reviewed before any filter was applied, and the names and identifiers used by any filter team, and set an evidentiary hearing if that accounting warrants one.:

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**

*s/ Amanda N. Bashi & Sara Garber*
Amanda N. Bashi & Sara Garber
Assistant Federal Defenders
Attorneys for Zainab Hakim
613 Abbott Street, Suite 500
Detroit, Michigan 48226

***With joinder and consent to file by all Defense Counsel***

Dated: October 3, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff, Case No.: 26-cr-20306-1

v. Hon. Judith E. Levy

Zainab Hakim,

Defendant.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2026, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Amanda N. Bashi