UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff — Honorable Judith E Levy

-vs-

D-5 JONATHAN HONGRU ZOU, — Case No 5:26-cr-20306

Defendant
_______________________________________/

# REPLY TO UNITED STATES' RESPONSE TO MOTION FOR JUDICIAL APPOINTMENT FOR A MASTER TO REVIEW THE CONTENTS OF ELECTRONIC DEVICES [ECF NO 175 PAGE ID 983]

## I. FORFEITURE

"It's the truth, but it's not accurate"
—*Absence of Malice* (1981)

The government contends since our electronic transmission to their "affirmative[] reach[]… to the defense team" [ECF No 175 Page ID 988] "did not provide any names and did not assert privilege as to any identifiable attorney relationship" [ECF No 175 Page ID 989], "[t]his Court can consider [our] argument forfeited" [ECF No 175 Page ID 991-992 (citations omitted)]. We respectfully disagree.

In an email dated August 31, 2026, the government requested counsel

provide "identification information for a particular attorney and his/her client…." (Exhibit "A"). Significantly, we were not *then* advised the government had *already* engaged in extensive analyses of some of JONATHAN HONGRU ZOU's electronic devices [ECF No 175 Page ID 985-987].

The government would have this Court believe, in an apparent lack of candor, the *entirety* of counsel's response was an inability "to indicate whether [their] list is accurate and exhaustive" [ECF No 175 Page ID 989]. More precisely and *completely*, we specifically and unequivocally challenged the utilization of a governmental "taint team" (Exhibit "B").

> Thank you for your inquiry. Without designating the identities of the civil attorneys the government possesses, we are unable to indicate whether your list is accurate and exhaustive.
>
> Also, *if the government intends to utilize a taint team comprised of federal employees, I respectfully object. Under the circumstances, I believe the Court should appoint the members of the taint team.* (Exhibit "B") (emphasis added).

The government objected to our proposal (Exhibit "C").

The foregoing exchange clearly demonstrates we promptly advanced this issue with the government, subsequently advised the Court during a hearing on or about September 9, 2026 of the existence of a potential *impasse* and shortly thereafter, filed our Motion on or about September 15, 2026.

"[F]orfeiture is [defined as] the failure to make the timely assertion of a right," *United States v Noble*, 762 F 3d 509, 528 (6th Cir 2014) (citations omitted);

*accord, Walker v United States,* 134 F 4th 137, 440 (6th Cir 2025) (citations omitted). Indeed there can be no *reasonable* dispute we "timely assert[ed]" our position and never abandoned it.

Consequently, the government's position is meritless.

## II. UNILATERAL EXAMINATION OF DEVICES

### A.

The government commences their pleading with the assertion "potentially privileged communications are already removed…." [ECF No 175 Page ID 984-985]. With due respect, *query* the accuracy of this contention: on or about August 31, 2026 the government inquires as to the identities of counsel (Exhibit "A"), but yet in their Response we are *now* informed analyses were conducted commencing April 2025 [ECF No 175 Page ID 985-986, 992] and your Defendant's "devices contained *no readily* apparent attorney-client communications…." [ECF No 175 Page ID 992 (emphasis added)]. We can only wonder why the government issued its email (Exhibit "A") when they would now have us believe their analyses were already well under way[1].

---

[1]"It should go without saying that, regardless of the content, private communications between a defendant and his or her defense team should be treated as privileged unless otherwise ordered by the court. *Fisher v United States,* 425 US 391, 403, 96 S Ct 1569, 48 L Ed 2d 39 (1976) ( "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged")." *United States v Pedersen*, 2014 WL 3871197 * 21 (D Or 2014).

We can only surmise who concluded the absence of "attorney-client communications" because Mr Zou believes he did, in fact, communicate with counsel utilizing these devices. We also do not comprehend the parameters of "readily apparent" when admittedly the government did not know the identities of *all* Mr Zou's counsel.

B.

The government further proclaims it *unilaterally* "established a filter process…." [ECF No 175 Page ID 984]. Unfortunately, it does not elucidate the protocols of their "filter process[2]," nor who conducted same[3]. While they advise

[2]Due to an absence of discovery at this juncture, we are uncertain "whether the government complied with a fundamental requirement of the Fourth Amendment and with the plain language of the warrants that it may seize only those materials specifically authorized by the Court," *United States v Comey*, 809 F Supp 3d 396, 405 (ED Va 2025). Similarly, we cannot advise whether the search warrant contained "strict procedural safeguards to ensure privileged information was not reviewed by the prosecution team," *Id* at 407.

[3]In their Response, the government superficially indicates "[t]he Attorney General's Office initially reviewed the contents of Zou's electronic devices seized in April 2025" [ECF No 175 Page ID 985-986]. Apparently when "[t]he FBI obtained Zou's electronic devices a few months later" and concluded "no known attorney communications [were]…identified" [ECF No 175 Page ID 986], we have no information as to how, who and under what circumstances they are able to profess an absence of privileged communications. With due respect, we are not able to accept *at face value* the accuracy of labeling their process "conservative" and "over inclusive" [ECF No 175 Page ID 996]. Nor are we willing to accept "no one from the investigative team has seen any of the filtered data" [ECF No 175 Page ID 999], *see, United States v Pedersen*, 2014 WL 3871197, *supra,* at * 20 ("the court did not believe it was in a position to rely on the representation of the prosecution").

their "process" was limited to "lawyers on record…in [Zou's] civil case" [ECF No 175 Page ID 984] *query* why they did not deem it prudent *before* their analyses to inquire as to the existence of *other counsel* who were not "on record" [ECF No 175 Page ID 984], which JONATHAN HONGRU ZOU did utilize.

