UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No.: 26-cr-20306

v.

Hon. Judith E. Levy

Zainab Hakim, et al.

Defendants.

---

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENSE JOINDER AND SUPPLEMENTAL MOTION FOR JUDICIAL APPOINTMENT FOR A MASTER TO REVIEW THE CONTENTS OF ELECTRONIC DEVICES (ECF NO. 194)**

---

The government argues that a special master is not necessary because its own filter protocol is sufficient to guard each defendant's privileged communications. Who says it is sufficient? The government does. Yet the government's assurances do not address where the filter protocol falls short, or the inherent conflict of interest posed by a taint team. For the reasons that follow, an independent special master would best protect Defendants' attorney-client privileges, including work product privileges, and their privilege against self-incrimination.

**I. A taint team using the government's filter protocol will not protect attorney-client privilege**

First, the government presupposes that its filter is adequate. Yet as the defense pointed out, any communication "not keyed to a docketed attorney" would pass

through the filter protocol. To put it more plainly this time: many of Defendants' devices contain privileged communication beyond the 20 attorneys with active appearances on file. The government itself alleges Defendants organized meetings, protests, and teach-ins at the University of Michigan —including a month-long encampment—, both individually and through student organizations, for the better part of two years (ECF No. 1, Indictment, ¶¶ 6-12.). Defendants and their peers have also been subject to an unprecedented spate of student disciplinary proceedings,[1] surveillance by campus police and private security guards,[2] state criminal probes,[3] and now, this federal criminal investigation.[4] It would be little wonder that they consulted lawyers about these events. As explained below, Defendants should not be compelled to reveal factual details of those consultations to the government. Describing Defendants' experiences on campus in broad strokes is enough to show the government's filter is missing information.

---

[1] Bronwyn Johnston, TAHRIR Coalition holds press conferences to discuss disciplinary action against students, administration response to demonstrations, The Michigan Daily (July 3, 2024), https://www.michigandaily.com/news/administration/tahrir-coalition-holds-press-conference/

[2] Tom Perkins, *University of Michigan using undercover investigators to surveil student Gaza protestors*, The Guardian (June 6, 2025), https://www.theguardian.com/us-news/2025/jun/06/michigan-university-gaza-surveillance.

[3] Isabel Lohman, *Michigan AG charges 11 over U-M protests, counterprotest*, Bridge Michigan (Sept. 12, 2024), https://www.michigandaily.com/news/administration/tahrir-coalition-holds-press-conference/; Aja Arnold, Democrat Michigan AG Asked FBI to Raid Protesters' Homes — But Won't Tell Students Why, The Intercept (June 15, 2025), https://theintercept.com/2025/06/15/university-michigan-fbi-raid-students-palestine/.

[4] *See generally,* ACLU and Amnesty International, Student Speech Under Attack: Suppression of Pro-Palestine Speech and Dissent on Campus 69-73 (Sept. 2026), available at https://assets.aclu.org/live/uploads/2026/09/Report_CampusProtest-2.pdf.

The government argues that Defendants' reluctance to share material information with the prosecution means they cannot carry its burden to demonstrate privilege. That is not the question before the Court. "Actual determination of the merits of any claim of privilege must await adjudication after the parties have agreed to a subset of documents over which they disagree as to privilege." *In re Grand Jury Subpoenas*, 454 F.3d 511, 516 n.3 (6th Cir. 2006). The government has gone ahead with constructing and applying its own filter protocol. Until the parties and Court agree on the protocol, though, "the question of privilege is simply not ripe for adjudication." Id. at 518.

This brings us to *In re Grand Jury Subpoenas*. The government reads one line in the Sixth Circuit's opinion to broadly sanction the use of taint teams whenever the government has seized potentially privileged material through a search warrant. (ECF No. 194, PageID.1165.) In doing so, the government ignores the concern on which the court spends much more time: necessarily, "taint teams pose a serious risk to holders of privilege . . ." 454 F.3d 511, 523. The court recognized an inherent conflict of interest when the taint team and prosecution share the same overall goal of investigation. *See id.* "[H]uman nature being what it is," *id.*, taint teams "have been implicated in the past in leaks of confidential information to prosecutors." *Id.; United States v. Renzi*, 722 F.Supp.2d 1100, 1112 (D. Ariz. 2010) ("[L]iberal use of taint teams should be discouraged because they present 'inevitable and reasonably foreseeable risks that privileged information may be leaked to prosecutors.'") "And even if no leaks occur, the use of walled-off taint teams undermines the appearance of fairness and justice."

*United States v. Gallego*, No. 4:18-cr-01537, 2018 WL 4257967, at *2 (D. Ariz. Sept. 6, 2018); see also *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 182 (4th Cir. 2019), as amended (Oct. 31, 2019) (collecting cases on the appearance of unfairness that filter teams create).

The fact that the government obtained the devices here through execution of a search warrant does not allow it to examine privileged materials. Information can fall within the evidentiary scope of a search warrant and still trigger a valid claim of privilege. In fact, the searches might themselves be unreasonable if they swept in privileged communication. *See Schwimmer v. United States*, 232 F.2d 855, 866 (8th Cir. 1956) ("[A]n attorney's obligation to safeguard the privilege of his files and papers, from any attempted invasion of such protected confidences as they contain, entitles him to set up . . . the violation of privilege . . . as an element of unreasonable search and seizure."). The argument for a taint team is weakest here, at the procedural stage, post-seizure and post-indictment: there is no competing interest in grand jury secrecy, nor is there a procedural or investigative exigency compelling the government's review of the devices.

The government relies on several cases that look backwards on the use of a taint team, either at the motion-to-suppress stage or post-conviction. Only one case, *Heebe v. United States*, 2012 WL 3065445, (E.D. La. July 27, 2012), prospectively approved the use of a taint team. When given the chance to weigh in beforehand, many courts agree that "[t]he use of taint teams should be strictly limited to situations where they are necessary to avoid the accidental governmental review of privileged communications.

If there is a feasible means to segregate privileged material without risk of accidental review and without use of a taint team, such means should be employed." *United States v. Pedersen*, No. 3:12-CR-00431-HA, 2014 WL 3871197, at *31 (D. Or. Aug. 6, 2014).

Here, an independent special master is the best alternative. The features of this case make it so. The indicted acts all have a political valence and the case has accordingly attracted intense public scrutiny. The government itself has emphasized the voluminous, personal nature of the discovery and that this amount and depth of information is extraordinary compared to most criminal cases.[5] Privileged material is very likely to be present on the devices, and intermingled with other information.

As for the government's concerns about delay and cost, what is requested here is not the beginning of a parade of similar requests. The government worries there will be an endless flow of special master requests in criminal cases; but most criminal cases don't present the unique circumstances present here: concurrent civil litigation plus a prior and related state-level investigation (and prosecutions) – all of which preceded the criminal indictment here and necessarily involved other attorneys. Even so, the Court can impose restrictions on both at the outset of a Special Master's review. As the Sixth Circuit explained in *In re Grand Jury*, the "first cut" by a special master will be "mechanical," that is to say, fast. 454 F.3d at 524. Independent review will also facilitate

[5] See, e.g., ECF No. 165, Protective Order Hr'g Tr., Sept. 9, 2026, PageID.865-66 ("We are talking about thousands of messages which add up in data. You are talking about photos, videos, things of that nature and a huge amount of it is relevant . . . There are numerous statements throughout this file, whether it goes to where the individuals live, work, socialize, their private documents, health issues, their sexual activities, their family history.").

the defense's ability to quickly and decisively identify privileged material without worrying about the government using the defense's search terms for its own investigative purpose.

Finally, as this Court has observed before, "this is the case [the government] chose to indict." (ECF No. 165, Protective Order Hr'g Tr., Sept. 9, 2026, PageID.885.) There may be many devices to review. Still, "[c]oncerns with efficiency cannot be the principal driving force behind our procedures for resolving disputes over important legal rights of individuals." § 11:19. Paul Rice, Grand jury investigations and privileged documents in the possession of the government, 2 Attorney-Client Privilege in the U.S. § 11:19 (2026 ed.). "Overemphasis of this concern is too often a recipe for the eventual elimination of the most fundamental rights and needs of the people it is supposed to be serving." *Id.*

## II. Furnishing attorney usernames is both testimonial and potentially incriminating

Communication must either "explicitly or implicitly" relay a fact to be considered testimonial. *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 189 (2004) (quoting *Doe v. United States*, 487 U.S. 201, 210 (1988)). The *Hiibel* Court clarified that "[s]tating one's name may qualify as an assertion of fact relating to identity" and thus qualify for protection under the Fifth Amendment privilege against self-incrimination. *Id.* Applied here, identifying a username that the government has not independently connected to someone would be a non-neutral assertion of fact.

The identification would implicitly assert a defendant's knowledge of the username, a connection between the defendant and that account, and critically here, a purpose for communication with an attorney that the government later deems incriminating.[6] Consider that in the course of litigating bond motions and the protective order in this case, the government has painted protest chants and social media posts as threatening conduct by the defendants (even when the social media accounts in question have not been linked to the defendants). Disclosing attorney usernames would inevitably lead the government to draw conclusions about defendants' First Amendment activities. In this way, information about attorney representation "may be privileged when the person invoking the privilege is able to show that a strong possibility exists that disclosure of the information would implicate the client in the very matter for which legal advice was sought in the first case." *In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach)*, 695 F.2d 363, 365 (9th Cir. 1982).

The government's demand for attorney usernames puts Defendants in a catch-22 situation. Withholding information creates the risk of privileged material being turned over to the investigative team. Giving the government identifying information, however, could in turn broaden the government's investigation by a) identifying individuals who are *not* currently attorneys of record, and thereby b) revealing

---

[6] Although the Court found no Fifth Amendment prohibition violation, it recognized that "a case may arise where there is a substantial allegation that furnishing identify at the time of a traffic stop would have given the police a link in the chain of evidence needed to convict the individual of a separate offense." *Id.* at 191. In that case, a court "can then consider whether the privilege applies, and, if the Fifth Amendment has been violated, what remedy must follow." *Id.*

defendants' personal and organizational political and legal strategies. Appointing a Special Master would solve this problem.

For the foregoing reasons, as well as those outlined in the Joinder and Supplement, (ECF No. 178), the Court should appoint a Special Master, or in the alternative permit Defendants to conduct an initial privilege review.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**

*s/ Amanda N. Bashi & Sara Garber*
Amanda N. Bashi & Sara Garber
Assistant Federal Defenders
Attorney for Zainab Hakim
613 Abbott Street, Suite 500
Detroit, Michigan 48226

***With joinder and consent to file by all Defense Counsel***

Dated: October 26, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026 I filed the foregoing document electronically with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Amanda N. Bashi