UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

ZAINAB HAKIM, et al.,

Defendants.

Case No.: 26-cr-20306

Hon. Judith E. Levy

---

**JOINT DEFENSE SUPPLEMENTAL PLEADING ON REMAINING DISPUTES CONCERNING PROTECTIVE ORDER**

---

Defense counsel continue to agree that a narrowly tailored protective order guarding against disclosure of personal identifying information (PII) of defendants, complainants, and third parties is appropriate. Their position has been repeated in written pleadings (*see*, ECF No. 118, Page ID, 565; ECF No. 144, Page ID. 720), during the September 9, 2026, hearing when the protective order was discussed at length, and in meet-and-confer sessions with the government, where the parties worked in good faith to resolve outstanding disputes. While some disputes have been resolved, one core disagreement remains: how to treat Defendants' phones and other digital media material that may include some PII but primarily contain material that would not otherwise be subjected to the strictures of a protective order.

The government continues to take the position that phones in their entirety must be treated as sensitive because they contain some PII. That is overbroad and not supported by good cause. To put things in practical terms, assume that chats containing complainants' PII total 200 megabytes. Assume further that smart phones typically have around 200 gigabytes of storage. Under the government's approach, the entirety of the phone must be treated as sensitive merely because .001% of its contents are sensitive. Even if the numbers are adjusted, the fact remains that the government uses a miniscule amount of sensitive material—for which Defendants agree good cause exists to protect—to treat the entire voluminous container (*i.e.*, the phone) as sensitive. This overly broad position finds no support in Rule 16(d)(1) and the body of case law that, as the Court recognized and the government did not contest, requires a good cause based on the movant identifying "clearly-defined, specific and serious injury" that would occur absent the requested protective order. (ECF No. 165, Page ID. 859-860).

In contrast, while the defense agrees that the PII that is on a phone or other digital media should be treated as sensitive, it would be improper and contrary to law to use the mere presence of PII to transform everything else on the phone—including unrelated emails, text messages, photographs, and videos—into "sensitive" material even though that material would never meet the good cause standard on its own. There are reasonable ways to identify PII

and sensitive material that can be implemented to avoid adopting the government's broad blanket approach. For instance, the government could identify the PII that should be protected.

Because the burden remains on the government to justify the scope of its requested protective order, defense counsel use this pleading to further explain their objection to the approach the government has taken, and will reply in due course to any specific arguments that the government may raise in defense of that approach.

## I. Legal Standards

Under Federal Rule of Criminal Procedure 16(d)(1), the Court "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." As previously cited by the defense and incorporated herein, case law defines "good cause" as requiring that disclosure of particular information will result in specific and serious injury. (ECF No. 144, Page ID 721, citing *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013)). The government bears the burden of demonstrating good cause, and it cannot meet that burden based on broad allegations and conclusory statements. (ECF No. 144, Page ID 721, *citing United States v. Stone*, No. 10-20123, 2012 WL 137746 (E.D. Mich. Jan. 18, 2012) and *United States v. Gangi*, 1998 WL 226196, *2 (S.D.N.Y. May 4, 1998)).

## II. Background

On August 10, 2026, the government filed its motion for a protective order. (ECF No. 118). A proposed protective order was attached as Exhibit A to that motion. (ECF. No. 118). Counsel for Mr. Zou responded to the government's motion on August 24, 2026 (ECF No. 143), and a response submitted by all defendants was filed later that same day. (ECF No. 144). The government filed its reply on August 31, 2026. (ECF No. 146). On September 8, 2026, defense counsel submitted their proposed protective order. (ECF No. 157-1). On September 9, 2026, the Court held a hearing during which each disputed and non-disputed provision of the government's protective order was reviewed.

The definition of "Sensitive Materials" and the production of Defendants' phones and other digital devices was one of the main disputed topics. It was apparent during the hearing that while the parties' respective written definitions of "Sensitive Materials" were substantively the same (*compare* ECF No. 118-1, Page ID 587 *with* ECF No. 157-1, Page ID 808), the parties' understandings of those terms were markedly different, especially regarding the term's scope and how it impacted the phones where it was located.

During the hearing, defense counsel queried whether the entire report containing information from a phone would be sensitive merely because it contained some information that happened to be sensitive. (ECF No. 165, Page

ID 884, lines 14-21). The Court responded, "Not from my perspective." (*Id.* line 22). The government then clarified that the phones would be produced with an executable file rather than a large report, and that the "whole phone" would be in the "bucket of sensitive materials" and that the government "cannot go in and redact anything out of it." (*Id.*; lines 24-25; Page ID 885, lines 1-7). The defense responded that the government's approach was reverting to "a blanket type of protective order over each device not supported by targeted good cause." (*Id.*, Page ID 885, lines 18-21). The defense objection was thus made clear at this point.

After continued discussions, the Court indicated to the government that it was possible to treat a subset of information on a phone as sensitive without making the entire phone sensitive: "So with respect to the cell phones, let's just talk about them for a second, what if we take out cell phone extraction from sensitive or say -- the government could identify -- we can identify victims' names, victims' addresses, victims' children, places of work. We can identify things that are absolutely sensitive not to be released without having the whole cell phone." (*Id.*, Page ID 885, lines 13-19). The Court adjourned and left the parties to continue discussions about this topic, and other outstanding issues related to the protective order. The parties engaged in further discussions but were unable to reach an agreement on the specific issue of the interplay between sensitive materials and the phones where it was located.

## III. Argument

### A. Designating an *Entire* Phone or Other Digital Media as Sensitive Merely Because It May Contain *Some* PII is Overly Broad.

The government's overbroad approach to treat entire phones as sensitive is contrary to Rule 16 and should be rejected. Rather than establishing good cause for that request, the government's position ignores the overarching instruction "to ensure that a protective order is no broader than is necessary to serve the intended purposes" *United States v. Darden*, No. 3:17-cr-00124, 2017 U.S. Dist. LEXIS 137942, at *7 (M.D. Tenn. Aug. 28, 2017). The government's proposed protective order, as elucidated at the September 9, 2026, hearing and through meet-and-confer sessions with the defense is far broader than necessary because it results in the designation of massive non-sensitive quantities of material as sensitive. These concerns were raised at the September 9, 2026, hearing, but bear repeating here.

Defendants' phones contain vast troves of information that have zero connection to the charges in this case and, more specifically, to the PII that is the reason for the government's requested protective order. For example, every phone will house hundreds if not thousands of photographs and videos of family and friends from years prior that would never be subject to the protective order in the first instance. But because those images and recordings are saved on a device that may contain the name of one of the complainants,

the government's interpretation would transmute them into material subject to the provisions of the protective order. Thus, pursuant to the government's interpretation of its protective order, material on a phone that is unequivocally non-sensitive—and should be viewed as a defendant's personal property—would become "sensitive." This blanket rule would hold true even for material that is unrelated to the case and that had previously been made public, such as through social media posts. Yet, there is a substantial difference between stating that a phone is sensitive and the phone *contains sensitive* material. Because a phone contains sensitive material, it is still subject to the protective order and could not be shared or used *as a whole* without being subject to the protective order. However, Defendants could share or use the non-sensitive material from their phones without being subject to the protective order.

There are real-world consequences that spur these concerns. Unauthorized disclosure of protective order material may trigger contempt proceedings. But such severe consequences should not be based on the disclosure of non-sensitive information that has nothing to do with this case. As written, the government's protective order realistically threatens those consequences.

The government may argue that its blanket protective order covering an entire phone is not set in stone, as defendants may petition the Court for relief should they want to disclose specific items of discovery included on the phone.

But this is an inefficient and burden-shifting proposal. As the movant, it is the government's burden to show that specific items of discovery need to be protected to prevent clearly identified and serious harm. It is not a defendant's burden to de-designate things that would never, on their own, be subject to designation in the first place.

The government may also suggest that defense counsel proposed a similar definition of "sensitive material." As noted above, the discussion at the September 9, 2026, hearing clearly showed how defense counsel had a different understanding of the scope of the protective order when they maintained that it should only cover PII, rather than an entire device. The Court's comments indicate that it understood the scope of the defense's objections to the government's blanket treatment of the phones as sensitive. Thus, defense counsel never agreed that the entirety of a phone should be treated as sensitive, nor did the Court arrive at that conclusion. If anything, the Court's comments echoed the defense's concerns about overly broad treatment of sensitive material. Indeed, the Court correctly understood that the defense agreed to the protection of "highly personal information, victims' identities and addresses and workplaces and names of children and so on" (ECF No. 165, Page ID 878, lines 15-19), and *not* everything on a cell phone, even though the parties' written descriptions of "sensitive material" were the same.

### B. The Government's Stated Concerns Do Not Justify the Overly Broad Protective Order.

The government has and may continue to raise several concerns to try and justify subjecting an entire phone to the protective order, even if it contains just a drop of PII in an ocean of non-sensitive information. None of these concerns justify the extreme breadth of its request.

First, the government has argued that redacting the PII is too hard given how it intends to produce the phones. During the September 9, 2026, hearing, the government stated, "There is no way for me to go into Cellebrite and perform redactions within that program. And they don't want that." (ECF No. 165, Page ID 885, lines 10-12). However, this logistical issue is no justification to treat every piece of data on the phone as "sensitive." If the government, with its resources, continues to find this task difficult and remains unable to devise a solution, then one answer is simple—there is no need to redact material that is already subject to the protective order. Indeed, it is confusing why the government feels the need to redact material *that is already subject to strict non-disclosure requirements* pursuant to the protective order. Redacting such material effectively defeats the purpose of producing the discovery subject to such constraints. Defense counsel have already indicated agreement to not show sensitive material to others, unless expressly permitted by the terms of the protective order. They have already agreed that the Defendants themselves

cannot disclose sensitive material. Adding further redactions to this already-restricted sensitive material would unnecessarily impede and impair defense counsel's ability to review sensitive material and use it during the course of investigation—which will only lead to requests to unredact and possibly even further needless litigation. In any event, and as the Court noted, "this is the case [the government] chose to indict." (ECF No. 165, Page ID 884, lines 22-23). Defendants and their counsel should not have to labor under additional restrictions because the government finds making unnecessary redactions difficult.

Second, the government has, throughout the case, referenced how third parties have allegedly shared certain information connected to the case, such as that defendants are under "repression" and "constant state surveillance" or made other comments about not talking to the FBI. (ECF No. 165, Page ID 871, lines 15-25; Page ID 74, lines 13-17). Yet, when asked, the government acknowledged that it had no evidence that any of the defendants posted any of the material on social media that it complained about. (*Id.*, Page ID 890, lines 13-18). Moreover, these third-party posts predated any production of discovery, so the government's complaint regarding others' First Amendment protected speech has no bearing on the issue of a protective order. The fact remains that protective order fully prohibits Defendants from sharing sensitive material contained on their phones with *anyone*. Putting a blanket sensitive designation

on entire phones is not a narrowly tailored solution to the government's perceived problem of third parties' social media activity.

Third, the government has even raised privacy concerns of *defendants* themselves as a reason to have a blanket protective order over their entire phones. (ECF No. 165, Page ID 915, lines 20-25). At the September 9, 2026, hearing, the government noted that there was "a lot of personal information about how many—who and how many people a certain defendant has had sex with." (ECF No. 165, Page ID 887, line 25; Page ID 888, lines 1-2). But no defendant has asked for the government's assistance in this regard, so the government's argument is a solution for a problem that does not exist. In fact, counsel can represent that no defendants object to other defendants reviewing their phones, and all defendants agree that the only material that is subject to the protective order is PII of individuals other than defendants.

### C. The Government Should Provide a List of Sensitive Material and, in any Event, the Defense Team Will Know PII When it Sees it, and Will Treat it Subject to the Protective Order.

To be clear, neither defense counsel nor Defendants determine what is sensitive. (ECF No. 165, Page ID 885, lines 13-18; Page ID 887, lines 3-4). Identifying what is subject to the protective order is the government's duty. Still, Defendants believe that—based on their agreement and understanding that the government's concern relates to PII and other personal information

related to the complainants—they can safely surmise what is subject to the protective order and will conduct themselves and their defense teams accordingly. (ECF No. 165, Page ID 886, lines 1-6, 18-22).

While defense counsel believe that this PII is readily identifiable, if the government is not so satisfied, Defendants would encourage the government to identify the sensitive material. It can do so by providing a list of names, addresses, phone numbers, and other information that it believes requires a protective order to avoid a "clearly defined, specific, and serious injury." The Court appeared to agree with this suggestion when it proposed taking out the cell phone extraction from sensitive and suggested the government "identify victims' names, victims' addresses, victims' children, places of work. We can identify things that are absolutely sensitive not to be released without having the whole cell phone [made sensitive]." (*Id.*, Page ID 887, lines 13-19). This sound approach would be one way to ensure the protective order is not broader "than is necessary to serve the intended purposes" (*Darden*, 2017 U.S. Dist. LEXIS 137942, at *7) and covers just sensitive, and not non-sensitive material.

## IV. Conclusion

Defendants continue to agree on a protective order that treats as sensitive personal identifying information and similar information necessary to comply with 18 U.S.C. §3771. But there is no "good cause" to treat as sensitive an entire phone, digital device, social media account, or iCloud

account merely because it includes some sensitive information. The government's request to do so should be denied and a narrowly tailored protective order limited to sensitive information should be issued.

Dated: October 28, 2026

Respectfully submitted,

*s/Amanda N. Bashi*
*s/Sara Garber*
Counsel for Zainab Hakim
Federal Community Defender
613 Abbott Street, Suite 500
Detroit, MI 48226
amanda_bashi@fd.org

*s/Arthur J. Weiss*
Arthur J. Weiss
Counsel for Jonathan Zou
30445 Northwestern Highway Ste 225
Farmington Hills, MI 48334-3158
arthurweiss@ajweisslaw.com

*s/William W. Swor*
William W. Swor
Counsel for Amatullah Hakim
2450 Guardian Building
500 Griswold Street
Detroit, MI 48226
wwswor@wwnet.net

*s/Ebony L. Ellis*
Ebony L. Ellis
Counsel for Alexander Sepulveda
Law Offices of Alan Crawford, PLLC
120 N. Michigan Ave. Suite 303
Saginaw, MI 48602
ebony.ellis@acrawfordlaw.com

*s/Molly Armour*
Molly Armour
Counsel for Paige Feyock
Law Office of Molly Armour
53 W. Jackson Blvd., Suite 1424
Chicago, IL 60604
(773) 746-4849
armourdefender@gmail.com

*s/James C. Thomas*
James C. Thomas
Counsel for Mariam Odeh
James C. Thomas, P.C.
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
jthomas@orlaw.com

*s/Jamil K. Khuja*
Jamil K. Khuja
Counsel for Ahmet Korkaya
Khuja Law Firm, P.L.L.C.
1360 Porter St. Suite 200
Dearborn, MI 48124
khujalaw@gmail.com

*s/Brad Thomson*
Brad Thomson
Counsel for Colin Weger
People's Law Office
1180 No. Milwaukee
Chicago, IL 60642
brad@peopleslawoffice.com

*s/ Joshua G. Herman*
Joshua G. Herman
Counsel for Colin Weger
Law Office of Joshua G. Herman
53 West Jackson Blvd., Suite 404
Chicago, IL 60604
jherman@joshhermanlaw.com

/s/ James R. Gerometta
Mogill, Lemanski & Gerometta, PLLC
Counsel for Colin Weger
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
Tel: 313-530-9505
jgerometta@miethicslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2026, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Joshua G. Herman