UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 ZAINAB ALIASGAR HAKIM,

Defendant.

CRIMINAL NO. 26-20306

HON. JUDITH E. LEVY

---

**Emergency Motion to Revoke Bond**

---

1. Defendant Zainab Hakim stands indicted on seven counts of conspiracy transmit threats in interstate and foreign commerce, in violation of 18 U.S.C. §§ 371; 875(c), and one count of witness intimidation, in violation of 18 U.S.C. § 1512(b); (k). (R.216: First Superseding Indictment, 1475).

2. On June 12, 2026, and over the government's objection, the magistrate judge released Zainab Hakim on bond, with conditions that included home detention and GPS location monitoring. (R.91: Order, 368).

3. Just two months later, Zainab Hakim moved this court to modify her pretrial release conditions to remove the order of home detention. (R.125: Motion, 618). Again, over the government's objection, the Court granted her motion. (R.159: Order, 812).

4. On October 21, 2026, the grand jury returned a sealed first superseding indictment, adding four additional defendants. One of those defendants is Henry David Mackeen-Shapiro, Zainab Hakim's live-in boyfriend.

5. On October 29, 2026, law enforcement arrested codefendant Henry David Mackeen-Shapiro during a traffic stop near Zainab Hakim and Mackeen-Shapiro's townhome in Detroit. Law enforcement also had a search warrant for their location.

6. When law enforcement arrived at Zainab Hakim and Mackeen-Shapiro's townhouse to execute the warrant, despite knocking and announcing several times, none of the three individuals in the home —including Zainab Hakim—would come to the door. Officers were forced to breach the entry.

7. Once inside, they further had to continue to call for Zainab Hakim to come out and show herself. The other two people (one of whom

is an unindicted coconspirator) also had to be ordered to come out of the house.

8. As law enforcement searched Zainab and Mackeen-Shapiro's shared bedroom, they found bags of clothes under the bed. Within one of the bags, agents found a MacBook laptop wrapped in one of the articles of clothing that was very recently drenched in water. The MacBook had characteristics pointing to Mackeen-Shapiro as its owner.

9. The government believes that defendant violated numerous terms of her bond, including, but not limited to, not violating federal, state, or local law while on release. Specifically, Zainab Hakim obstructed justice by purposely destroying codefendant's laptop computer, a violation of 18 U.S.C. § 1503; and destroyed property to prevent a lawful seizure, in violation of 18 U.S.C. § 2232(a).

10. This Court has the authority to revoke Defendant Zainab Hakim's bond under 18 U.S.C. § 3148(a) and (b).

11. Under Local Rule 7.1(a)(2)(A), the government did not seek concurrence in this motion because of the emergent nature of the relief requested in the motion.

As further explained in the attached brief, the government requests that this Court either issue a warrant for Zainab Hakim's arrest, and/or expeditiously hold a hearing on the matter and revoke defendant's bond.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

*s/ Margaret M. Smith*
Margaret M. Smith
Robert Kuhn
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9100
margaret.smith@usdoj.gov

Dated: November 2, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 ZAINAB ALIASGAR HAKIM,

Defendant.

CRIMINAL NO. 26-20306

HON. JUDITH E. LEVY

---

## United States' Brief in Support of its Emergency Motion to Revoke Bond

---

While on pretrial release in this case, Defendant Zainab Aliasgar Hakim purposely destroyed her boyfriend and codefendant Henry David Mackeen-Shapiro's laptop computer and hid it from law enforcement. Because probable cause exists that she committed a new crime, and because no combination of conditions can assure her appearance or safety of the community, her detention is warranted.

## I. Relevant Facts

At each of the several bond modifications hearings, this Court has repeatedly indicated that it has read (and reread) the original indictment, the government's brief in support of detention (R.42: Brief, 206) the transcript of the June 12, 2026, detention hearings in this case (R.93: Tran., 374), and any other relevant documents filed in support or opposition. The United States incorporates those by reference, here.

When this Court initially reviewed Zainab Hakim's request to remove her home detention provision, its reasoning was based on home confinement being "tremendously demoralizing" and her instruction that "I should do my best to avoid home confinement when possible" because it "can be a setup for failure." (R.165: Tran., 834). This Court also cited her continued compliance with court orders and "tremendous family support." (*Id.*, 836). This Court stated:

> It was said at the detention hearing that she hates Israeli or Jewish people. There's nothing that's happened over the last two months or maybe last year or anytime that I've seen, there's nothing in the indictment, *there's nothing in any of this material* that would indicate that that's the case."

(emphasis added) (R.165: Tran., 835).

### A. Antisemitic and anti-law enforcement evidence

The prior documents in this case are replete with references to Zainab Hakim's hatred of Jews, the Israeli state, and law enforcement. For example, she wrote numerous chants for the group such as: "al Qassam [Hamas's military wing] make us proud / force another settler out / IOF [Israel Occupational Forces] burn in hell / gaza called, yemen answered / all Israeli ships are cancelled," and "al Qassam free the skies / make the Zionist settlers cry."

Zainab and codefendant Henry David Mackeen-Shapiro shared many conversations regarding their antisemitic feelings.

Z.H.: Is it finally time for iran chats?

H.S.: maybe "ayatollah free the skies" is better

Z.H.: Settler settlers / does it hurt / Iran will turn your state to dirt / listen to Hamas and Yemen / *your time for dancings finally ended.*[1]

These beliefs and statements are highly relevant. They can and should be used to establish motive, dangerousness, and the applicable

[1] This is a reference to the October 7, 2023 Hamas attack on the participants at the Nova Music Festival. See https://novaexhibition.com/, last visited Nov. 1, 2026.

statutory factors. *See Wisconsin v. Mitchell*, 508 U.S. 476, 486-88 (1993) (explaining in the context of sentencing that speech can be used to establish "motive or intent" and to apply relevant sentencing factors, including societal danger); *United States v. Wager*, 187 F.4th 372, 381 (6th Cir. 2026) (reiterating the well-established principle that "speech," including "violent intent," can be considered "when determining whether the defendant poses a danger to the community" (collecting sources)); *United States v. Schmidt*, 930 F.3d 858, 865 (7th Cir. 2019) (explaining, in the context of sentencing, that the First Amendment does not prohibit consideration of speech "when they are indicative of motive and future dangerousness").

There is no way to interpret chants like this except as direct support for Hamas to mass murder Israelis. And these are not one-off statements. Given the underlying offenses involving threats, intimidation, and animus and the record as a whole demonstrating a serious risk to public safety, these statements are highly relevant to detention.

Further, the conspirators have running conversations across multiple group chats where they express hate. The pair continue to

discuss the Nova Music massacre with other conspirators, including Paige Feyock. In one conversation, they discussed V-2's visit to Isreal. Mackeen-Shapiro remarked, "the funniest part to me is [V-2] meeting the music fest survivors." Feyock responded that she wants V-2 to bring the survivors here so she can "recreate nova outside the venue." (01.17.25 Signal messages).

Her phone contained antisemitic photos and social media posts:




*"A dead Zionist a Day Keeps Genocide Away… Hamas 2024! Zionism is Nazism"*




(sent to Henry David Mackeen-Shapiro 02.04.25)

Zainab Hakim told Mackeen-Shapiro that she and Paige Feyock "should make a fake zionist account to stir shit." (03.05.25 Signal messages).

### B. Continued disregard for the law and new criminal conduct

Zainab Hakim and her conspirators did not limit their targets to just "Zionists." They continually discussed how to thwart law enforcement from discovering their criminal activities. Before "actions" on campus, the groups discussed volunteers to agitate the police and get arrested. They maintained a "jail support phone" for such purposes.

Mackeen-Shapiro and Zainab Hakim often discussed avoiding law enforcement discovery, including obtaining "burner phones." Zainab Hakim wondered if they should get burners for every conversation or just for "actions."

This Court also ignored Zainab Hakim's participation in more recent, uncharged conduct noted at the detention hearing. This included the attack on the Raymond James building and First Financial, two separate vandalization incidents where she, her sister Amatullah Hakim, and Jonathan Zou defaced and left threating messages on two separate buildings in March 2025.

In June 2026, just before their arrests in this case, Paige Feyock sent a screenshot of a person's resume to Zainab Hakim, Amatullah Hakim, Henry David Mackeen-Shapiro, and an unindicted conspirator. Feyock believed that this candidate, having worked for FBI, must have had knowledge of the April 2025 warrants to search their residences:

Feyock.: This bitch literally works at the Detroit field office of the FBI she definitely saw our warrants (emoji)

Mackeen-Shapiro.: LOL is this for your job?

Feyock: Sorry had to break ferpa[2] to show you this insane resume I had to screen for applicants to my program at Umich . . . like of course your evil ass wants to be a doctor.

Zainab Hakim.: this is insane sabotage them

(Signal message, 06.03.26).

In June 2026, after her arrest, Zainab Hakim spoke with Mackeen-Shapiro numerous times, often on three-way calls with other unindicted conspirators (against the facility's policy). Mackeen-Shapiro told Zainab Hakim: "We'll still be regarded as heroes by history."

Most recently, the grand jury returned a first superseding indictment on October 21, 2026, adding four new defendants. Zainab Hakim lives with one of those defendants, Henry David Mackeen-Shapiro. On October 29, 2026, law enforcement planned to arrest Mackeen-Shapiro and execute a search warrant at his home (that he shared with Zainab Hakim). At the same time, they planned to arrest codefendant Aaron Vonbargen near his home in Ann Arbor. Sometime

[2] FERPA is the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, which prohibits disclosure of personal information.

at mid-day, law enforcement made contact with Vonbargen's brother and told him that Aaron had a pending arrest warrant.

Law enforcement waited for Mackeen-Shapiro to leave work before pulling him over for arrest. Forty-five minutes elapsed from the time police talked to Vonbargen's brother and arrested Mackeen-Shapiro. Consistent with the prior arrest activity, Mackeen-Shapiro powered down his phone before he was pulled over, attempting to make it more difficult for law enforcement to access it. And when law enforcement arrived at Mackeen-Shapiro's residence, the three people inside, one of which was Zainab Hakim, refused to open the door.

FBI was forced to breach the door, even after knocking and announcing several times. And when they got inside, Zainab Hakim still refused to show her face and had to be called down several more times. Her room contained evidence that she shared it with Mackeen-Shapiro. Photos on the wall depicted the couple. Mackeen-Shapiro's social security card and other personal belongings were in the closet. And the other bedrooms were identified to be the other residents' rooms.

Bags of clothing were underneath Zainab Hakim's bed. In one of the bags, law enforcement found this laptop, hidden among the clothes:




IMG_0292.JPG
MacBook Pro

The computer had obvious, and very recent water damage. It was soaking wet with fresh water dripping down the screen and droplets on the keyboard. The stickers on the keyboard, Russian letters, were peeling off from the water.[3] The touchpad also shows drops of water.

## II. Applicable Law

Under 18 U.S.C. § 3148(a) and (b), the court has authority to review violations of pretrial release and order detention pending trial. *See United States v. Gentry*, 156 F.3d 1233 (Table) (6th Cir. 1998). The statute requires a two-step process. First, the court must determine whether there is (1) "probable cause to believe that the person has committed a Federal, State, or local crime while on release"; or (2) there is "clear and convincing evidence that the person has violated any other condition of release." 18 U.S.C. § 3148(b)(1); *see United States v. Strome*, 83 F.4th 1078, 1081-82 (7th Cir. 2023). Second, if this first finding is made, the court must determine if (1) considering the factors under 18 U.S.C. § 3142(g), "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community"; or (2) that "the person

[3] Codefendant Henry Mackeen-Shapiro speaks Russian. This is also consistent with captured Signal screenshots showing Mackeen-Shapiro using the Russian language.

is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2); *see Strome*, 83 F.4th at 1081-82.

Notably, a finding under this second step is made by a preponderance of the evidence. *See United States v. Gotti*, 794 F.2d 773, 777-78 (2d Cir. 1986) (noting the conspicuous absence of language such as "clear and convincing evidence," which is found in both § 3148(b)(1) and § 3142(f), and concluding that "findings made under section 3148(b)(2) may be established by a preponderance of the evidence"); *accord United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990); *United States v. Smith*, Case No. 23-20489, 2024 WL 3237136 (E.D. Mich. June 26, 2024) (Altman, M.J.).

When a court considers revoking bond for a violation of a pretrial release condition under § 3148(b), it is not limited in reviewing new information that was unknown at the time of the initial detention hearing, unlike a motion to reopen a bond hearing under § 3142(f). *Flight Options, LLC v. United States*, 177 F.4th 709, 716 (6th Cir. 2026) ("If Congress knows how to say something but chooses not to, its silence deserves respect." (quotation and citation removed)). Instead, § 3148(b)(2) contemplates wholistic and complete review of the record

and detention factors under § 3142(g), without limitation as to whether the information is newly discovered. *See Strome*, 83 F.4th at 1084 (emphasizing the need to consider the "facts and circumstances relevant to the broad factors in 18 U.S.C. § 3142(g)," including both the charged conduct and the conduct post-arrest); *Aron*, 904 F.2d at 224 (affirming a district court's revocation order that considered "the entire record in making its decision"); *United States v. Russo*, Case No. 18-20800, 2020 WL 3121272, at *4-6 (E.D. Mich. Jan. 2, 2020) (Patti, M.J.) (relying upon the detention factors and considering all available evidence to order revocation under § 3148(b)).

Once the Court determines that conditions of pretrial release have been violated, the Court can consider all information going to detention factors such as: the nature and circumstances of the offense, including whether it is a crime of violence of involves a minor victim; the weight of the evidence of dangerousness; the history and characteristics of the person; and the nature and seriousness of the danger to any person in the community. 18 U.S.C. § 3142(g).

## III. Analysis

### A. Probable cause to believe that the person has committed a Federal, State, or local crime while on release

Probable cause exists that Zainab Hakim obstructed justice by purposely destroying a codefendant's laptop computer, a violation of 18 U.S.C. § 1503; and destroyed property to prevent a lawful seizure, in violation of 18 U.S.C. § 2232(a). All evidence points to Zainab Hakim either being tipped off by a conspirator, or hearing the police knock and announce, and destroying (or attempting to destroy) and hiding Mackeen-Shapiro's laptop computer. No one else came out of that bedroom. Everyone else's rooms were accounted for by law enforcement. The bedroom was *shared* by Zainab Hakim and Mackeen-Shapiro, no one else. It contained their personal evidence, including photos, clothing, identification cards, and electronics. Zainab Hakim's laptop was open on the desk with her Gmail box open. The sabotaged MacBook had been recently dunked in water. Droplets remained on the screen and touchpad. The Russian character stickers point to this belonging to Mackeen-Shapiro. And given that Mackeen-Shapiro had been named in court filings as an unindicted conspirator, both Zainab Hakim and Mackeen-Shapiro were likely expecting this day to come.

**B. Preponderance of the evidence that no condition or combination of conditions will assure that the person will**

**not flee or pose a danger to the safety of any other person or the community**

**1. Nature and circumstances of the offense charged and weight of the evidence for detention**

The nature and circumstances of this offense are undeniably serious. Zainab Hakim led the charge to instill fear, threaten, and intimated close to a dozen individuals. Zainab Hakim acted as the ringleader for the "movement." According to her, "i think divestment is def [definitely] the goal but in the sense that it brings about revolutionary change and more activism / it's a means as much as an end." (June 5, 2024). She expressed concern that their actions would have only a limited impact on divestment and possible "overthrow and revolution."

Zainab Hakim was heavily involved in drafting statements and organizing individuals for actions. Her Signal chats demonstrate that she participated and managed posts for the tahrirumich Instagram and Twitter/X site. She orchestrated and directly participated in numerous attacks on family homes, businesses, and the Jewish association, in which the co-conspirators drew Hamas insignia and blood-red paint splatter on walls, broke windows, and widely circulated their attacks online with direct threats.

Zainab Hakim personally participated in destroying V-2's law firm, throwing mason jar "bombs" into his personal residence, spray painting V-2's wife's car, photoshopping V-2's photos with disgraced individuals, using disparaging titles such as "#1 pimp" and "foreign-funded agent." Hundreds of the images were superglued on surfaces all around the University campus. Zainab Hakim called it the "easiest vandalism ever." She and codefendant Mackeen-Shapiro discussed stealing V-2's car and expressed their hate for V-2.

She also participated in destroying, vandalizing, and spray painting threatening messages at:

- Rolls Royce Solutions, Novi
- V-3's personal residence
- V-4's personal residence
- The Jewish Federation of Detroit
- V-5's personal residence
- V-7's personal residence
- First Financial, Plymouth
- Raymond James, Plymouth

She recruited others to participate. Paige Feyock called her a

"mafia boss." Anyone that stands in Zainab Hakim's way appears to become a target. For example, the conspirators butted heads with the then-President of the student body regarding divestment initiatives. Hakim asked her conspirators about "how to ruin his life in the long run." The group then began to "stalk" the individual to identify his car, his house, and his family's house for future "actions."

The weight of the evidence for detention is strong. The conspirators engaged in a sophisticated system of coding conversations, using special encrypted devices, attempting to cover their tracks at every turn, and working toward a total "revolution."

A grand jury indicted Zainab Hakim for witness intimidation. She had already demonstrated that she will interfere with the law to get the results she seeks. And then she did it again, while on some of the most restrictive bond conditions available. This happened less than two months after she asked this Court to *lessen* her bond conditions, citing her compliance on bond for three months. But even the most-restrictive bond conditions would not have prevented her new crimes: obstructing and destroying evidence inside her bedroom. Bond is about trust. She has shown that she cannot be trusted to follow the law when she doesn't want

to, so there's no assurance that she will follow her bond conditions. Further, this shows her disrespect for law enforcement, which includes pretrial services officers. Any trust this Court might have had for her to follow the conditions impossible to police (e.g., no talking about the case with sister Amatullah, no third-party communications to codefendants, etc.) evaporated with her most recent, egregious conduct.

### 2. History and characteristics

Zainab Hakim indoctrinated herself with the Hamas-supported mindset. She is proud of her criminal acts and remains convinced she will live in infamy. Right after her arrest in this case, she reminded Mackeen-Shapiro that the "Weathermen" (the domestic terrorist group Weather Underground based out of Ann Arbor) became academic professors.

Even after her devices were seized in April 2025, she and codefendant Paige Feyock violated the law by passing around a job candidate's resume provided to University of Michigan Health, where they proceeded to research her online, and then Zainab Hakim directed Paige Feyock to "sabotage" it so she would not have a chance at employment.

Worse, while on pretrial release, she knowingly and purposefully destroyed evidence and tried to hide it. This egregious behavior warrants detention. And the fact that she is living with codefendant Mackeen-Shapiro and has unfettered access to codefendant Amatullah Hakim only makes this more urgent that she be separated and in custody.

The best predictor of future behavior is past behavior. Zainab Hakim has repeatedly shown a willingness to break the law whenever she wants, including after she knows that law enforcement is investigating her and even while on pretrial release. She has no respect for law enforcement, so there is no assurance that she will abide by bond conditions, especially the conditions that are impossible for pretrial services to police. Home confinement is not enough to prevent Zainab Hakim from committing new crimes while on bond. Detention is the only option to reasonably assure the safety of the community.

### 3. Nature and Seriousness of Danger to any Person or Community if Defendant is Released

This defendant's steadfast belief that she is supporting a righteous cause and has not done anything wrong is exactly what makes her dangerous. Perhaps this Court believed her when she said she would comply with all her conditions. But she lied. Her obstructive actions

show the lengths that she will take—without any regard for her bond conditions or the law.

In short, no condition or combination of conditions will assure her honest participation in a system she believes is corrupt, and no condition or combination of conditions will assure the safety of the community that she believes is "fascist." She should be detained.

Respectfully submitted,

JEROME F. GORGON JR.,
United States Attorney

s/Margaret M. Smith
Assistant United States Attorney
Robert Kuhn, AUSA
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9135
E-Mail: margaret.smith@usdoj.gov
Bar No. P71413

Dated: November 2, 2026

## Certificate of Service

I certify that on November 2, 2026, I electronically filed the foregoing Motion and Brief in Support with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Attorneys of record

s/*Margaret M. Smith*
Margaret M. Smith
Assistant U.S. Attorney
United States Attorney's Office