UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No.: 26-cr-20306-1

v.

Hon. Judith E. Levy

ZAINAB HAKIM,

Defendant.

---

**RESPONSE TO GOVERNMENT'S EMERGENCY MOTION TO REVOKE BOND (ECF NO. 226)**

---

There are material issues with the government's presentation of facts in its motion seeking the emergency arrest of Zainab Hakim. Statements in the government's brief are directly contradicted by officer bodycam and the written report. In addition to the lack of factual support for the government's assertions, the government's account of Zainab's "crime" while on bond belies logic. What's left in the government's brief, then, are various private communications from Zainab's devices (some not even attributed to her) that the government presented at the first detention hearing. There is no basis for revocation. For the reasons that follow, the government's motion should be denied.

## I. Legal Standard

18 U.S.C. § 3148(b) sets a threshold requirement before revocation is on the table. At the first step, the court should look for either probable cause that the accused committed a crime while on release, or clear and convincing evidence that she violated a bond condition. § 3148(b)(1). Courts generally agree that the Bail Reform Act imports the traditional definition of probable cause. *See United States v. Storme*, 83 F.4th 1078, 1082 (7th Cir. 2023) (citing *United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986)). Thus, the court must find facts that would "warrant a [person] of reasonable caution" to believe that the accused has committed a crime. *Id.*

If the court finds probable cause, it moves to Step Two, outlined in § 3148(b)(2). It can only revoke bond after weighing the § 3142(g) factors to determine whether any "condition or combination of conditions of release" will assure the safety of the community and/or the appearance of the accused, § 3148(b)(2)(A), or whether "the person is unlikely to abide by *any* condition or combination of conditions of release." § 3148(b)(2)(B) (emphasis added).[1]

[1] The government makes unequivocal statements about the legal standards associated with findings at Step Two, but it's important to note that the Sixth Circuit has never weighed in. *See United States v. Pargellis*, 3:19-CR-00272-3, 2020 WL 5581361, at *2 (M.D. Tenn. Sept. 17, 2020) (noting the "dearth of case law in the Sixth Circuit" addressing § 3148). Other courts split on whether the government's burden under § 3148(b)(2) is by clear and convincing evidence or the preponderance standard. *Compare Gotti*, 794 F.2d at 778-79 with *United States v. Couture*, No. 21-cr-10172-NMG, 2022 WL 483830, at *4 (D. Mass. Feb. 11, 2022) and *United States v. Fadanelli*, No. 1:24-CR-10352-JEK, 2025 WL 3719654, at *3 (D. Mass. Dec. 23, 2025) (applying the clear and convincing evidence standard to a request for revocation under both 18 U.S.C. §§ 3142(f) and 3148(b)(2)(A)).

As with all provisions of the Bail Reform Act, pretrial detention under § 3148 is a "carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). If the court finds that bond conditions would still be effective, the court "shall treat the person in accordance with section 3142" and may amend the conditions. § 3148(b)(2). The statute's preference, then, is to adjust conditions in light of a violation, not to reopen the original release decision.

## II. There is no probable cause that Zainab committed a crime.

The government's brief uses inference to argue that Zainab tampered with the laptop. The problem, after consideration of the evidence proffered in support, is that the inferences do not match the FBI documents or video. Zainab intends to illicit the factual inconsistencies in the government's account in greater depth at the revocation hearing. But in brief:

First, Zainab and her roommate M.T. and his girlfriend S.A. all promptly responded to the executing officers' commands. Body camera footage[2] shows that when Zainab's roommate opened the door for the officers, right behind him were Zainab and S.A. Zainab did not hide nor refuse to comply. Instead, it shows her calmly exiting the house with her hands up.

Second, the laptop was not "soaking wet." There are no wet clothes in the government's photos, nor is the bedspread under the "dunked" laptop wet. Keyboard

[2] The defense seeks to file the body camera footage as exhibits to this motion. The government has indicated it may oppose. A motion or stipulation will follow in the coming days.

stickers on the laptop appear to be peeling off the keyboard (one is even stuck to the screen). 18 U.S.C. § 1503, the crime the government accuses Zainab of committing, requires a showing of "corrupt" intent. At minimum, the government does not allege enough facts for the court to conclude that it was (a) Zainab who made the laptop wet, or (b) with what intent. The laptop appears as if someone spilled something on it, long enough ago that the stickers are soaking off the keyboard, and closed it without cleaning it. Indeed, the laptop appears to have had many substances spilled and left on it over time, including substances of a tan color (or perhaps that is rust), and perhaps a tomato-based sauce. (*See* ECF No. 226, PageID.1505.)

Finally, the government's version of events is implausible in the context of this case and its history. The government itself admits that Zainab and Mr. Mackeen-Shapiro were "likely expecting this day to come." (ECF No. 226, PageID.1509.) Five months passed between Zainab's detention hearing—when the government specifically named Mr. Mackeen-Shapiro during its presentation and all but announced that he would be indicted – and his arrest. (See Public Audio File of Detention Hrg., June 12, 2026, ECF No. 56.) During those five months, either Zainab or Mr. Mackeen-Shapiro could have trashed, destroyed, wetted, or otherwise hid the laptop.

Even putting aside the five preceding months, there was about an hour between McKeen-Shapiro's arrest and the search. Why would Zainab wait until officers arrived at her doorstep to wet his laptop? Why not get it wetter than mere dribbles? Why hide it under their own bed? The government paints Zainab as the cunning "ringleader" of

a movement, someone versed in "sophisticated system of coding conversations, using special encrypted devices" to cover her electronic tracks. (ECF No. 226, PageID.1512.) Would she really think that a splash of liquid could "destroy" the internal data storage systems of a laptop?

Identifying these factual holes and using common sense should give the Court pause. "A determination of probable cause is based on the totality of the circumstances and must take account of both the inculpatory *and* exculpatory evidence." *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)) (emphasis in original) (internal quotations omitted). By this standard, even before what is elicited at the hearing, the government's account falls short.

## III. The new offense allegations are not reason to revoke bond.

The government again trots out evidence of Zainab's political views and speech as evidence of her purported dangerousness. Even if some words and conversations are new, the inferences the government asks the Court to make are not. They are not enough to revoke bond based on an alleged danger.

A word first on the law. The Sixth Circuit has never decided whether the government can present new information about the underlying offense at the revocation stage. But consider that the text of § 3148(b) is focused on the alleged bond violation and whether the accused can comply with court-ordered conditions. This is a forward-looking analysis, not an invitation to relitigate the original release order.

As this Court well knows, the Bail Reform Act provides other avenues for review of a release order—review by the district court under § 3145(a), an appeal under § 3145(c), or reopening the detention hearing under § 3142(f)(2). Each of these provisions has its own procedure. § 3142(f)(2), for that matter, only allows the submission of new evidence that "was not known to the movant at the time of the hearing" and "has a material bearing" on whether conditions will reasonably assure appearance and safety. If the government can bring in new offense evidence through § 3148, the statutory limits in § 3142(f) mean nothing. The government could hold back evidence, wait for a technical bond violation, then relitigate detention without ever showing the evidence was new or material. A § 3148 revocation motion built around new offense evidence is really a collateral attack on the release order.

All the same, the government's allegations do not amount to "new" information about the underlying offense. The government had access to Zainab's devices at the time of the initial detention hearing. It also made many of the same arguments at the detention hearing, and again in opposing Zainab's motion to modify bond conditions.[3] *See United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012) (finding information not new because counsel made similar arguments at initial detention hearing).

[3] To this point, the government seems to crib some of its argument about the weight of the evidence for detention verbatim from its earlier response to Zainab's motion to modify conditions of pretrial release. *Compare* ECF No. 145, PageID.743-45 with ECF No. 226, PageID.1510-12.

Nor should the offense information change the Court's analysis of the § 3142(g) factors, because it does not bear on whether Zainab can comply with bond conditions. Most of the statements quoted by the government are stale, private speech in group chats and personal conversations. *Cf. United States v. Wagner*, 187 F.4th 372, 380-82 (6th Cir. 2026) (analyzing "weeks" of defendant's public-facing criticism of law enforcement on social media). Many of the statements are not even attributed to Zainab; the images from Instagram screenshots and what appears to be a children's picture book are presented in the brief without commentary from Zainab. And unlike in *Wagner*, where the Sixth Circuit scrutinized the defendant's calls to his followers to take up arms against immigration enforcement agents (even if symbolic and hyperbolic), Zainab's statements rarely reference or encourage direct violence. Rather, the government makes inference after inference that Zainab's political opposition to Israel is inherently violent, and that it makes *her* inherently threatening to the community.

In making this argument over and over again, (*see, e.g.,* ECF No. 226, PageID.1498, 1501; ECF No.145, PageID.743), the government conflates anti-Zionism—political opposition to an ideology and policy—with antisemitism. But insulating Israel from criticism assumes that all Jews themselves support the state in its ethno-nationalist form. That itself perpetuates a harmful, inaccurate stereotype. *See, e.g.,* Jerusalem Declaration on Anti-Semitism, https://jerusalemdeclaration.org/ (last visited Nov. 12, 2026) (definition of antisemitism with 400+ signatories in the fields of Holocaust history, Jewish studies, and Middle East studies) ("Nationalism, Jewish or

otherwise, can take many forms, but it is always open to debate"). The government's argument that speech criticizing Israel equates to the hatred of Jews perpetuates antisemitism and erases the many Jewish voices meaningfully criticizing Israel. Benjamin Moser, *Anti-Zionism isn't the same as antisemitism. Here's the history.*, Washington Post (Jan. 2, 2024), https://www.washingtonpost.com/opinions/2024/01/02/anti-zionism-antisemitism-israel-jews-came-first/ ("[B]ecause [Israel] has increasingly, and now officially, come to define itself as a *Jewish* state, its defenders have often described its opponents as antisemites. The problem with this description? Many of those who share these convictions are, and always have been, Jews.") (emphasis in original).

The government does not attempt to explain why other individuals' speech is material evidence of Zainab's dangerousness. Because it isn't. Nor does the government address this Court's earlier observation that Zainab's "anti-colonial or anti-imperialist views have no bearing on whether she can follow court orders." (*See* Bond Modification Hrg. Tr. Sept. 9, 2026, ECF No. 165, PageID.835.) They do not.

The government also does not present new information about Zainab's attitudes towards law enforcement. The best, most current evidence on this point is Zainab's total compliance on bond over the last five months. The government's allegations aside, Zainab has abided by every condition, sought permission to do even benign things like attend a wedding in Lansing (ECF No. 117, PageID.554), or sleepover at her parents' house for Thanksgiving (ECF No. 211, PageID.1341), and maintained open communication with her pretrial officer. (*See* Bond Hrg. Tr., ECF No. 165, PageID.834)

(finding that "Ms. Hakim has lived up to each and every condition of pretrial release that was placed on her.").

The Court should not let the government backdoor information it already possessed at the time of the initial detention hearing. Moreover, it should apply the bar of probable cause to the government's baseless allegations of obstruction, which are contradicted by the bodycam evidence and the reports. For these reasons, the Court should deny the government's motion.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**

*s/ Amanda N. Bashi*
*s/ Sara Garber*
Amanda N. Bashi
Sara Garber
Assistant Federal Defender
Attorneys for Zainab Hakim
613 Abbott Street, Suite 500
Detroit, Michigan 48226

Dated: November 12, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No.: 26-cr-20306-1

v.

Hon. Judith E. Levy

Zainab Hakim,

Defendant.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2026, I filed the foregoing document electronically with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Sara Garber