UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
Plaintiff,

CRIMINAL NO. 26-20306

v.

HON. JUDITH E. LEVY

D-1 ZAINAB ALIASGAR HAKIM,
Defendant.

---

## United States' Reply in Support of its Emergency Motion to Revoke Bond

---

Zainab Hakim tries to hide behind "political views and speech" in an attempt to sideline her own criminal conduct, including attacking a Jewish association on the anniversary of October 7, intimidating witnesses, and now destroying evidence. The facts, supported by the evidence, demonstrate that Zainab Hakim committed a new offense while on pretrial release: namely, tampering with evidence in violation of 18 U.S.C. § 1512(c). Under the clear terms of 18 U.S.C. § 3184 and considering the full record, Hakim's bond should be revoked.

## I. Correcting Defendant's Facts

Hakim believes there are "material misrepresentations" in the motion to revoke bond. Not so. First, look at the timeline of events that day. Undisputed: on October 29, 2026, FBI planned to arrest codefendant Aaron Vonbargen near his home in Ann Arbor. At approximately 2:43 p.m.—before law enforcement arrested

Zainab Hakim's boyfriend and codefendant Henry David Mackeen-Shapiro, law enforcement misidentified Vonbargen and briefly detained his brother.

Also undisputed: Henry David Mackeen-Shapiro was not arrested until after he left his school job that afternoon, at approximately 3:54 p.m., more than an hour after Vonbargen's interaction. Law enforcement pulled up to Zainab Hakim's residence at 4:50 p.m. Between the Ann Arbor interaction and the police pulling up to the residence, any number of people could have tipped off Zainab Hakim in any manner of ways. But even if they didn't – the BWC speaks for itself:

- 16:50:30: Police pulled up to the house, with multiple cars, lights, getting out and getting shield. Zainab Hakim's bedroom faces the front road. Her laptop computer in her room was on, with her email displayed. She would have seen the lights. See Exhibit 6, a photo of her bedroom, below, showing her laptop computer powered on, open, and the desk facing the front window and street.

- 16:51:20: Knocked on the front door the first time. "FBI search warrant."

- 16:51:35: Second knock on the front door. "FBI open the door."

- 16:51:48: Breached door. Note: this may seem like a short time, but it only takes seconds, as Zainab Hakim has demonstrated, to destroy evidence or hide something. Only one person stood at the door upon entry, and it was not Zainab Hakim.

- 16:52:37: Zainab Hakim comes down to the FBI at the door after having to be directed to do so. The direction she came from suggests she was coming from upstairs in her bedroom. This was a full two minutes after the police announced presence in front of the house, and about 1:20 after the first knock.

Also undisputed: the laptop belonged to Mackeen-Shapiro and was located under Zainab Hakim's bed, wet. Hakim tries to dodge this fact by arguing the liquid is an

old spill. Wrong. The photos show that the laptop was freshly wet—there are visible water droplets.[1] Exhibit 5 contains a forensic report of the status of the laptop when it was provided to CART on November 13, 2026—two weeks after the seizure. That report shows extensive mineral deposits—likely salt—dried on the screen, keyboard, and internal components. It is not mere "dribble." And those mineral deposits were not visible when agents first seized the laptop. If the liquid was just an old spill, the residue would have been visible from the start. It is perfectly logical that Zainab Hakim put the laptop in corrosive salt water as a belt-and-suspenders approach when she heard about FBI in Ann Arbor, then pulled the laptop from the water when she saw police at her door and stashed it before coming to the door. Believing an arrest could be *possible* in the *future* is very different than knowing the FBI is coming to execute a search warrant. The evidence demonstrates she committed a criminal act.

## II. Law and analysis

### A. The legal standard under 18 U.S.C. § 3148

Hakim correctly states Step One: that the Court must find probable cause that the defendant committed a new crime while on release, or that clear and convincing evidence exists that she violated a bond condition. 18 U.S.C. § 3148(b)(1); *see United States v. Strome*, 83 F.4th 1078, 1081-82 (7th Cir. 2023). If there is probable cause to believe that, while on release, the person committed a Federal, State, or

[1] The agents did not photograph the clothes or the surrounding area under the bed.

local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. 18 U.S.C. § 3148(b). Of course, if a grand jury returns an indictment against a defendant, that is prima facie evidence of probable cause. *Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005).

But Hakim's argument goes south when she addresses Step Two for two reasons. *First*, contrary to Hakim's suggestion that the revocation standard should be "clear and convincing evidence," there is widespread agreement around the country, including district courts, and our own magistrate courts, that the proper standard is a preponderance of the evidence. *See, e.g.*, *United States v. Gotti*, 794 F.2d 773, 777-78 (2d Cir. 1986); *accord United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990); *United States v. Smith*, Case No. 23-20489, 2024 WL 3237136 (E.D. Mich. June 26, 2024) (Altman, M.J.); *United States v. Mendez*, Case No. 21-00095, 2023 WL 3931720 (E.D. Cal. 2023); *United States v. Jefferson*, Case No. 23-00109, 2024 WL 5077219 (W.D. Wash. 2024); *United States v. Damato*, Case No. 20-00221, 2020 WL 2088100 (D. Nev. 2020); *United States v. Patch*, Case No. 18-187, 2021 WL 1080399 (D.N.H. 2021); *United States v. Maack*, 25 F. Supp. 2d 586, 586 (E.D. Pa. 1998). To cast doubt on which standard applies, Hakim relies on two

decisions from the District of Massachusetts, which appear to be extreme outliers.[2] Basic statutory interpretation confirms the preponderance standard applies: in § 3148(b)(1)(B) the statute expressly states "clear and convincing evidence," but the statute doesn't have that language in § 3148(b)(2). This also follows the rest of the Bail Reform Act, which applies a default preponderance of the evidence where the statute is silent. § 3142(f)(2); *United States v. Yopp*, 991 F.2d 797 (1993) (table).

*Second*, Hakim's argument about limiting the Court's consideration of "new information" contradicts § 3148's plain language. Section 3148—"Sanctions for violation of a release condition"—mandates bond revocation if a court makes specific findings. Step One requires the Court to consider new information: either probable cause that the person has committed a new crime or clear and convincing evidence that the person has violated another release condition. § 3148(b)(1). Hakim tries to import § 3142(f)'s requirements[3] for reopening a detention hearing into § 3148, with no cases to support this claim. But this contravenes § 3148's plain

---

[2] *United States v. Couture*, Case No. 21-10172, 2022 WL 483830 (D. Mass. Feb. 11, 2022), cited by the defense, involved a motion for detention on a *new criminal complaint* under § 3142(f) in addition to a petition to revoke bond under § 3148(b). The court provided no substantive analysis on the standard of proof under § 3148(b), as compared to § 3142(f). *United States v. Fadanelli*, Case No. 24-1-352, 2025 WL 3719654 (D. Mass. Dec. 23, 2025), cited and relied upon *Couture*. These decisions provide no material support to the defense position, which conflicts with an overwhelming body of caselaw and the text of the Bail Reform Act.

[3] Hakim also misstates the standard for "new information"—it doesn't have to relate to the underlying offense, under § 3142(f), the information must be unknown to the movant at the time of the hearing and have a "material bearing on the issue whether there are conditions of release[.]" § 3142(f)(2). Further, the assertion that the government will intentionally withhold information to allow a dangerous individual to be released into the public, solely in order to use that information in a revocation hearing is baseless speculation.

language, which controls the Court's analysis. *Flight Options, LLC v. United States*, 177 F.4th 709, 716 (6th Cir. 2026).

Hakim's argument that the Court's analysis under Step Two is not an invitation to relitigate the original release order, citing no case law in support, fails. Again, this contradicts § 3148's plain language, which instructs the Court to consider whether the § 3142(g) factors show there are no release conditions that will protect the public or assure the person's appearance. It contemplates *holistic* and *complete* review of the relevant facts that relate to the § 3142(g) factors. Unlike § 3142(f), there is no requirement restricting the evidence the Court can consider. The Court is not limited to only looking at Hakim's new criminal conduct. *See United States v. Storme*, 83 F.4th 1078, 1084 (11th Cir. 2023); *Aron*, 904 F.2d at 224; *United States v. Lamar*, Case No. 19-20515, 2021 WL 4398317, at *2 (E.D. Mich. Sept. 27, 2021) (Goldsmith, J.); *United States v. Russo*, Case No. 18-20800, 2020 WL 3121272, at *4-6 (E.D. Mich. Jan. 2, 2020) (Patti, M.J.). Once the Court determines Step One, it can—and should—consider all information relating to the § 3142(g) factors.

### B. Preponderance of the evidence supports detention.

Under Step Two, if the Court finds *either* detention is appropriate after considering the § 3142(g) factors *or* Hakim is unlikely to abide by release conditions, the Court "shall enter an order of revocation and detention[.]" § 3148(b). For all the same reasons cited in the government's prior filings, including its initial motion for

detention, ECF No. 42; response to bond modification, ECF No. 145; and its emergency motion to revoke bond, ECF No. 226, incorporated here, she should be detained. Her behavior is egregious, beyond the bounds of the law, and she cannot be trusted to remain compliant.

### C. Defendant's request for 14 law enforcement witnesses

The United States previously notified defense that it may call an FBI witness at the hearing. On November 8, 2026, defense emailed the United States a request to produce 14 law enforcement witnesses for the November 18, 2026, hearing. After reviewing the supplemental information, the United States believes this matter can be resolved without any witness testimony. The government objects to pulling 14 FBI agents out of service to testify. The request is overbroad and the proposed witnesses would provide largely duplicative testimony.

Respectfully submitted,

JERONE F. GORGON JR.,
United States Attorney

s/Margaret M. Smith
Assistant United States Attorney
Robert Kuhn, AUSA
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9135
E-Mail: margaret.smith@usdoj.gov
Bar No. P71413

Dated: November 16, 2026

## Certificate of Service

I certify that on November 16, 2026, I electronically filed the foregoing Reply Brief with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Attorneys of record

s/*Margaret M. Smith*
Margaret M. Smith
Assistant U.S. Attorney
United States Attorney's Office