UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

ZAINAB HAKIM, et al.,

Defendants.

Case No.: 26-cr-20306

Hon. Judith E. Levy

---

**JOINT DEFENSE RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF ON PROTECTIVE ORDER (ECF NO. 212)**

---

Defendants hereby jointly respond to the government's supplemental brief on the protective order, filed at ECF No. 212.

## I. This Court should fashion a narrowly tailored protective order based on whether the government has met its burden of proof under the applicable legal standard.

The task before this Court is to adopt an appropriate, narrowly-tailored protective order that is necessary to protect against "clearly-defined, specific and serious injury." *See generally* ECF No. 213.[1]

Ignoring the appropriate legal standard entirely, the Government suggests that Defendants are estopped from proposing appropriate and narrowly-tailored language

[1] Defendants' prior submission at ECF No. 213 is incorporated by reference herein.

for the protective order to the extent such language differs from Defendants' previous submission at ECF No. 157-1. The government is wrong—for two reasons.

First, as this Court has already ruled, and as the Government agreed to, "the protective order will include that any party that wants to move to modify it can make a motion to modify it." (ECF No. 165, PageID.924-925.) The Court has indicated that it would assess any requested modification with an eye towards the burden of proof as to the necessity of any particular provision of a protective order, which remains with the moving party—i.e., the Government. (ECF No. 165, PageID.859-860.) There is no need to artificially restrict this Court's full consideration of appropriate language at this stage, merely to kick the can down the road to future litigation in the form of a motion to modify. This argument is essentially form over substance, and fails to meaningfully address the valid concerns of the Defendants that the government's overbroad restraints are wholly unjustified by vague and theoretical injury.

Second, while much of the language contained within the initial proposed orders set forth by the government and the Defendants was similar, clearly, the parties' interpretation of initial proposed orders diverges substantially. (ECF No. 165, PageID.883-884.) There is nothing improper about Defendants' decision to further refine proposed protective order language after it became clear at the hearing that, despite having substantially shared language in their respective original proposed orders, Defendants did not share the government's understanding of the meaning and effect of this language. Thus, explication is appropriate and warranted.

At bottom, this Court's task is to ensure that any protective order it enters is consistent with the applicable legal standard, and sufficiently protects the Defendants' right to mount an effective defense. Defendants have never waived their right to object to an order of prior restraint that is broader than necessary to protect against clearly-defined, specific and serious injury.

Defendants below respond to governmental concerns regarding proposed language for portions of the order, as appropriate.

## II. Protective Order Language

a. <u>Paragraph 2: Sensitive Materials</u>[2]

The government emphasizes that at the September 9, 2026 hearing, the Court initially noted that "we are good with paragraph one[,]" in reference to the substantial similarities between the parties' proposed language regarding sensitive materials. (ECF No. 165, PageID.879.) The government ignores that this portion of the hearing preceded the discussion regarding whether the presence of sensitive material in a phone rendered the entire phone sensitive. (ECF No. 165, PageID.883-891.)

The government objects to Defendants' proposed language requiring that the government designate material as sensitive "[b]ased on a good-faith assertion that disclosure of the following information would result in clearly defined, specific, and serious injury[.]" (ECF No. 212, PageID.1349-1350.) But the government offers no

[2] *See* ECF No. 212, Page ID.1347-1354.

compelling reason why this language, which is carefully crafted to ensure that the protective order is appropriately tailored based upon the applicable legal standard, is inappropriate or unwarranted. The cases cited by the government for the proposition that standard protective orders do not include a legal standard for determining good cause are unpersuasive and/or unhelpful to its position. *See United States v. Lusk*, Case No. 21-20307, 2023 WL 3721200, at *2-3 (E.D. Mich. May 30, 2023) (Drain, J.) (wherein *pro se* defendant, a prior contemnor with a history of filing "information that would not ordinarily be filed on the public docket" including his own social security number, did not respond to protective order motion); *United States v. Brown*, Case No. 22-33, 2022 WL 9936378, at *2-3 (W.D. Ky. Oct. 17, 2022) (granting government's motion for protective order of discovery containing unredacted PII of witnesses and personal information of the victims, including the contents of a *victim's* cell phone, when the protective order did "not purport to bar discussion of information gained from sources other than the discovery"; the defendant lacked an apparent interest in the protected discovery materials; and, the court rejected broader protections as unsupported by good cause); *United States v. Toney*, Case No. 17-20184, ECF No. 415, PageID.2361-2362 (E.D. Mich. Jan. 10, 2020 (Levy, J.) (wherein the parties stipulated to an agreed-upon protective order specifically covering *Jencks* materials entered in part to prevent incarcerated defendants from circulating the identities of prosecution witnesses in a street gang RICO case); *United States v. Dixon*, 355 F. Supp. 3d 1, 4-6 (D.D.C. 2019) (finding good cause to restrict dissemination of body camera footage

with identifying information regarding victim and witnesses when the victim had been threatened with a firearm and the defendant had a significant criminal history). None of these cases hold that it is inappropriate to require the government to restrict its designation of sensitive materials to materials that meet the basic standard for issuance of a protective order. *See United States v. Powell*, No. 1:24-cr-18, 2024 WL 3344642, at *3-4 (S.D. Ohio July 9, 2024) (granting defense motion to amend protective order in part and narrowing restriction on defendant's retention of discovery materials "only to materials that reference a confidential informant or that may otherwise reveal the identity of a protected witness").

The government asserts that because "sensitive information" is "intermixed in electronic files" that "a protective order must broadly cover the *entire device file*." (ECF No. 212, PageID.1351.) Not so. To the extent sensitive information covered by the protective order is contained within a larger electronic file, obviously, the protective order would extend to disclosure of the undifferentiated entirety of that file. The effect of Defendants' proposed language is to exclude from the protective order non-sensitive information contained within larger electronic files, which include a mix of sensitive and non-sensitive information.

Defendants have separately briefed the reasons that support not treating entire phones as "sensitive" at ECF No. 213, and those reasons are adopted here by reference. In short, Defendants' proposed language regarding sensitive materials is

narrowly tailored and consistent with the legal standards governing the issuance of protective orders.

b. Paragraph 3: Non-disclosure Requirements[3]

Defendants seek to ensure that any protective order in this case does not unduly infringe on their proprietary interest in data derived from their phones and other electronic accounts, which they "reasonably understand[ ] as [their] own[.]" *See Chatrie v. United States*, 609 U.S. 605, 634 (2026); *see also id.* at 648-49 (Gorsuch, J., concurring) (electronic data stored on Google servers are the user's "effects"). Protective orders can and do appropriately impose lesser restrictions on materials "derived directly from" a defendant than on other discovery materials. *See United States v. Pert*, Case No. 1:21-cr-00139, ECF No. 22 at 5 (D.D.C. Apr. 8, 2021);[4] *United States v. Torres*, Case No. 26 CR. 9 (PGG), 2026 WL 948214, at *3 (S.D.N.Y. Apr. 7, 2026) (finding no reason a defendant "should be restricted from disclosing information extracted from his own cellphone");[5] *United States v. Faller*, Case No. 1:13CR-00029-JHM, 2015 WL 13376561, at *2 (W.D. Ky. Aug. 28, 2015) (court modified protective

---

[3] *See* ECF No. 212, Page ID.1354-1358.

[4] This same protective order was entered in multiple January 6 prosecutions. *United States v. Cudd*, 534 F. Supp. 3d 48, 57 (D.D.C. 2021).

[5] The protective order entered in this case stated that it would not restrict "a defendant's use or disclosure of ESI or other Confidential Material that originally belonged to the defendant." *Torres*, Case No. 1:26-00009-PGG, ECF No. 74 at 4 (S.D.N.Y. Apr. 20, 2026).

order to exclude "material previously seized from [defendant's] home during the execution of a search warrant");[6] *United States v. Weinstein*, No. CR 24-128 (MAS), 2024 WL 1118167, at *2 (D.N.J. Mar. 14, 2024) (stipulated protective order placed "no restrictions on a defendant's use or disclosure of search warrant ESI that the parties agree originally belonged to a defendant").

Without forfeiting their rights to seek modification of any protective order entered as appropriate, at this time Defendants do not oppose an order restricting dissemination of PII of third parties contained within the Defendants' own electronic data, notwithstanding their propriety interest in such.[7] But the government has not articulated any good cause for this Court to go further than that and impose a presumptive gag order upon Defendants' ability to share their *own* PII as well as the entirety of their electronic data that is produced in discovery that is not PII. This Court should not impose any order that shifts the burden to Defendants to seek permission to freely use and share their own electronic data produced in discovery, the vast majority of which does not contain third-party PII and is not properly subject to a protective order in the first instance. *See Joint Defense Supplemental Pleading on*

---

[6] The modified protective order entered in this case stated that "[s]ince these materials were within the defendant's control prior to the execution of the search warrant, such materials are not subject to this protective order." *Faller*, Case No. 1:13CR-00029, ECF No. 162, PageID.1175.

[7] Likewise, Defendants do not at this time seek access to the electronic data of other Defendants outside the presence of counsel, although there will likely be good cause to revisit this restriction at a later date.

*Remaining Disputes Concerning Protective Order* (ECF No. 213), PageID.1389-1390; Section II(a), *supra*.

c. Paragraph 6: Victim and Witness Protection[8]

Unlike the rest of the proposed protective order, the government's proposed paragraph 6 goes beyond the handling of sensitive materials to encompass the disclosure of identities of individuals involved in the case, even when those identities were not derived from the discovery. The defense's proposed protective order now incorporates the agreement to use anonymized victim identifiers in public filings and pre-trial proceedings. But no one on the defense teams ever agreed to a prohibition upon referring to victims and witnesses by name at all times or in all circumstances. The government's proposed paragraph 6—which on its face bars disclosure of witness and victim identities to anyone outside the defense team for any reason—would unjustifiably and unconstitutionally hamper fact investigation of the case and place unwarranted restrictions on the defense team's speech.

The defense's proposed language addresses these two concerns. First, the defense team should be able to refer to relevant individuals by name while carrying out counsel's constitutional obligation to interview potential witnesses and fully investigate the case. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); ECF No. 144, PageID.723-724. This is especially important in a case like this, where the scope

---

[8] *See* ECF No. 212, Page ID.1358-1363.

of the indictment points to a multitude of potential witnesses to years of conduct, both lawful and allegedly unlawful, which could prove relevant to the defense. The government states the crimes charged began in October 2023 and involved conduct up to April 2025; the indictment specifies seven individual victims, five of which were members of university leadership identified in the government's publicly-filed indictment by their job title. *See generally* ECF No. 1, ECF No. 202.[9] The first eight counts each involve between seven and thirteen months of alleged criminal activity, and each of the nine conspiracy counts alleges the involvement of unindicted, unnamed co-conspirators. *E.g.*, ECF No. 202, PageID.1430 (Count Five, spanning from October 2023 to October 2024 and naming six defendants along with other conspirators). Defendants' alleged criminal conduct is also intertwined with extensive organizing and actions around the University of Michigan in support of the liberation of Palestine. *See* ECF No. 202, PageID.1405-1406 (noting "increased protests and other First Amendment activity[,]" organizing to demand divestment, "teach-ins," and links to student groups).

Defense investigators, who must seek information about up to nine separate alleged conspiracies tied to public political organizing, should not be ordered to avoid identifying potential witnesses (including unindicted coconspirators) or targets of the

[9] The government identified two victims as members of the eight-member Board of Regents, one as the Provost, one as the Chief Investment Officer, and one as the President. The University of Michigan makes information about all these positions publicly available online.

conspiracies in conversation. Especially because "[t]he gist of the crime of conspiracy . . . is the *agreement or confederation* of the conspirators to commit one or more unlawful acts[,]"[10] it is essential to be able to fully inquire into who, precisely, agreed to what, when such agreements were made and when they ended, and who was privy to those alleged agreements, either as witnesses or purported members.

Following conversations with the defense, the government in part addressed this concern in its proposed paragraph 5, which permits members of the defense team other than defendants to share sensitive materials while interviewing potential witnesses. ECF No.212-1, PageID.1375. Defendants do not object to the proposed limitation on leaving sensitive materials with potential witnesses. *See Ibid.* Defendants maintain their objection, however, to the contradictory language in paragraph 6. It is unclear from the text of the government's proposal which paragraph governs the other, or whether the defense team is expected to redact PII from sensitive materials before disclosure. Paragraph 6 should at a minimum be amended to make clear that members of the defense team (other than defendants) are not subject to sanction for disclosing identifying information during witness interviews.

The second concern addressed by the defense's proposed language is the disclosure of identities and information that the defense team does not learn from the government's discovery. Although the government's alarm appears directed at the

---

[10] *United States v. Xu*, 114 F.4th 829, 839 (6th Cir. 2024), quoting *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942) (alterations in original).

public dissemination of victim and witness information, the plain language of the government's proposal would apply equally to, for example, a defendant mentioning the names of law enforcement witnesses who testified publicly while recounting the events of a pre-trial hearing to a family member. Further, in its most recent filing, the government insists on this blanket restriction without ever accounting for the First Amendment implications of barring the defense team from discussing information they already know or may later learn from public sources or through their own independent defense investigation. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33-34, 37, 104 S. Ct. 2199, 2208, 81 L. Ed. 2d 17 (1984) (holding that the protective order in that case did not pose First Amendment problems because it did "not restrict the dissemination of the information if gained from other sources").

The government's position on information from sources other than sensitive discovery is confusing, given that earlier in this litigation it stated that "[n]othing prevents the defense from transmitting information obtained from public sources." ECF No. 118, PageID.574. But the defense simply does not know how else to read the unqualified statement in the proposed protective order that "[t]he names, identities, and personal identifying information of victims and government witnesses may not be disclosed by the defendant or the defense team outside the defense team." ECF No. 118-1, PageID.595, para. 5; ECF No. 212-1, PageID.1376, para. 6. And by vehemently opposing the defense's proposed exemption for "if the information has otherwise been made public," the government appears to walk back its prior position

and seek to impose a restriction that is unsupported by its own authorities. *Compare* ECF No. 118, PageID.574-575 (quoting *Brown*, 2022 WL 9936378, at *2, where the court explained it would not "bar discussion of information gained from sources other than the discovery in this case" *and United States v. Smith*, 985 F. Supp. 2d 506, 544 (S.D.N.Y. 2013), where the protective order did "not apply to information in the public domain or independently obtained") *with* ECF No. 212, PageID.1361-1363.

Protective orders entered pursuant to Fed. R. Crim. P. 16(d)(1) are meant to govern dissemination of discovery materials, not to bar dissemination of information independently known to a defense team. Exempting information from outside sources is a reasonable carveout to ensure that the protective order does not cross the line to a gag order. *See United States v. Sant*, Case No. 0:26-cr-00115, ECF No. 183 at 2 (D. Minn. Jul. 16, 2026) (excluding "matters of public record" and "materials obtained by the defendants through sources other than discovery from the government"); *Pert*, Case No. 1:21-cr-00139, ECF No. 22 at 5 (excluding "[m]aterials that the defense obtains by means other than discovery); *Rhinehart*, 467 U.S. at 34 ("the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes").

The government provides no sound basis to depart from these authorities. Though 18 U.S.C. § 3771 can certainly support good cause to issue a protective order, it provides an insufficient basis to restrict out-of-court discussion of names and identities that are already public information. Notably, no victim or witness appears to

have suffered from the absence of this restriction for the first several months of this prosecution. Though it urges the Court that witnesses and victims still need more legal protections to be safeguarded from defendants, the government has presented no evidence (either in protective order briefing or in multiple hearings addressing conditions of release) more recent than March 2025 that points to threats or intimidation against anyone involved in this case. Besides not being attributable to any defendant or member of the defense team, the government's invocation of social media discourse surrounding the case did not identify any dissemination of personal identifying information (other than perhaps that of Defendants), let alone threats. *See* ECF No. 118, PageID.579-580; ECF No. 165, PageID.871-873.

Outside the discovery context, courts may impose restrictions on the speech of litigants only when such restraints are "narrowly tailored" to address serious threats to the administration of justice. *In re Flint Water Cases*, No. 5:16-CV-10444, 2024 WL 2139318, at *18 (E.D. Mich. May 13, 2024), *reconsideration denied*, No. 5:16-CV-10444, 2024 WL 2725040 (E.D. Mich. May 28, 2024) (quoting *United States v. Ford*, 830 F.2d 596, 600 (6th Cir. 1987)) (Levy, J.). If the Court found that such threats exist, which the current record plainly does not support, a narrowly-tailored restriction could be limited to publicly disseminated statements intended to intimidate or harass. *See Id.* at *18-20 (discussing *United States v. Trump*, 88 F.4th 990 (D.C. Cir. 2023)).

Defendants are already bound by the conditions of their pre-trial release, which limit contact with victims and witnesses, and are well aware of the serious penalties

for any attempts at interfering with witnesses. Defense counsel and legal staff, along with being bound by federal and state law, are subject to the Michigan Rules of Professional Conduct (MRPC). *See* MRPC 3.6(a)(1) (barring disclosure of the identity of witnesses in publicly disseminated statements); MRPC 8.4(c) (barring conduct prejudicial to the administration of justice). This Court should reject the government's invitation to further restrict the defense team's speech and enter a protective order that makes clear that members of the defense team will not be sanctioned for lawful, out-of-court discussion involving the identities of individuals obtained from sources outside the government's discovery.[11]

Dated: November 18, 2026

Respectfully submitted,

*s/ Amanda N. Bashi*
*s/ Sara Garber*
Amanda N. Bashi
Sara Garber
**Counsel for Zainab Hakim (D-1)**
Federal Community Defender
613 Abbott Street, Suite 500
Detroit, MI 48226
amanda_bashi@fd.org

*s/ William W. Swor*
William W. Swor
**Counsel for Amatullah Hakim (D-2)**
2450 Guardian Building
500 Griswold Street
Detroit, MI 48226
wwswor@wwnet.net

[11] Counsel for Defendants are working together to prepare an amended proposed protective order for submission.

*s/ Jonathan Sidney*
Jonathan Sidney
**Counsel for Paige Feyock (D-3)**
Climate Defense Project
PO Box 97
Forest Hill, WV 24935
jsidney@climatedefenseproject.org

*s/ Molly Armour*
Molly Armour
Law Office of Molly Armour
53 W. Jackson Boulevard, Suite 1424
Chicago, IL 60604
armourdefender@gmail.com
(Illinois Bar 6295792)

*s/ Sanford Plotkin*
Sanford Plotkin (P38691)
30445 Northwestern Hwy., Suite 225
Farmington Hills, MI 48334
sanfordplotkin@gmail.com

*s/ Arthur J. Weiss*
**Counsel for Jonathan Zou (D-5)**
30445 Northwestern Highway Suite 225
Farmington Hills, MI 48334-3158
arthurweiss@ajweisslaw.com

*s/ John A. Shea*
John A. Shea (P37634)
120 N. Fourth Avenue
Ann Arbor, MI 48104
jashea@earthlink.net

*s/ James C. Thomas*
James C. Thomas
**Counsel for Mariam Odeh (D-7)**
James C. Thomas, P.C.
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
jthomas@orlaw.com

*s/ Jamil K. Khuja*
Jamil K. Khuja
**Counsel for Ahmet Korkaya (D-4)**
Khuja Law Firm, P.L.L.C.
1360 Porter St. Suite 200
Dearborn, MI 48124
khujalaw@gmail.com

*s/ Ebony L. Ellis*
Ebony L. Ellis
**Counsel for**
**Alexander Sepulveda (D-6)**
Law Offices of Alan Crawford, PLLC
120 N. Michigan Ave. Suite 303
Saginaw, MI 48602
ebony.ellis@acrawfordlaw.com

*s/ Brad Thomson*
Brad Thomson
**Counsel for Colin Weger (D-8)**
People's Law Office
1180 No. Milwaukee
Chicago, IL 60642
brad@peopleslawoffice.com

*s/ Joshua G. Herman*
Joshua G. Herman
Law Office of Joshua G. Herman
53 West Jackson Blvd., Suite 404
Chicago, IL 60604
jherman@joshhermanlaw.com

*s/ James R. Gerometta*
Mogill, Lemanski & Gerometta, PLLC
Counsel for Colin Weger
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
jgerometta@miethicslaw.com

*s/Michael C. Naughton*
Michael C. Naughton
North Coast Legal, PLC
800 Cottageview Drive
Suite 1088
Traverse City, MI 49684
mike@thenorthcoastlegal.com

/s/ Juan A. Mateo, Jr.
Juan A. Mateo, Jr.
**Counsel for**
**Henry David MacKeen-Shapiro (D-9)**
409 East Jefferson Avenue, Suite 500
Detroit, MI 48226
mateoja@aol.com

/s/ Ryan H. Machasic
Ryan H. Machasic
**Counsel for**
**Joseph Mark Fisher (D-11)**
28411 Northwestern Hwy, # 875
Southfield, MI 48034
(586) 914-6140
ryan@machasiclaw.com

*s/John M. McManus*
John M. McManus
**Counsel for**
**Aaron Hunter Vonbargen (D-10)**
John M. McManus
Vandeveer Garzia, P.C.
840 W. Long Lake Rd., Suite 600
Troy, Michigan 48098
jmcmanus@vgpclaw.com

s/ Joan Morgan
Joan Morgan
**Counsel for**
**Srishti Tarana Sharma (D-12)**
joanmorganlaw@gmail.com