UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 26-20306

Hon. Judith E. Levy

v.

D-1 ZAINAB ALIASGAR HAKIM (a/k/a “Z”)
D-2 AMATULLAH ALIASGAR HAKIM (a/k/a “A”)
D-3 PAIGE ELIZABETH FEYOCK
D-4 AHMET KEREM KORKAYA (a/k/a “Met”)
D-5 JONATHAN HONGRU ZOU
D-6 ALEXANDER MATTHEW SEPULVEDA
D-7 MARIAM MUHAMMED ODEH
D-8 COLIN HUNTER WEGER (a/k/a “Beams”)
D-9 HENRY DAVID MACKEEN-SHAPIRO
D-10 AARON HUNTER VONBARGEN
D-11 JOSEPH MARK FISHER
D-12 SRISHTI TARANA SHARMA

Defendants.

---

# United States’ Response to the Defense Supplemental Brief on the Court’s Protective Order

---

Despite prior agreement, full briefing, and a lengthy hearing, defense counsel now seek to materially change the previously agreed-upon definition of sensitive materials for a protective order in this case. Ahead of the hearing, defense counsel submitted a proposed order that expressly covered full extractions of electronic devices seized during the investigation. (ECF No. 157-1, PageID.808). The government proposed the *same terms*. (ECF No. 118-1, PageID.587). Now, the defense seeks to significantly alter and restrict the definition of sensitive materials. The defense now seeks to exclude full device extractions from the protective order and define for themselves what qualifies as sensitive material within an electronic device. The Court should deny the defense's new request to alter the Court's protective order.

In August 2026, after failing to reach an agreement with the defense, the government moved for a protective order using terms that are widely accepted through this district. In so doing, the government made clear that the scope of the order must include electronic files, including complete cell phone and device extractions. The electronic data in the case was "thoroughly intermixed with personal and sensitive information," including "details and communications of daily routines,

locations frequently visited, group and third-party associations, information on family members, and intimate and sexual material, including information concerning third parties and Defendants themselves." (ECF No. 118, PageID.567). "Specifically, they contain detailed personal information on the victims, third parties, and the defendants themselves, touching on where they live, where they frequently travel, who they associate with, what they spend money on, and even details about their intimate relationships." (*Id.*, PageID.561).

As the government explained, the electronic data—which includes terabytes more information than is required to be disclosed under Rule 16—must be included in a protective order because otherwise the government would be forced to "sort through each file, phone, and electronic source to redact or remove this highly sensitive material, with separate disclosures to each Defendant depending on their discovery rights." (*Id.*, PageID.567). Further, "[t]he [protective] order would allow the defense to review and understand the files without myriads of redactions and exclusions, splintering and segregating information, and requiring conversion from a software reader program to print out information page by page." (*Id.*, PageID.570).

Ahead of the hearing, the defense expressly agreed upon the scope and meaning of sensitive materials. After filing responses to the government's motion, the defense submitted a joint proposed protective order. The defense definition of sensitive materials was *identical* to the government's terms and included electronic devices extractions. (ECF No. 157-1, PageID.809). During the hearing and in line with the government's reasoning, defense counsel stated: "The way those [cell phone extractions] are produced . . . is that they're produced as the whole device and produced in a program that allows us to actually be able to find things in the device that are relevant." (ECF No. 165, PageID.868).

The Court correctly noted the parties were "good with paragraph one" and in substantial agreement on its terms, as the parties had the *same* definition of sensitive materials. (*Id.*, PageID.879). When the Court asked the defense attorney who filed the joint defense brief to affirm this, that attorney expressly agreed: "Now that I have clarity it is not a blanket protective order, that there will be material that is not marked sensitive, *I do think that's correct*." (*Id.*, PageID.883) (emphasis added).

After this agreement, another defense attorney argued, for the first time and without any prior briefing, agreement, or argument, that the

scope of the protective order should be changed to cover only PII within the electronic devices, not the electronic devices themselves. The attorney explained that the determination of whether information was protected could be determined by the defense attorneys. According to the attorney, the protected nature of the information would purportedly be apparent to the defense attorneys: "I don't think we need to -- if there is a name or an address of a victim, *we can tell it's protected*." (*Id.*, PageID.886 (emphasis added)).

In response, the government reiterated the parties' agreed-upon position. If the protective order does not cover electronic devices in full, the government cannot properly ensure the protection of sensitive information, much of which is not relevant or discoverable, "unless [the defense] get[s] their discovery in PDF, which they don't want." (*Id.*, PageID.885).[1]

In line with explanations on the record, the Court granted in part and denied in part the government's motion, and considering the terms

---

1 Electronic forensic reports can be viewed in executable software programs (such as Cellebrite reader) or they can be converted to a PDF document report. The forensic reports provided in software programs cannot be redacted for PII or sorted for non-Rule 16 discovery.

of the parties' proposals, it determined that a protective order was necessary.

After full briefing on the issue and after having submitted a joint protective order (ECF No. 157-1), and after this Court made specific rulings, the defense did an about face and seeks to alter the foundational definition of sensitive materials. The defense wishes to exclude electronic devices from the protective order and only protect information within the devices if there is a determination *by the defense team*, based on a "know it when I see it" standard, that the information constitutes PII. (ECF No. 213, PageID.1393.) Stated another way, if the defense looks at information in the electronic devices and determines, in its view, that the information is not protected, the defense could release the information, and the government could file a motion for contempt of court if it disagreed. Such a proposal is unreasonable, unworkable, and unprecedented in this district. It will significantly increase the likelihood of improper disclosure, and it invites dispute and uncertainty. This uncertainty would redound to the detriment of *all* parties, including the defendants. But moreover, this new proposal conflicts with terms the

parties had *already agreed upon* ahead of the hearing and was never ordered by the Court.

In order to explain these significant changes in the defense position on the scope of the protective order, the defense claims that a difference of opinion with the government only became "apparent during the hearing." (*Id.*, PageID.1386-88.) That is deeply unconvincing. The government's position has been clear and consistent throughout this extended process and negotiations. And it remained clear in the government's written motion and proposed order. (ECF No. 118, PageID.567; ECF No. 118-1, PageID.587.) Having read the government's position, the defense itself *agreed to same exact terms*; lead defense counsel reiterated the position at the hearing. (ECF No. 157-2, PageID.809; ECF No. 165, PageID.883.) The defense knew the government's position on the meaning of sensitive materials before the hearing, agreed to the same exact terms, and now seeks to rewrite their position post-hearing. Yet at no point has the Court directed, ordered, or agreed to this novel language that the defense now advances.

The new amendment is also unjustified. The Court, in line with the parties' agreement, already found that good cause exists for a protective

order. (ECF No. 165, PageID.878). No motion for reconsideration has been filed by the defense. The government briefed the issue in detail, and the defense agreed that good cause justified inclusion of the devices as a result. The Court's finding goes beyond the defense's new definition of PII; the protective order is not merely for "names, addresses, [and] phone numbers," as the defense describes it. (ECF No. 213, PageID.1394). The data contained in the electronic devices includes extensive information on the lives, activities, associations, and families of victims, third parties, and the defendants themselves. It goes beyond .001% of the data, as the defense bluntly speculates in its brief. (*Id.*, PageID.1384). Much of this sensitive material is not relevant and not discoverable. But in the interest of efficiency and professional courtesy, the government agreed to make it available for the defense, provided they agree to protect it under a routine protective order. Much of the material goes beyond mere names and numbers, and all of the material must be protected, as the Court has already held.

Once good cause is established to protect information contained within large electronic files, protective orders routinely cover the *full and complete* file. *See, e.g., United States v. Dixon*, 355 F. Supp. 3d 1, 3 (D.D.C.

2019) (covering a "significant amount" of body worn camera as a whole, not just concerning portions of protected information within the videos, and requiring the defense to redact those specific portions when displaying the videos to the defendant); *United States v. Smith*, 985 F. Supp. 2d 506, 545-46 (S.D.N.Y. 2013) (covering wide swaths of "audio recordings, transcripts, computer files, business records, telephone records, and other materials" because "it would be virtually impossible, let alone unduly burdensome, for the Government to conduct a page-by-page, document-by-document review to single out those portions of the discovery materials that must be shielded"); *United States v. Fordham*, Case No. 21-20354, ECF No. 384 (E.D. Mich. Oct. 6, 2021) (Borman, J.) (upon a finding of good cause, defining protected material to include wide swaths of files, including "electronic-device extractions").

By contrast, it is *not* standard practice to rely on a "know it when I see it" standard, as defined by the defense team, to ensure essential privacy protections. The defense cites no such example in its briefing.

If a protective order is not extended to the entire devices, in order to ensure the essential privacy and safety interests implicated in this case, the government will be forced to transition device extractions to

PDF files and apply page-by-page redactions. The defense proposal of protecting information so long as it is PII under a "know it when I see it" standard is completely inadequate. Once material is released, the bell cannot be unrung; sensitive material that is circulated cannot be uncirculated. And when sensitive information is improperly released, motion practice, including contempt proceedings, will ensue. Using the novel language of the defense will significantly increase the risk of unjustified disclosure, invite different parties and different defendants to take different views on what is covered, and create a substantially greater risk of litigation and contempt proceedings. It is far better for *all* those involved, including the defendants, to have clear, well-defined, and predictable boundaries of protected materials. Therefore, the entire electronic devices, including the device extractions, must be included in the definition of sensitive materials, as the parties all previously agreed.

The defense repeats its argument that the inclusion of the defendant's full personal phone extractions in the protective order is "inefficient" and unjustified because non-sensitive information could be included. (ECF No. 213, PageID.1389-90).

At the September 9 hearing, the defense made the same arguments, stating that the protective order would make their own phones and media "something they cannot discuss with their own counsel or disclose," which would be unduly burdensome and unnecessary. (ECF No. 165, PageID.895-96). The Court allowed the defendants to have *access* to their own phones, but the Court did not accept the defense arguments on non-disclosure. It held that it would "accept" the government's language that included defendant's personal phones within the non-disclosure terms "as written." (*Id.*, PageID.896). The Court acknowledged that the defendants could "let [the Court] know if there was a problem," and in turn, the government reiterated that it would work in good faith to avoid unnecessary disputes. (*Id.*)

Further, when discussing the defendant's access to their own phone extractions, the Court expressly reiterated that the protective order would prohibit the defendants from sharing their phones with others:

> Mr. Kuhn: And just a final point is that the -- this protective order is limited to the defense team so if it's beyond the defense team, then that would -- *the defendants are prevented from disclosing their phones outside the defense team, which is what we both agree upon.*
>
> The Court: *Right.*

(*Id.*, PageID.910 (emphasis added)).

The Court expressly held that the defendant's phones were covered by the protective order and could not be disclosed to unauthorized third parties.

Finally, the defense argues that coverage of the electronic devices would subject the defense to violations for information that "previously been made public." (ECF No. 213, PageID.1389). As the government has repeatedly explained, supported by case law, "[n]othing prevents the defense from transmitting information obtained from public sources." (ECF No. 118, PageID.574; ECF No. 146, PageID.753). In line with this analysis, the Court held that sensitive materials must be protected and cannot be disseminated to unauthorized third parties. (ECF No. 165, PageID.878, 891-900, 910). This is another attempt to relegate settled issues, and the Court should reject it.

The defendants' novel request to narrow the definition of sensitive materials to PII within electronic files, based on a vague "know it when I see it" standard, is wholly inadequate. It creates an unacceptable risk of improper disclosure, lacks workability, and invites continued dispute. Further, it is in direct conflict with the protective order that the defense

itself *proposed* and *already agreed to* when the order was litigated, and this new proposal conflicts with the Court's reasoning and holdings. The parties had the opportunity to offer protective order language to the Court. The defendants did so, and they submitted a proposed protective order that included the same definition of sensitive materials as the government. The defense cannot now seek to rewrite essential terms of the protective order that the Court has already granted.

The Court should enter a protective order consistent with its earlier rulings and with the language the parties already agreed upon, which is attached as Exhibit A to the government's supplemental brief. (ECF No. 212-1).

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

/s/ *Robert M. Kuhn*
Robert M. Kuhn
Margaret M. Smith
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9100
robert.kuhn@usdoj.gov

Dated: November 18, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2026, the foregoing document was electronically filled by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.