UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No.: 26-cr-20306

v.

Hon. Judith E. Levy

Zainab Hakim, et al.

Defendants.

---

**DEFENSE BRIEF REGARDING DISCLOSURE OF GRAND JURY MATERIALS**

---

This briefing arises from an unusual sequence of events. The government moved to revoke Ms. Hakim's bond under 18 U.S.C. § 3148 (ECF No. 226), alleging that she committed a tampering offense while on release. Those allegations were based on a wet laptop that federal agents found while executing a search warrant on Ms. Hakim's home. (The laptop belongs to Henry Mackeen-Shapiro.) Yet evidence produced by the government and eyewitness accounts contradicts the government's original motion and reply (ECF No. 263.) On the morning of the revocation hearing, when the defense was prepared to call witnesses and test the government's theory, the government obtained a superseding indictment charging Ms. Hakim with the offense. (ECF No. 266.) The government now argues that the indictment settles the issue of probable cause under 18 U.S.C. § 3148 and forecloses any inquiry into the factual record.

The record gives this Court good reason to be concerned that the grand jury heard an accurate account of the pertinent facts and law. The same misstatements the government made to this Court were likely made to the grand jury, outside the presence of anyone who could correct them.

Rule 6(e) allows disclosure when only the grand jury materials can shed light on whether an error occurred in the indictment process. Courts in similar situations have ordered disclosure, often preceded by *in camera* review, to investigate whether the grand jury heard factual misrepresentation. This Court should do the same.

## FACTUAL BACKGROUND

**Zainab is released on bond**

Following her initial appearance, Magistrate Judge Patti released Zainab on bond on June 12, 2026. (ECF No. 91, Order Setting Conditions of Release.) Judge Patti found that a combination of release conditions could assure the safety of the community and Zainab's appearance in court. (*Id.*) Three months later, on September 9, 2026, this Court granted Zainab's motion to modify the conditions of release from home detention to a curfew restriction. (ECF No. 159.) In doing so, the Court recognized that Zainab "has lived up to each and every condition of pretrial release that was placed on her." (ECF No. 165, Hrg. Tr. Sept. 9, 2026, PageID.834.)

**The government executes a search warrant**

Agents executed a federal search warrant at Zainab Hakim's house on the afternoon of October 29, 2026. Earlier that day, agents arrested her boyfriend, Henry

Mackeen-Shapiro, as a co-defendant in this case. Henry and Zainab live together; the search warrant purportedly authorized agents to seize and search Henry's electronic devices.

The agents' body-worn camera (BWC) footage lays out the following timeline, which the government now stipulates to.[1]

- 16:51:22: First knock and announce
- 16:51:31: Agent Strunk walks towards front door with battering ram
- 16:51:35: Second knock
- 16:51:41: Agent Strunk instructs other agents to move out of the ram's way
- 16:51:48: Agent Strunk rams the door, almost simultaneously as Mark T., Zainab's roommate, opens the door**.** Agents immediately begin shouting instructions to Mark, and then to each other individual in sequence.
- 16:52:29: Agents call for Zainab to step forward and exit the home.
- 16:52:36: Zainab is visible within the entryway of the home, in plain view of the agents.

In all, one minute and fourteen seconds elapsed from the agents' first knock on the door to Zainab appearing in the entryway of the home. A significant portion of that time, agents were shouting instructions that Zainab and the other occupants abided. Zainab did not appear to be wet. (ECF No. 270, PageID.1845.) She then followed the

[1] (ECF No. 270, Hrg. Tr. Nov. 18, 2026, PageID.1844) ("Just for the record, we stipulate to this timeline. We put it in our reply.").

agents' instructions for the duration of the search, including unlocking and handing over her cell phone when asked. (*Id.*., PageID.1852.). All three occupants, for that matter, followed agents' instructions the moment Mark T. opened the door. (*Id.*, PageID.1844-48.)

Inside the room that Zainab and Henry share, Zainab's laptop was on the desk with the screen on, logged into her accounts. (*Id.*, PageID.1842.) Officers found another laptop under the bed. (*Id.*, PageID.1834.) That laptop had drops of liquid on the screen and touchpad, in addition to other stains and residue caked on the same surfaces, as well as the keyboard. (*Id.*, PageID.1852-55.)

**Four days later, the government files the revocation motion**

Four days after the search, on November 2, 2026, the government filed an emergency motion to revoke Zainab's bond, calling for the Court to immediately issue an arrest warrant and/or hold a hearing and revoke bond. (ECF No. 226.) The government presented a factual narrative that Zainab and other occupants of the home refused to come to the door, that they did not follow law enforcement instructions, that Zainab refused to "show her face" to agents inside the home, and finally that the reason for all of that evasion was that Zainab had "soaked" Mackeen-Shapiro's laptop, wrapped the wet laptop in clothing, then put it into a zipper bag and hid it under her bed.

**Inconsistencies about the government's account emerge**

Immediately after the government filed its motion, the defense requested the body-worn camera (BWC) footage and the source of the government's factual proffer. The defense reiterated this request thrice more in writing. Each time, the government declined to name any source(s), stating that the brief relied on conversations with a "variety of agents and hearsay from other agents," and that any one statement could not be attributed to "any one agent."[2]

| **Gov't revocation motion (ECF No. 226)** | **Gov't reply (ECF No. 263)** | **Gov't statement at revocation hearing (ECF No. 270)** | **What the facts show** | **Did Government correct?** |
|---|---|---|---|---|
| "No one else came out of that bedroom."<br><br>PageID.1509 | "The direction she came from suggests she was coming from upstairs in her bedroom" PageID.1683 | Zainab came out from the direction of her bedroom. PageID.1826<br><br>Zainab ran upstairs when she saw officers arrive.<br><br>PageID.1826-27. | This is the only direction one can come out of the apartment unit PageID.1826.<br><br>Zainab was upstairs when she yelled that police were outside.<br><br>PageID.1829 | Yes, at the hearing:<br><br>"No, I think that's right."<br><br>PageID.1826<br><br>"You're right. You're right. I stand corrected."<br><br>PageID.1829 |
| "Once inside, [the officers] further had to continue to call for Zainab Hakim to come out and show herself . . . Zainab Hakim still refused to show her face"<br><br>PageID.1494, 1504 | | "Using the word they were inside versus when the door is open, I would have considered that inside the house. They have gotten in."<br><br>PageID.1838 | Officers remained outside the house as they ordered each individual inside to step forward and follow further instructions. When they called Zainab's turn, she came to the door "voluntarily with her hands up."<br><br>PageID.1835 | No. |

[2] At the November 18th hearing, the defense provided the Court with some of its email correspondence with the government. The defense plans on making the exhibits part of the record at the upcoming hearing.

| **Gov't revocation motion (ECF No. 226)** | **Gov't reply (ECF No. 263)** | **Gov't statement at revocation hearing (ECF No. 270)** | **What the facts show** | **Did Government correct?** |
|---|---|---|---|---|
| A co-conspirator was present in the home and had to be ordered to come out by officers.<br><br>PageID.1494 | | | The government does not identify any of the people who were present in the home as a coconspirator. | Yes, at the hearing:<br><br>"I indicated that a coconspirator was at the door. It was not a coconspirator. Not one that I know to be a coconspirator . . .it may have been me that just assumed it that it was him."<br><br>PageID.1837 |
| "Within one of the bags, agents found a MacBook laptop wrapped in one of the articles of clothing that was very recently drenched in water."<br><br>PageID.1494, 1504-05 | | | The laptop was underneath a bag of clothing, not wrapped in clothing and/or within a bag.<br><br>PageID.1834 | Yes, at the hearing upon prompting from the Court.<br><br>"It was underneath, yes. And I have it in my notes to correct that part of the record."<br><br>"It is unclear whether the laptop . . . I think that the laptop was underneath as the report indicates."<br><br>PageID.1834, 1838 |
| "[The laptop] was soaking wet with fresh water dripping down the screen and droplets on the keyboard."<br><br>PageID.1506 | "It is perfectly logical that Zainab Hakim put the laptop in corrosive saltwater as a belt and suspenders approach."<br><br>PageID.1684 | "That is a theory. She put it in some sort of liquid. It could have been saltwater. It could have been regular water. . .We don't know."<br><br>PageID.1849 | | No. |
| "[The laptop] was soaking wet". "The sabotaged MacBook had been recently dunked in water."<br><br>PageID.1506, 1509 | | | The laptop appears dry on the exterior. Nothing touching the laptop is wet (sheets, bed). The FBI report indicates the wet parts | No. |

| | | | | |
|---|---|---|---|---|
| | | | of the laptop were the screen and keyboard. | |

**The government agrees to produce witnesses, then indicts Zainab and refuses to produce them**

Hours before the scheduled revocation hearing, the government obtained a superseding indictment charging Zainab with evidence tampering, in violation of 18 U.S.C. § 1512(c)(1). (ECF No. 266.) The government then appeared at the hearing and declared the factual discrepancies irrelevant in the face of the indictment. When pressed on material issues between its written submissions to the Court and the evidence, the government conceded some of them, offering excuses that the original motion was hastily written. Further, the government appeared to argue that Zainab's mere presence near the wet laptop was probable cause of evidence tampering, which would overlook any probable cause regarding intent or an affirmative action to complete the offense. (ECF No. 266, PageID.1772 (alleging Zainab did "knowingly and corruptly alter, destroy, mutilate, and conceal.")).

Given the documented factual issues, the defense requested disclosure of the grand jury record as to Count 11 in the Second Superseding Indictment. The Court ordered this briefing on the issue.

## LEGAL STANDARD

Federal Rule of Criminal Procedure Rule 6(e) authorizes disclosure either "in connection with a judicial proceeding" or "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred

before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii). The two provisions are independent paths to disclosure.

Disclosure is warranted when a defendant demonstrates a "particularized need." *In re Antitrust Grand Jury*, 805 F.2d 155, 161 (6th Cir. 1986). To establish particularized need, the defendant must show: 1) The material is needed to avoid a possible injustice in another judicial proceeding; 2), the need for disclosure outweighs the need for continued secrecy; and 3) the request is narrowly tailored. *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979). Courts assess particularized need on a sliding scale analysis: "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Id.* at 223.

"A Court called upon to determine whether grand jury transcripts should be released has substantial discretion" in ordering disclosure. *United States v. Rodriguez-Torres*, 570 F. Supp.2d 237, 241 (D.P.R. 2008) (collecting cases); *Douglas Oil* 441 U.S. at 223; see *also United States v. McMahon*, 938 F.2d 1501, 1504 (1st Cir. 1991). That too, the text of Rule 6(e)(3)(E) authorizes district courts to tailor the timing, manner, and conditions of disclosure.

Grand jury proceedings are usually presumed regular. But in the last year and a half, federal courts across the country have found serious defects in grand jury presentations. For that matter, courts have expressed misgivings over whether the executive branch is still owed the presumption of regularity at all. *See Fed. Educ. Ass'n v.*

*Trump*, 795 F. Supp. 3d 74, 90–92 (D.D.C. 2025) (collecting cases exhibiting the "departure" of regularity by executive branch officials). In many of those criminal cases, procedural defects were not apparent until the judge examined grand jury and/or internal records. The following courts have ordered disclosure just in the last year. The cases cited below share a common thread: politically charged prosecutions, often involving speech or protest.

- *United States v. Levy-Armstrong*, No. 26-cr-25, (D. Minn. Aug. 18, 2026) (ECF No. 631): District court ordered *in camera* review of grand jury materials in prosecution of anti-ICE protestors and journalists covering the protest. In moving for grand jury records, the defense raised concerns about potential misinstruction regarding the law and Justice Department officials' inflammatory public comments about the defendants. (*See* Def. Joint Objection, ECF No. 549.) The court ordered disclosure of the government's "introduction, legal instruction for the two counts, witness testimony, and closing, including answers to questions from the grand jurors."
- *United States v. Rabbitt, et al.*, No. 25-cr-693 (N.D. Ill.) (ECF Nos. 123, 130, 187): After the district court ordered disclosure of unredacted transcripts, it found the prosecutor vouched for charges against the "Broadview Six" group of protesters, communicated with a grand juror outside the room, and excused grand jurors who opposed the case. The government had redacted misconduct from the

transcripts it first gave the court. The government dismissed all charges with prejudice.

- *United States v. Ocon*, No. 26-cr-39 (D. Wyo. May 15, 2026) (ECF No. 49): A panel of three judges dismissed nine felony indictments, including a murder case, because the interim U.S. Attorney made inflammatory remarks to the grand jury panel, including that a prior grand jury returned an indictment in minutes.
- *United States v. Abrego Garcia*, 833 F.Supp.3d 811 (M.D. Tenn. 2026): The court conducted an *in camera* review of internal Justice Department communications surrounding the criminal charge of Mr. Abrego Garcia. It found that senior Justice Department officials reopened an investigation to retaliate against Abrego Garcia for winning his immigration case.
- *United States v. Comey*, No. 1:25-cr-272 (E.D. Va. Nov. 17, 2025) (ECF No. 191): After *in camera* review, court identified two "fundamental misstatements of the law" to the grand jury and a possible failure to present the operative indictment to the grand jury. The court then ordered full disclosure.

## ARGUMENT

Fed. R. Crim. P. 6(e)(3)(E)(i) and (ii) provide independent paths to disclosure. Ms. Hakim invokes both, for the reasons explained below. In short, the abnormal circumstances around the indictment create a significant risk that the government misrepresented key issues of fact and law to the grand jury, in a way that may undermine the indictment itself, as well as the government's arguments in support of revocation.

## I. A ground may exist to dismiss the indictment because of a matter that occurred before the grand jury

### a. The independence of the grand jury depends on the prosecutor's candor

"The purpose of the grand jury is to remove from prosecutors the power to initiate prosecutions for felonies and instead to place that power with a group of citizens acting independently of either prosecuting attorney or judge." *United States v. ITT Blackburn Co., a Division of ITT,* 824 F.2d 628, 630 (8th Cir.1987); *Stirone v. United States,* 361 U.S. 212, 218 (1960). Independence is the crux. Thus, under the Fifth Amendment, "[t]he right to have the grand jury make the charge *on its own judgment* is a substantial right which cannot be taken away." *Id.* at 218–19 (emphasis added).

Still, the grand jury can only be as independent as the information it hears from the prosecution. "The prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a grand jury does not entitle him to mislead it," *United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir. 1979). Otherwise, the indictment no longer reflects the grand jury's judgment, but rather the prosecutor's. That is why courts may dismiss an indictment "to prevent prosecutorial impairment of the grand jury's independent role." *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983) ("In short, a prosecutor as an officer of the court is sworn to ensure that justice is done, not simply to obtain an indictment.").

### b. The record here establishes a substantial likelihood that the grand jury received misleading information

The record made by the government in the bond proceedings show that a ground for dismissal of the indictment may exist for four reasons.

*1. Factual misrepresentations*: First, the government made material misrepresentations and omissions in its filings with the Court—outlined in the table above. These misstatements were not about peripheral details, as the government implied at the revocation hearing. (ECF No. 270, Hrg. Tr., PageID.1840) (characterizing defense inquiry into facts as a "side journey."). In charging Ms. Hakim with tampering, in violation of 18 U.S.C. 1512(c)(1), the government alleges that there is probable cause that Ms. Hakim "knowingly and corruptly" destroyed, or attempted to destroy the laptop. (ECF No. 266, Second Superseding Indictment, PageID.1772.) Ergo, every misstatement about Ms. Hakim's refusal to comply with officers' orders and show herself in a timely manner, and each mischaracterization of the "soaked" laptop bears on the elements of the offense(s) the government accuses Ms. Hakim of.

The government repeatedly argued that it moved for revocation in a rush – x "when the information is provided and I'm trying to type it up and get it out as quickly as possible, mistakes happen" – such that it had no time to verify the information it received from officers who were "on the scene at the time." (*See* Hrg. Tr., PageID.1837-38.) Yet four days elapsed between the execution of the search warrant on October 29th and November 2nd, when the government filed its motion. There were then two weeks between the original motion and the government's reply, and another two days between

the last filing and the revocation hearing. The government had ample opportunity to submit corrections on the record of its own accord. It did not do so.

If the government made incorrect statements in a sworn filing, in the context of an adversarial proceeding where the defense could respond, there is reason to believe it made them to a grand jury, where no one could oppose its presentation. And if the government failed to correct its mistakes at the hearing itself, except at the prompting of defense counsel or the Court, there's reason to be concerned the grand jury heard facts that were plainly incorrect or at best misleading.

It's true that prosecutors have no obligation to present exculpatory evidence to the grand jury. *United States v. Williams*, 504 U.S. 36, 51–52 (1992). Still, when there is a risk that a prosecutor affirmatively misled the jury about the nature of evidence, courts have ordered disclosure to further investigate.

In *United States v. Naegele*, for example, the government charged the defendant for bankruptcy fraud based on the theory that he lied under oath in a signed financial statement. 474 F. Supp. 2d 9, 11 (D.D.C. 2007). However, the government's only exhibit at trial indicated that not only did the government not present the statement's signature page to the grand jury, it did not even possess the page at the time of its presentation to the grand jury. *Id.* The district court reviewed the grand jury presentation *in camera* and concluded that that "questions posed and the answers given before the grand jury seemed to suggest" that the government possessed the operative signature page, and did not "disclose to the grand jury during the [case] agent's

testimony that they lacked the . . . [evidence].” *Id.* The court then ordered full disclosure of the transcripts to the defense to pursue a motion to dismiss the indictment based on “possible misconduct or misleading nature of the presentation.” *Id.* at 12.

Other district courts have also ordered disclosure, or at least taken the preliminary step of *in camera* review, to investigate factual misrepresentations before the grand jury. *See, e.g, United States v. Knight*, No. 319CR00038MMDCLB, 2021 WL 134589 (D. Nev. Jan. 13, 2021) (reviewing transcript *in camera*, then ordering disclosure, based on allegation that agent gave speculative identification testimony); *United States v. Koschtschuk*, No. 09-CR-0096 S M, 2011 WL 3295817, at *3 (W.D.N.Y. Aug. 1, 2011) (ordering fulsome *in camera* review to determine whether prosecutor presented false testimony); *United States v. Lopez*, No. 216CR00265GMNCWH, 2018 WL 1718561, (D. Nev. Apr. 9, 2018) (reviewing transcripts *in camera* to determine whether grand jury was aware of witness’s altered testimony); *United States v. Wilcher*, No. 20-CR-40069-JES-JEH, 2021 WL 4394585, at *7 (C.D. Ill. Sept. 24, 2021) (ordering disclosure based on risk of perjured testimony).

Here, the government similarly argued for revocation before this Court based on evidence it concededly does not have. The government suggested that Ms. Hakim received notice of Mackeen-Shapiro’s arrest, despite the fact that it has no evidence of communication from any defendant’s device. (*Compare* ECF No. 263, Gov’t Reply, PageID.1684 with ECF No. 270, Hrg. Tr., PageID.1849-1850.). The government repeatedly stated that agents were forced to break down the door of Ms. Hakim’s home,

despite the fact that her roommate opened the door at the same time agents battered it. (ECF No. 270, Hrg. Tr., PageID.1838). The government also theorized that Ms. Hakim dunked the laptop in a bath of "corrosive salt water," even though it has not yet tested the residue on the laptop. (*Compare* ECF No. 263, Gov't Reply, PageID.1684 with ECF No. 270, Hrg. Tr., PageID.1849.) The government's narrative hinges on these misrepresentations—without the allegations of Zainab hiding and refusing to come to the door, all that's left is a wet laptop. There is thus a high likelihood that the government misrepresented to the grand jury that it had evidence to support these claims contradicted by its own evidence.

The defense does not complain of a lack of evidence presented to the grand jury. The defense acknowledges that an indictment may not be dismissed on sufficiency grounds. *See Costello v. United States*, 350 U.S. 359, 363–64 (1956). Rather, like in *Naegele*, the issue here is that the government knew about factual holes in its case and likely presented evidence to the grand jury in a way that implied those gaps weren't there.

***2. Shifting factual and legal theories:*** The government changed course when pressed about its account of Ms. Hakim's alleged conduct. For example, the government stated in its reply brief that Ms. Hakim came from "upstairs in her bedroom." (ECF No. 263, PageID.1683). Then, at the hearing, the government added that Hakim "had run upstairs before she came to the front door." When corrected, the government brushed the discrepancy off, stating "either way, she's upstairs with when the police come . . ." (ECF No. 270, Hrg. Tr., PageID.1829.) In the same register, the

government's story about Ms. Hakim dunking fresh water on the laptop minutes before officers arrived morphed into a bath of saltwater that Ms. Hakim prepared in the hours before the search warrant was executed. (*Compare* ECF No. 226, Revocation Motion, Page ID.1506 with ECF No. 263, Gov't Reply, PageID.1684 with ECF No. 270, Hrg. Tr., PageID.1849.).

The government's charging theory shifted as well. The revocation motion alleges probable cause that Ms. Hakim committed obstruction of justice, in violation of 18 U.S.C. § 1503, and destruction or removal of property to prevent seizure, in violation of 18 U.S.C. § 2232. (ECF No. 226, PageID.1494.) In its reply, then, the government changed its tune: Ms. Hakim actually committed tampering, in violation of 18 U.S.C. § 1512(c). The latter offense is the charge returned by the grand jury. (ECF No. 266, PageID.1772.) These shifts raise questions about which version of the government's story the grand jury heard.

The defense also cannot be sure whether the legal instructions the grand jury received matched the offense as the government now describes it. A grand jury instructed on the wrong elements, or on a theory the government has since abandoned, has not found probable cause for the offense actually charged. *United States v. Stevens*, 771 F. Supp. 2d. 556, 567 (D. Md. 2011) (dismissing indictment, following *in camera* review, then full disclosure, where prosecutors misinstructed grand jury on a defense that negated *mens rea*); *United States v. Peralta*, 763 F. Supp. 14, 19–21 (S.D.N.Y. 1991) (dismissing indictment where grand jury was misinstructed on the elements of

knowledge and intent); *United States v. Rabbitt et al*, No. 25-cr-693 (N.D. Ill.) (ECF Nos. 118, 123) (ordering disclosure upon defense motion identifying inconsistent charging theory).[3]

Relevant here, 18 U.S.C. § 1512(c) has both an intent and nexus requirement. The government is required to prove that Ms. Hakim acted "corruptly," that is, that she had "the specific intent of purpose" to impair the laptop "for use in an official proceeding." *See United States v. Bashaw*, 982 F.2d 168, 180 (6th Cir. 1992) (explaining "corrupt" intent standard). Yet the government's argument as to Ms. Hakim's intent without the factual misrepresentations can be reduced to physical proximity; as the government stated at the revocation hearing: "she was upstairs with [sic] when the police come, which is where the laptop was found." (ECF No. 270, Hrg. Tr., PageID.1830.) This raises questions of whether the grand jury was instructed to find specific intent that § 1512(c)(1) requires.

As for nexus, the government must prove that Ms. Hakim either "foresaw, or could reasonably foresee, that [her] conduct would interfere with an official proceeding." *United States v. Buchanan*, No. 22-3301, 2023 WL 5352223, at *5 (6th Cir.

---

[3] *See also United States v. Soliman*, No. 06-CR-236A, 2008 WL 4490623, at *6 (W.D.N.Y. Sept. 30, 2008) (disclosing instructions where the defendant argued that grand jury was misled by an incorrect instruction of the law); *United States v. Bowling*, 108 F. Supp. 3d 343, 352-53 (E.D.N.C. 2015) (dismissing multiple counts where "the government's erroneous legal instruction to the grand jury . . . played a significant and impermissible role in the grand jury's decision to indict"); *United States v. Cerullo*, No. 05-cr1190, 2007 WL 2462111, at *2-4 (S.D. Cal. Aug. 28, 2007) (dismissing indictment where prosecutor's failure to accurately and fairly explain important legal issue "misled the grand jury" and "prejudiced the Defendant"

Aug. 21, 2023) (quoting *United States v. Wellman*, 26 F.4th 339, 347 (6th Cir. 2022)).Seeing as the government waffled before the Court as to whether it had evidence of Ms. Hakim's knowledge of Mackeen-Shapiro's arrest, (*see* ECF No. 270, Hrg. Tr., PageID.1849-1850), it's worth asking whether the grand jury was properly instructed on the nexus element at all.

***3. Obscuring information sources*:** Despite the defense's multiple requests, the government refused to identify the source of the incorrect facts in its original revocation motion. Instead, the government conceded that it relied on hearsay from agents to make its argument.[4] At the hearing, for that matter, the government did not refute that its notes from conversations with agents formed the basis of the its factual statements.[5] (ECF No. 270, Hrg. Tr., PageID.1868.) Yet when the defense attempted to examine agents to get to the bottom of the matter, the government refused to make those witnesses available.

The government's obfuscation heightens the risk that an error occurred before the grand jury. If the government relied on the same inaccurate hearsay in its presentation, that would be an error that could warrant dismissal. In *Peralta*, for example, grand jury records revealed that the government's presentation consisted

---

[4] *See* (ECF No. 270, Hrg. Tr., PageID.1868) and email correspondence provided to the Court.

[5] In both *United States v. Leeper*, No. 06-CR-58A, 2006 WL 1455485, at *3 (W.D.N.Y. May 22, 2006) and *United States v. Koschtschuk*, No. 09-CR-0096 S M, 2011 WL 3295817, at *4 (W.D.N.Y. Aug. 1, 2011), courts ordered disclosure found that prosecutors had become "unsworn witnesses before the grand jury" by repeating misleading statements before the grand jury.

mostly of "inaccurate" hearsay testimony by the case agent. 763 F. Supp. 14, 21 (S.D.N.Y. 1991). This error compounded on the prosecutor's misstatements of law, and led the court to dismiss the indictment. *Id.*

Here, the government explained at the revocation hearing its motive for not identifying or putting on witnesses: avoiding *Giglio* material. Government counsel's concern that attributing statements would "Giglio me or an agent" reflects an understanding that the people who supplied the government's inaccurate account—including, potentially, counsel herself—could face impeachment for it. *See Giglio v. United States*, 405 U.S. 150 (1972).

***4. The timing of the indictment*:** The government obtained the Second Superseding indictment on the morning of the revocation hearing, where its allegations of probable cause would have been tested through live witnesses. Consider that the government repeatedly remarked at the revocation hearing that because "we're past probable cause," factual inconsistencies "are not relevant anymore." (ECF No. 270, Hrg. Tr., PageID.1867, 1819, 1840, 1860.) The timing is consistent with an effort to substitute a one-sided proceeding for an adversarial one.

Also, the government seemingly obtained the indictment on the morning of November 18, 2026, hours before the revocation hearing. If the government indicated a time pressure to grand jurors, suggested how long deliberations should take, or even conveyed a sense of urgency, that would be error. *See United States v. Breslin*, 916 F. Supp. 438, 442 (E.D. Pa. 1996); *United States v. Ocon*, 26-cr-00039 (D. Wyo. May 16, 2026)

(ECF No. 49, at *11) (finding prosecutor's statements that "the last grand jury was able to come back in three minutes" could have chilled deliberation and unfairly eroded the independence of the grand jury). At this early stage, and without the materials, the defense does not yet ask the Court to find improper motive. At bottom, the procedural gamesmanship raises the risk that other irregularities occurred before the grand jury.

## II. Grand jury material is needed to avoid injustice in the revocation proceedings

Rule 6(3)(E)(i) also authorizes this Court to order disclosure in connection with another proceeding. "[T]his exception applies where the judicial proceeding for which disclosure is sought differs from the criminal trial that the grand jury's indictment authorizes." *United States v. Wahib*, 578 F. Supp. 3d 951, 955–56 (N.D. Ohio 2022) (citing *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 615 (E.D. Va. 2004)). Here, that proceeding is the revocation under 18 U.S.C. § 3148.

At the first part of the revocation hearing, the Court found that the indictment constituted probable cause that Ms. Hakim had committed a crime. That's true under prevailing Supreme Court and Sixth Circuit precedent. *See Kaley v. United States*, 571 U.S. 320, 329 (2014). Even after *Kaley*, though, the Sixth Circuit still contemplates that probable cause can be rebutted. "An exception to this general rule applies when [the government] knowingly or recklessly present[s] false testimony to the grand jury to obtain the indictment." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (internal citations omitted). The exception builds off of the premise that a grand jury exercises

independent judgment based on an accurate presentation by the prosecution. When the independence of the grand jury is compromised, probable cause may not exist.

Here, the Court cannot ascertain without grand jury material whether the grand jury's determination of probable cause was based on an error such as a material misrepresentation or omission. That finding would go towards both steps of the § 3148 analysis. An error before the grand jury would rebut probable cause at Step One. As for Step Two, the government has argued that "there is no other condition or combination of conditions that will protect the safety of the community" because "[t]here is a mountain of evidence at this point of [Ms. Hakim] refusing to follow the law, disrespecting the law." (ECF No. 270, Hrg. Tr., PageID.1828.) But if the grand jury's finding was based on an error, the Court would accordingly give this evidence of Ms. Hakim's "refusing to follow the law" (or lack thereof) little weight. In this way, disclosure ensures that the Court's decisions about Ms. Hakim's physical liberty rests on an accurate record.

## III. The need for disclosure outweighs the need for continued secrecy

Whether under subsection (i) or (ii) of Rule 6(e)(3)(E), Ms. Hakim has demonstrated particularized need, supported by facts, for review of grand jury material. That need outweighs the traditional concerns that animate the rule of grand jury secrecy.

The Supreme Court in *Douglas Oil Co.* outlined various institutional interests that grand jury secrecy protects: "encouraging prospective witnesses to come forward; allowing witnesses to testify "fully and frankly" without fear of retribution; mitigating

the risk that those indicted would flee or try to influence individual grand jurors; and assuring that persons accused but exonerated will not be held up to "public ridicule."" 441 U.S. 211. at 218-19. Here, those interests either do not apply or are significantly diminished.

First, the government's witnesses before the grand jury were very likely uniformed federal law enforcement officers. Officers testify as part of their job. They do not need the promise of secrecy as an incentive to come forward, nor do they face threat of retribution for doing their jobs. As for the risk of flight, Ms. Hakim has already been indicted, and has fulfilled every court appearance thus far. *See In re Grand Jury Investigation*, 55 F.3d 350, 354 (8th Cir. 1995) ("The end of a grand jury inquiry reduces the interests in grand jury secrecy . . ."). Finally, the person seeking disclosure here is the accused herself, and her request is limited to the offense on which she was indicted. The Court could also fashion protective conditions—including *in camera* review, discussed below—to protect witnesses or portions of the record that implicate an ongoing investigation.

On the other side of the balance, Ms. Hakim's need is particularized and supported by facts. Her showing of potential irregularity is supported by the government's misstatements, inconsistencies, and shifting theories. The need for disclosure substantially outweighs whatever interest in secrecy remains.

## IV. The defense request is narrowly tailored

*Douglas Oil*'s third prong requires that a request for grand jury records is "structured to cover only material so needed." 441 U.S. at 222. The defense seeks disclosure of four categories of information as to Count 11 only, each tied to a specific showing in the record. The request excludes grand jurors' deliberations and votes specifically protected by Rule 6(e).

1. **Legal instructions on the elements of 18 U.S.C. 1512(c):** As laid out above, the government's legal theory has shifted over the course of bond litigation. Legal instructions are the only way to determine whether the grand jury was instructed on the elements of the offense correctly, including the intent and nexus requirements. Some courts hold that a defendant does not need to show particularized need at all to obtain legal instructions before the grand jury because the instructions are "ministerial records." *See e.g.*, *United States v. Powell*, No. 22-CR-00003-JSW-1, 2024 WL 3052966, at *1 (N.D. Cal. June 18, 2024) (citing cases); *United States v. Facteau*, No. 1:15-CR-10076-ADB, 2016 WL 4445741, at *4 (D. Mass. Aug. 22, 2016) ("Legal instructions provided by prosecutors do not implicate any of the concerns typically cited in support of grand jury secrecy.").

2. **Government statements to the grand jury:** The government has made multiple misrepresentations on the record. Its presentation to the grand jury will show whether the same misrepresentations were made there.

3. **Testimony of government witnesses:** The government has declined to identify the source of the information it submitted on the record. Also, its factual

account has shifted over time. Agents' testimony will show what account the grand jury heard and whether the testimony repeated misrepresentations or inaccurate hearsay.

**4. Exhibits and summaries:** These will show whether the challenged information was placed before the grand jury, and in what form.

Before considering full disclosure, the Court may review the identified materials *in camera* to determine whether they reflect misstatements of fact or law, or other irregularities that warrant disclosure. Judicial review *in camera* allows a "refined assessment of the delicate balance between justice and secrecy . . ." *Anilao v. Spota*, F.Supp.2d 157, 182 (E.D.N.Y. 2013). Courts often opt to review grand jury material in camera first to determine whether an error occurred before the grand jury. *See, e.g., United States v. Levy-Armstrong*, *supra*, (ECF No. 631); *Comey*, 809 F. Supp. 3d at 408); *Koschtschuk*, 2011 WL 3295817, at *3; *United States v. Austin*, 99 F.R.D. 292, 296 (W.D.Mich.1983); *Lopez*, 2018 WL 1718561, at *3; *United States v. Lehr*, 562 F. Supp. 366, 370 (E.D. Pa. 1983), *United States v. Wilcher*, No. 20-CR-40069-JES-JEH, 2021 WL 4394585, at *7 (C.D. Ill. Sept. 24, 2021), *United States v. Calimlim*, No. 04-C-248, 2005 WL 8170445 (E.D. Wis. Mar. 25, 2005); *United States v. Rabbitt, et al.*, No. 25-cr-693 (N.D. Ill.) (ECF No. 123). These cases demonstrate that not only does the Court have broad discretion when conducting a preliminary *in camera* review, it need not make a concrete finding of particularized need to do so.

.

If, after its review, the Court determines that any portion of the government's presentation was erroneous or prejudicial, the defense ask that those portions be disclosed subject to any limitations imposed by the Court.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**

*s/ Amanda N. Bashi & Sara Garber*
Amanda N. Bashi & Sara Garber
Assistant Federal Defenders
Attorney for Zainab Hakim
613 Abbott Street, Suite 500
Detroit, Michigan 48226

Dated: November 23, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2026 I filed the foregoing document electronically with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Amanda N. Bashi