C.

Also, we can only speculate what protocol, if any, was employed by the "Attorney General's Office" [ECF No 175 Page ID 985, 999-1000], when they conducted their "initial[] review[]" [ECF No 175 Page ID 985-986]. Though the government claims it "affirmatively took steps to protect any potential attorney-client communications" [ECF No 175 Page ID 1000], they do not provide specification as to the particulars of the alleged "filter protocol" nor who conducted same [ECF No 175 Page ID 1000].[4]

---

If it is the intent of the government to claim any improprieties exclusively reside with state personnel, we respectfully note the "silver-platter-doctrine" was repudiated by the United States Supreme Court well-over sixty (60) years ago, *Elkins v United States,* 364 US 206, 223-224, 80 S Ct 1437, 4 L Ed 2d 1669 (1960). Similarly, they cannot obtain solace from investigative deficiencies in light of their "deliberate ignorance," *United States v Matthews*, 31 F 4th 436, 449-450 (6th Cir 2022), inasmuch as violations of privilege may occur "from both intentional conduct *and neglect*," *United States v Pedersen*, 2014 WL 3871197, *supra,* at * 26 (emphasis added).

[4]While they contend "Zou has not asserted or identified any attorney-client relationships" [ECF No 175 Page ID 986 (footnote omitted)], their position ignores he enjoys a fifth amendment privilege which does not require him to *assist* in the government's investigation *against him*, *see, Estelle v Smith*, 451 US 454,

D.

The government further proclaims the absence of any *potentially* privileged communications [ECF No 175 Page ID 986]. Initially, we note the evidentiary void of *any* information buttressing this conclusion. Secondly and more substantively, it is the judiciary, not the government, who is tasked with rendering such a determination, *see generally, In re: Search Warrant*, 942 F 3d 159, 176-177 (4th Cir 2019).

> "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co v United States,* 449 US 383, 389, 101 S Ct 677, 66 L Ed 2d 584 (1981). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* A lawyer's ability to provide sound legal advice to her client and advocate on her client's behalf "depends upon the lawyer's being fully informed by the client." *Id.* Accordingly, the law is loathe to violate this privilege and "[o]nce an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." *Patterson v. Illinois,* 487 US 285, 290 n 3, 108 S Ct 2389, 101 L Ed 2d 261 (1988). "It is clear that government interference with a defendant's relationship with his attorney may render counsel's assistance so ineffective as to violate his Sixth Amendment right to counsel and his Fifth Amendment right to due process of law." *United States v. Irwin,* 612 F 2d 1182, 1185 (9th Cir 1980). "[S]ubstantial questions of fundamental fairness are raised where, in connection with a

---

462, 101 S Ct 1866, 68 L Ed 2d 359 (1981); *Culombe v Connecticut,* 367 US 568, 587-602, 81 S Ct 1860, 6 L Ed 2d 1037 (1961).

Similarly, the government overlooks the universal maxim Mr Zou's entry of a not-guilty-plea on or about June 12, 2026 placed *at issue* all aspects of this prosecution, *see, e g, United States v Matthews*, 431 F 3d 1296, 1311 (11th Cir 2005); *United States v Sanchez,* 118 F 3d 192, 196 (4th Cir 1997); *Mullreed v Kropp*, 425 F 2d 1095, 1099 (6th Cir 1970).

criminal prosecution, the government invades the privilege." *United States v Neill,* 952 F Supp. 834, 839 (D DC1997). *United States v Pedersen, supra*, 2014 WL 3871197 at * 26.

## III. EVIDENTIARY HEARING

Cognizant "[o]nly through the stringent safeguarding of a criminal defendant's rights can the court ensure that justice is done," *United States v Pedersen, supra*, 2014 WL 3871197 at * 33, it is imperative an evidentiary hearing be conducted in these premises, *United States v Voigt*, 89 F 3d 1050, 1067 (3d Cir 1996), wherein the government will be required to demonstrate the absence of tainted material being disseminated to the prosecution team, *United States v Neill,* 952 F Supp. 834, 839 (D DC1997)[5].

Respectfully submitted,

ARTHUR JAY WEISS
JOHN A SHEA
/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Defendant ZOU
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: October 6, 2026.

[5]While the government advises "no filter protocol was in place," [ECF No 175 Page ID 986 n1], if any protocols do exist, they should be disseminated to counsel "at the earliest possible opportunity," *United States v Pedersen, supra*, 2014 WL 3871197 at * 31.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff — Honorable Judith E Levy

-vs-

D-5 JONATHAN HONGRU ZOU, — Case No 5:26-cr-20306

Defendant
______________________________/

CERTIFICATE OF SERVICE

ARTHUR JAY WEISS, counsel of record for JONATHAN HONGRU ZOU, a Defendant in the above-entitled matter, hereby Certifies that on the 6th day of October 2026 he served all counsel of record with a copy of Reply to United States' Response to Motion for Judicial Appointment for a Master to Review the Contents of Electronic Devices [ECF No 175 Page ID 983], Exhibits "A" through "C" and Certificate of Service relative to the above-entitled matter by electronic means.

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS